# EXHIBIT 1



**CORPORATION SERVICE COMPANY**

**null / ALL**
**Transmittal Number: 13413744**
**Date Processed: 01/30/2015**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Allison Airhart<br>Volkswagen Group of America, Inc.<br>2200 Ferdinand Porsche Drive<br>Herndon, VA 20171-5884 |

| | |
|---|---|
| **Entity:** | Volkswagen Group of America, Inc.<br>Entity ID Number  0456194 |
| **Entity Served:** | Volkswagen Group of America, Inc. |
| **Title of Action:** | Ernesto Valencia vs. Volkswagen Group of America, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | San Mateo County Superior Court, California |
| **Case/Reference No:** | CIV 532218 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 01/29/2015 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Jordan L. Lurie<br>310-556-4811 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey<br>corporation; VOLKSWAGEN AG, and DOES 1-10 inclusive<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br><br>ERNESTO VALENCIA, ADELINA DUNCAN, LORENZO SAVAGE<br>and (see attachment) | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)*<br><br>**ENDORSED FILED**<br>SAN MATEO COUNTY<br><br>JAN 2 8 2015<br><br>Clerk of the Superior Court<br>By JENNA BLACK<br>DEPUTY CLERK |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Mateo Superior Court<br><br>400 County Center<br>Redwood City, CA 94063 | **CASE NUMBER**<br>*(Número del Caso):*<br>CIV 532818 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jordan Lurie, Capstone Law APC, 1840 Century Pk. E. #450 Los Angeles, CA 90067; (310)556-4811

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* JAN 2 3 2015 | Clerk, JOHN C. FITTON<br>*(Secretario)* | JENNA BLACK | , Deputy<br>*(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Volkswagen Group of America, Inc., a New Jersey Corporation
   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):* 1-29-15

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

Page 1 of 1

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Valencia v. Volkswagen | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

[✓] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

MICHELE SAVAGE, individually and on behalf of other members of the general public similarly situated

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

## NOTICE OF CASE MANAGEMENT CONFERENCE

*Ernesto Valencia , etc* **ENDORSED FILED**
**SAN MATEO COUNTY**

Case No: **CIV 532218**

vs.

*Volkswagen , et al*

JAN 2 3 2015

Clerk of the Superior Court
By ~~JENNA BLACK~~
~~DEPUTY CLERK~~

Date: 5-27-15

Time 9:00 a.m.

Dept. _____   --on Tuesday & Thursday
Dept.   ~~7~~   --on Wednesday & Friday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1.  In accordance with applicable California Rules of the Court and local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:

    a)  **Serve all named defendants and file proofs of service on those defendants with the court within 60-days of filing the complaint (CRC 201.7).**

    b)  **Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.**

    c)  **File and serve a completed Case Management Statement at least 15-days before the Case Management Conference [CRC 212(g)].** Failure to do so may result in monetary sanctions.

    d)  **Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than 30-days before the date set for the Case Management Conference.**

2.  **If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order to Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.**

3.  Continuances of Case Management Conferences are highly disfavored unless good cause is shown.

4.  Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation to ADR and Proposed Order (see attached form). If plaintiff files a Stipulation to ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a **completed** stipulation to another ADR process (e.g., mediation) **10-days** prior to the first scheduled Case Management Conference, the Case Management Conference will be continued for 90-days to allow parties time to complete their ADR session. The court will notify parties of their new Case Management Conference date.

5.  If you have filed a default or a judgment has been entered, your case is not automatically taken off Case Management Conference Calendar. If "Does", "Roes", etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.

6.  You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

7.  The Case Management judge will issue orders at the conclusion of the conference that may include:

    a)  Referring parties to voluntary ADR and setting an ADR completion date;

    b)  Dismissing or severing claims or parties;

    c)  Setting a trial date.

8.  The Case Management judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court's website at:  www.sanmateocourt.org

*Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least five business days prior to the scheduled conference (see attached CourtCall information).*

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Jordan L. Lurie (SBN 130013)<br>Capstone Law APC<br>1840 Century Park East., Suite 450<br>Los Angeles, CA 90067<br>TELEPHONE NO.: 310-556-4811   FAX NO.: 310-943-0396<br>ATTORNEY FOR *(Name):* | **FOR COURT USE ONLY**<br><br>**ENDORSED FILED**<br>SAN MATEO COUNTY<br><br>JAN 2 3 2015<br><br>Clerk of the Superior Court<br>By JENNA BLACK<br>DEPUTY CLERK |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS: same
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: Southern Branch

**CASE NAME:**
Ernesto Valencia, et al v. Volkswagen Group of America, et. al

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ **Unlimited** ☐ **Limited**<br>(Amount  (Amount<br>demanded  demanded is<br>exceeds $25,000)  $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CIV 532818<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☑ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.☑ monetary  b.☑ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify):* Five (5)
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 23, 2015
Jordan Lurie
(TYPE OR PRINT NAME)                    ▶ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

File By Fax

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
      or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

Superior Court of California, County of San Mateo

## CHAPTER 2, CIVIL TRIAL COURT MANAGEMENT RULES
## PART 1. MANAGEMENT DUTIES

Rule 2.2    Trial Court Management

Reference CRC, rules 3.700, 3.710-3.713, 10.900, 10.901

(Adopted, effective January 1, 2000) (Amended, effective January 1, 2007)

## PART 2. CASEFLOW MANAGEMENT

Rule 2.3  New Case Management

This rule applies to all civil cases with the exception of the following: (1) juvenile court matters; (2) probate matters; (3) family law matters; and (4) civil cases which, based on subject matter, have been assigned to a judge, or to more than one judge, for all purposes. For rules applicable to these exceptions, see CRC 2.20, 2.30, 2.570-2.573, 2.585, 2.810-2.819, 2.830-2.834, 3.650, 3.700-3.735, 3.920-3.927, 3.1370, 3.1380-3.1385, 3.1590-3.1591, 3.1806, 5.590, 10.900-10.901, 10.910, 10.950-10.953,.

(a)     Purposes and Goals

The purposes and goals of the San Mateo Superior Court Civil Case Management System effective January 1, 1992 are:

(1)     To manage fairly and efficiently, from commencement to disposition, the processing of civil litigation.

(2)     To prepare the bench and bar for full implementation of the Trial Court Delay Reduction Act (A.B. 3820) on July 1, 1992; and

(3)     To encourage parties to agree to informal discovery early in the life of the case, to use standard form interrogatories and to promote alternative dispute resolution. Nothing in these rules is intended to prevent the parties from stipulating to an earlier intervention by the court by way of a case management conference, settlement conference or any other intervention that seems appropriate.

(4)     In accordance with Sections 3.710-3.715, 10.900, 10.901 of the California Rules of Court, Local Rule 2.3 is adopted to advance the goals of Section 68603 of the Government Code and Section 2.1 of the Standards of Judicial Administration recommended by the Judicial Council.

(b)     Team concept

Beginning January 1, 1994 civil litigation will be managed primarily by a team of two program judges.

The clerk will assign the case to a program judge at the time the complaint is filed. The case shall be managed by the assigned program judge until disposition or until the case is assigned to a trial department.

(A)     Time to serve may be extended for good cause: Upon ex parte application to the court, *in compliance with California Rules of Court 3.1200 ÷3.1206,* within 60 days of the date the complaint was filed, plaintiff may obtain an extension of time to serve to a date on or before the case management conference, if good cause is shown by declaration of counsel (or plaintiff filing in propria persona). An additional extension of the time to serve (an initial extension if the application is by a cross-complainant) may be obtained upon written application to the court upon good cause shown before the prior extension has expired. The filing of a timely application for an extension will automatically extend the time to serve by five days, whether or not the application is granted.

Good cause will be found if the declaration shows that the action is filed against a defendant who is an uninsured motorist, and the plaintiff's claim is subject to an arbitration provision in plaintiff's contract of insurance. In determining good cause in other cases, the court will give due consideration to any standards, procedures and policies which have been developed in consultation with the bar of the county through the bench-bar trial court delay committee.

(B)     Additional extension of time if uninsured motorist arbitration is pending. In addition to any extension of time obtained pursuant to subsection (5)(A) above, if an uninsured motorist arbitration is still pending between plaintiff and plaintiff's insurance carrier 30 days prior to the expiration of the extension, plaintiff may obtain an additional extension of time by an ex parte application supported by a declaration showing the scheduled or anticipated date of the arbitration hearing and the diligence of plaintiff in pursuing arbitration.

(C)     Time to respond may be extended for good cause: Before the time to respond has expired, any party served with a complaint or cross-complaint may, with notice to all other parties in the action, make ex parte application to the court upon good cause shown for an extension of time to respond. The filing of a timely application for an extension will automatically extend the time to respond by five days, whether or not the application is granted.

(e)     Case management conference

(1)     Date of conference: Unless the parties stipulate in writing and the court orders that the case be earlier referred to arbitration, a case management conference will be set by the clerk at the time the complaint is filed. (Government Code 68616)

(2)     Attendance at the case management conference is mandatory for all parties or their attorneys of record.

(3)     Plaintiff must serve the Notice of Case Management on all parties no later than 30 calendar days before the conference, unless otherwise ordered by the Court.

(4)     The Court will deem the case to be at-issue at the time of the conference (Reference: CRC 3.714(a)) absent a showing of extraordinary circumstances.

(5)     The conference may be set at an earlier date by order of the Court or by written stipulation of the parties.

(6)     Designation of trial counsel: Trial counsel and, except for good cause shown, back-up trial counsel, must be specified at the case management conference. If such counsel is not

Superior Court of California, County of San Mateo

(D)     At a case management conference, parties may be referred to an appropriate dispute resolution ("ADR") process (e.g., mediation, binding arbitration or neutral evaluation).  If parties are referred ADR, they must redial the dedicated toll-free teleconference number immediately following their case management conference appearance and use a second CourtCall access code to telephonically appear at the ADR referral meeting with ADR staff.  If a case has been referred to ADR, a party's case management conference appearance is not complete until they have also telephonically appeared at the mandatory ADR referral.  If parties are referred to judicial arbitration, they do not have to appear at the ADR referral.

(f)     Case Management Statement

At least 15 calendar days before the scheduled case management conference, each party shall file with the court and serve on all other parties a completed Judicial Council Case Management Statement.  If the case is set for further case management conference hearing(s), all parties must file updated Case Management Statements 15 (fifteen) calendar days prior to the scheduled hearings(s).

(g)     Appropriate Dispute Resolution, ADR, Policy Statement

The Court finds it is in the best interests of parties to litigation to participate in appropriate dispute resolution procedures, including but not limited to mediation, neutral evaluation, private or judicial arbitration, voluntary settlement conferences, and the use of special masters and referees.  Therefore, all parties shall stipulate to, or be referred to, an appropriate form of dispute resolution before being set for trial, unless there is good cause to dispense with this requirement.  Parties are encouraged to stipulate to judicial arbitration or ADR prior to the case management conference.

(h)     Stipulations to Arbitration

(1)     If the case is at issue, and all counsel and each party appearing in propia persona stipulate in writing to judicial arbitration prior to the case management conference, discovery will remain open following judicial arbitration.  A written stipulation to judicial arbitration must be filed with the clerk and a copy immediately sent to the Master Calendar Coordinator at least 10 calendar days before the case management conference in order to avoid the need to appear at that conference.  A written stipulation to arbitrate will be deemed to be without a limit as to the amount of the award unless it expressly states otherwise.

(2)     It is the policy of this court to make every effort to process cases in a timely manner. Parties who elect or are ordered b the court to judicial arbitration must complete the arbitration hearing within the time frame specified by the court.

Parties who wish to continue the arbitration hearing after the jurisdictional time frame must submit a court provided form entitled "*Ex Parte Motion and Stipulation for continuance of Judicial arbitration Hearing.*"  Parties can obtain a copy of the form by contacting the court's judicial arbitration administrator [See Local Rule 10.1(d)(1)].  Continuances without adequate grounds will not be considered.  A case management judge will either grant or deny the request for continuance.  If the request is denied, the case may be assigned a trial date.  If the request is granted, the judge will impose a new deadline by which the arbitration must be completed.

(3)     Parties who wish to change their election from judicial arbitration to another form of ADR must file a "Stipulation and [Proposed] Order to [Mediation, Neutral Evaluation, etc.] in Lieu of [Court-Ordered] Judicial Arbitration" with the Clerk of the Court.  The Stipulation must

Superior Court of California, County of San Mateo

All law and motion matters shall be heard by the regularly assigned Law and Motion judge.

(l)     Settlement Conferences

All cases not assigned to arbitration or some other dispute resolution mechanism will be assigned two settlement conference dates, the first of which will be at the earliest practicable date under the circumstances presented by the case, and the second within approximately two weeks prior to the assigned trial date.

Cases assigned to arbitration or other form of ADR may be subjected to a settlement conference prior to the arbitration or ADR process, but will be assigned to a pre-trial settlement conference only if the arbitration/ADR procedure fails to resolve the case.

All cases which fail to resolve by the trial date will be subject to an additional settlement conference on the trial date.

*All* settlement conferences shall be subject to the requirements specified in Local Rule 2.4.

(m)    Sanctions

Sanctions pursuant to CRC 2.30 shall be imposed for any violation of the civil case management system rules.  The minimum sanction imposed shall be $150.00 payable to the court; sanctions payable to the court may be larger where appropriate and will be in addition to appropriate attorney fees and calendar changes, including any appropriate change in calendar status of the action.

Sanctions mandated hereby may be waived by the judge conducting the conference only upon an application showing good cause why sanctions should not be imposed.

(Adopted, effective July 1, 1996)(Amended, effective January 1,2000) (Amended, effective January 1, 2003) (Amended effective July 1, 2003) (Amended, effective January 1, 2005)(Amended, effective January 1, 2006) (Amended, effective January 1, 2007) (Amended, effective January 1, 2010)

Rule 2.3.1 Orders to Show Cause re: Dismissals

(a)     A hearing on an order to show cause why the case should not be dismissed for failure to prosecute the matter shall be set at the two year anniversary of the filing of the complaint and/or cross-complaint.

(b)     An order to show cause hearing shall be set 45 days after court's receipt of notice of settlement.

(c)     An order to show cause hearing regarding dismissals may be set by the court to achieve the interests of justice and the timely disposition of the case.

(d)     An order to show cause hearing re: failure to complete judicial arbitration within the court-ordered time frame may be heard during the case management calendar.  Sanctions may be imposed and a trial date may be assigned.

(Adopted, effective January 1,2000) (Amended, effective January 1, 2003)(Amended, effective January 1, 2006)

Rule 2.4  Settlement Conference

Reference: California Rule of Court, rule 3.138.

# Civil Appropriate Dispute Resolution (ADR) Information Sheet
## Superior Court of California, San Mateo County

*Appropriate Dispute Resolution (ADR) is a way of solving legal problems without going to trial. All types of disputes can be resolved through ADR. The Court encourages you to use some form of ADR before you proceed to trial. The most popular form of ADR is mediation. The Multi-Option ADR Project can help you choose the option that is best for your case and refer you to an experienced ADR provider.*

### What are the Advantages of Using ADR?

☜   *Faster* -- Traditional litigation can take years to complete but ADR usually takes weeks or months.

☜   *Cheaper* – Parties can save on attorneys' fees and litigation costs.

☜   *More control & flexibility* – Parties choose the ADR process most appropriate for their case.

☜   *Cooperative & less stressful* – In mediation, parties cooperate to find a mutually agreeable solution to their dispute.

### What are the Disadvantages of Using ADR?

☜   *You may go to Court anyway* – If you can't resolve your case using ADR, you may still have to spend time and money on your lawsuit.

☜   *Not free* – The neutrals charge fees (except in judicial arbitration), but you may qualify for financial aid.

### Are There Different Kinds of ADR?

☜   Mediation - A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options and agree on a solution that is acceptable to all sides.

☜   Judicial Arbitration – Is an informal hearing where a neutral person (arbitrator) reviews the evidence, hears arguments and makes a decision on your case. In non-binding judicial arbitration, parties have the right to reject the arbitrator's decision and proceed to trial. For more information regarding judicial arbitration, please see the attached sheet or call (650) 363-4896.

☜   Binding Arbitration - The parties agree ahead of time to accept the arbitrator's decision as final. Parties who choose binding arbitration give up their right to go to Court and their right to appeal the arbitrator's decision.

☜   Neutral Evaluation - A neutral person (evaluator) listens to the parties, asks them questions about their case, reviews evidence and may hear witness testimony. The evaluator helps the parties identify the most important legal issues in their case and gives them an analysis of the strengths and weaknesses of each side's case. Special neutral evaluation guidelines are available on the Court's website at www.sanmateocourt.org/adr.

☜   Settlement Conference – Although similar to mediation, the neutral (a judge) may take more control in encouraging parties to settle. Settlement conferences take place at the courthouse. All cases have a mandatory settlement conference approximately 2-3 weeks before the trial date.

Appropriate Dispute Resolution Information Sheet
Form adopted for Mandatory Use
Local Court Form ADR-CV-8  [New September, 2010]

[CA Rule of Court §3.221]
www.sanmateocourt.org

*Judicial Arbitration, one of the available Appropriate Dispute Resolution (ADR) options, differs from other options in that it is usually court-ordered, unless the parties agree to it.*

### What are the Advantages of Using Judicial Arbitration?

*Free* -Parties do not have to pay for the arbitrator's fee.

*Fast* -Parties are usually given 120 days from the date of the Case Management Conference (CMC) to have their case heard by the appointed arbitrator.

*Informal* -The hearing is conducted by an arbitrator who issues an award. (Arbitrators are usually attorneys who practice or have practiced in San Mateo County.)

### What are the Disadvantages of Using Judicial Arbitration?

The award issued by the arbitrator is not always binding (unless the parties stipulated otherwise). If any party requests a trial within 30 days of the award, the award becomes void and the case continues on to trial.

### How Does Judicial Arbitration Work in San Mateo County?

During your first CMC hearing, the judge may decide to order you to judicial arbitration. You will then receive instructions and a proposed list of arbitrators in the mail.

Parties also may agree to judicial arbitration by filing a *Stipulation and Order to ADR* form at least 10 days before the first CMC. The CMC clerk will then vacate your CMC hearing and send the case to arbitration. The parties will receive instructions and a proposed list of arbitrators in the mail.

Parties can stipulate (agree) to an arbitrator on the Court's Judicial Arbitration Panel list. Otherwise, proposed names of arbitrators will be sent to the parties.

     o     For a list of arbitrators, their resumes, and other information, visit the Court's website at www.sanmateocourt.org/adr. (Go to "Judicial Arbitration Program," "Judicial Arbitration Panelist List" and click on the arbitrator's name. To view the arbitrators by subject matter, click on "Judicial Arbitration Panelists by Subject Matter.")

After the arbitration hearing is held and the arbitrator issues an award, the parties have 30 days to turn down/reject the award by filing a Trial de Novo (unless they have stipulated that the award would be binding).



If the parties reject the award and request a Trial de Novo, the Court will send out notices to the parties of the Mandatory Settlement Conference date and the trial date.

Following your arbitration hearing, you will also receive an evaluation form to be filled out and returned to the Arbitration Administrator.

For more information, visit the court website at www.sanmateocourt.org/adr or contact Judicial Arbitration: 400 County Center, First Floor, Redwood City, CA 94063. Phone: (650) 363-4896 and Fax: (650) 365-4897

Appropriate Dispute Resolution Information Sheet
Form adopted for Mandatory Use [CA Ru's of Court §3.221] Local Court Form ADR-CV-8 [New September, 2010] www.sanmateocourt.org

# ADR Stipulation and Evaluation Instructions

In accordance with *Local Rule 2.3(i)(3)*, all parties going to ADR must complete a Stipulation and Order to ADR and file it with the Clerk of the Superior Court.  The Office of the Clerk is located at:

> Clerk of the Superior Court, Civil Division
> Superior Court of California, County of San Mateo
> 400 County Center
> Redwood City, CA 94063-1655

There is no filing fee for filing the stipulation. An incomplete stipulation will be returned to the parties by the Clerk's Office. All stipulations must include the following:

> ❑ Original signatures for all attorneys (and/or parties in pro per);
> ❑ The name of the neutral;
> ❑ Date of the ADR session; and
> ❑ Service List (Counsel need not serve the stipulation on parties).

Parties mutually agree on a neutral and schedule ADR sessions directly with the neutral.  If parties would like a copy of the court's Civil ADR Program Panelist List and information sheets on individual panelists, they may visit the court's website at www.sanmateocourt.org/adr.

## If Filing the Stipulation Prior to an Initial Case Management Conference

To stipulate to ADR prior to the initial case management conference, parties must file a completed stipulation at least 10 days before the scheduled case management conference.  The clerk will send notice of a new case management conference date approximately 90 days from the current date to allow time for the ADR process to be completed.

## If Filing Stipulation Following a Case Management Conference

When parties come to an agreement at a case management conference to utilize ADR, they have 21 days from the date of the case management conference to file a Stipulation and Order to ADR with the court [*Local Rule 2.3(i)(3)*].

## Post-ADR Session Evaluations

*Local Rule 2.3(i)(5)* requires submission of post-ADR session evaluations within 10 days of completion of the ADR process. Evaluations are to be filled out by both attorneys and clients.  A copy of the Evaluation By Attorneys and Client Evaluation are attached to the Civil ADR Program Panelist List or can be downloaded from the court's web site.

## Non-Binding Judicial Arbitration

Names and dates are not needed for stipulations to judicial arbitration.  The Judicial Arbitration Administrator will send a list of names to parties once a stipulation has been submitted.  The Judicial Arbitration Administrator can be contacted at (650) 363-4896.

For further information regarding San Mateo Superior Court's Civil ADR and Judicial Arbitration Programs, visit the Court's website at www.sanmateocourt.org/adr or contact the ADR offices at (650) 599-1070.

# Important Notice re: Nonrefundable Advance Jury Fees-Please Read

## DEPOSIT OF ADVANCE JURY FEES

## FREQUENTLY ASKED QUESTIONS

(Assembly Bill 1481 (2011-2012 Reg. Sess.))

| | |
|---|---|
| Q. What is the nonrefundable jury fee? | A: At least one party demanding a jury on each side of a civil case must pay a non-refundable fee of one hundred fifty dollars ($150), unless the fee has been paid by another party on the same side of the case. (Code Civ. Proc., § 631(b).) If there are multiple plaintiffs and/or defendants in the same case, only one jury fee per side is *required* to avoid waiver of a jury under Code of Civil Procedure section 631(f). |
| Q: What are the deadlines for paying the nonrefundable jury fee? | A: The nonrefundable jury fee must be paid on or before the date scheduled for the initial case management conference in the action, except as follows:<br><br>1. In unlawful detainer actions the fees shall be due at least five days before the date set for trial.<br><br>2. If no case management conference is scheduled in a civil action, or the initial case management conference occurred before June 28, 2012 and the initial complaint was filed *after* July 1, 2011, the fee shall be due no later than 365 calendar days after the filing of the initial complaint.<br><br>3. If the initial case management conference was held before June 28, 2012 and the initial complaint in the case was filed *before* July 1, 2011, the fee shall be due at least 25 calendar days before the date initially set for trial.<br><br>4. If the party requesting a jury has not appeared before the initial case management conference, or first appeared more than 365 calendar days after the filing of the initial complaint, the fee shall be due at least 25 calendar days before the date initially set for trial. (Code Civ. Proc., § 631(c).) |
| Q: What if a party misses the deadline to pay the nonrefundable jury fee? | A: Except under the circumstances provided in Code of Civil Procedure section 631(d), (discussed in FAQ 1.4), a party has waived the right to a trial by jury in that action, unless another party on the same side of the case timely paid the nonrefundable jury fee. (Code Civ. Proc., § 631(f)(5).)<br>Note: The court may, in its discretion upon just terms, allow a trial by jury despite the waiver. (Code Civ. Proc., § 631(g).) |
| Q: What if a party missed a deadline to pay the nonrefundable jury fee between June 27, 2012 and November 30, 2012? | A: If a party failed to timely pay a nonrefundable jury fee that was due between June 27, 2012, and November 30, 2012, inclusive, the party will be relieved of a jury waiver on that basis only, if the party pays the fee on or before December 31, 2012 or 25 calendar days before the date initially set for trial, whichever is earlier. (Code Civ. Proc., § 631(d).) |

| | |
|---|---|
| Q: May a clerk accept payment of a nonrefundable jury fee after the deadline has passed? | A: There is nothing in the recent amendments to Code of Civil Procedure section 631 that directs or authorizes courts to refuse a late payment of the nonrefundable jury fee. Absent this direction or authority, the clerk likely should accept advance jury fees tendered by a party, provide a receipt, and record in the court file the date the fees were received. (See *People v. Funches* (1998) 67 Cal.App.4th 240, 244 [court clerks "must act in strict conformity with statutes, rules, or orders of the court" defining their duties, and have "no power to decide questions of law nor any discretion in performing" their duties.]) Note: Except as provided in Code of Civil Procedure section 631(d), only a judge has the authority to grant a jury trial following a waiver. |
| Q: Is payment of the nonrefundable jury fee required if the party does not want to retain the right to a jury in the action? | A: No. Only parties that want to retain the right to a jury must pay the nonrefundable jury fees. |
| Q: May the nonrefundable jury fee be waived because of a party's financial condition? | A: Yes. A court may (but is not required to) waive jury fees and expenses, and other fees or expenses itemized in an application for a fee waiver under rule 3.56(1) and (6) of the California Rules of Court. |
| Q: May the court waive the nonrefundable jury fee for government entities under Government Code section 6103? | A: No. Government Code section 6103 explicitly states: "This section does not apply to civil jury fees or civil jury deposits." Although this exception to the fee waiver for government entities predates the creation of the nonrefundable jury fee, the plain language of the exception applies to the nonrefundable jury fee. |
| Q: If more than one party on a side pays the nonrefundable jury fee, is any refund of the additional fee due? | A: No. Code of Civil Procedure 631(b) requires "*at least* one party demanding a jury on each side" to pay the nonrefundable jury fee, "unless the fee has been paid by another party on the same side of the case." (Emphasis added.) In addition, Code of Civil Procedure section 631.3, which governs refunds of jury fees states in subdivision (c) that the "fee described in subdivision (b) of Section 631 shall be nonrefundable and is not subject to this section. Therefore, although they are not required to pay the jury fee, if additional parties on a side pay the nonrefundable jury fee, that fee is still nonrefundable. The additional fee may not be used to offset actual juror fees or mileage, either. |
| Q: Are any jury fees refundable? | A: Yes. Any $150 advance jury fee deposited *before* June 28, 2012 may be refunded upon request of a party as provided under Code of Civil Procedure section 631.3. Similarly, any jury fees other than the $150 advance jury fees that are deposited, but not used, may be refunded upon request of a party as provided under Code of Civil Procedure section 631.3. |

Business Search - Business Entities - Business Programs

**California Secretary of State Alex Padilla**

Secretary of State Main Website    Business Programs    Notary & Authentications    Elections    Campaign & Lobbying

**Business Entities (BE)**

Online Services
- E-File Statements of Information for Corporations
- Business Search
- Processing Times
- Disclosure Search

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Statements of Information** (annual/biennial reports)

**Filing Tips**

**Information Requests** (certificates, copies & status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
- Business Resources
- Tax Information
- Starting A Business

Customer Alerts
- Business Identity Theft
- Misleading Business Solicitations

## Business Entity Detail

Data is updated to the California Business Search on Wednesday and Saturday mornings. Results reflect work processed through Tuesday, January 27, 2015. Please refer to **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity.

| | |
|---|---|
| Entity Name: | VOLKSWAGEN GROUP OF AMERICA, INC. |
| Entity Number: | C0322599 |
| Date Filed: | 06/19/1956 |
| Status: | ACTIVE |
| Jurisdiction: | NEW JERSEY |
| Entity Address: | 2200 FERDINAND PORSCHE DR |
| Entity City, State, Zip: | HERNDON VA 20171 |
| Agent for Service of Process: | CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC - LAWYERS INCORPORATING SERVICE |
| Agent Address: | 2710 GATEWAY OAKS DR STE 150N |
| Agent City, State, Zip: | SACRAMENTO CA 95833 |

\* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

**Modify Search    New Search    Printer Friendly    Back to Search Results**

Privacy Statement | Free Document Readers

Copyright © 2015   California Secretary of State

Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Robert K. Friedl (SBN 134947)
Robert.Friedl@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiffs Ernesto Valencia, Adelina Duncan,
Lorenzo Savage, and Michele Savage

**ENDORSED FILED**
SAN MATEO COUNTY

JAN 2 3 2015

Clerk of the Superior Court
By _____ JENNA BLACK
DEPUTY CLERK

File By Fax

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| ERNESTO VALENCIA, ADELINA DUNCAN, LORENZO SAVAGE, and MICHELE SAVAGE, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey corporation, VOLKSWAGEN AG, and DOES 1 through 10, inclusive<br><br>Defendants. | Case No.:  **CIV 5 3 2 2 1 8**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1)  Violations of California Consumer Legal Remedies Act<br>(2)  Violations of Unfair Competition Law<br>(3)  Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act<br>(4)  Breach of Implied Warranty under the Magnuson-Moss Warranty Act<br>(5)  Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.     Plaintiffs Ernesto Valencia, Adelina Duncan, Lorenzo Savage, and Michele Savage ("Plaintiffs") bring this action for themselves and on behalf all Class Members, *i.e.*, all current and former owners or lessees who purchased or leased in the United States any 2009 through 2012 Volkswagen Routan vehicle (collectively, "Class Vehicles") manufactured, distributed, and sold by Defendants, Volkswagen Group of America, Inc., and Volkswagen AG (collectively, "Volkswagen," "VW," or "Defendants").

2.     Volkswagen designed and marketed the Class Vehicles as an uncompromising and safe minivan for the whole family. Notably, Volkswagen proclaimed in its 2011 Volkswagen Routan Brochure: "Safety. There's safe. And then there's Volkswagen safe. Safe protects you from all kinds of life's little (and big) surprises. . . . . Safe is what every car should be. Volkswagen safe is what every car wishes it were. Here's to knowing it's safe, but never having to find out how safe." It also stated: "Our success is no accident. When you buy a Volkswagen Routan, you're driving home more than just a minivan. You're taking home total peace of mind. . . . . That's because every Volkswagen is built to the highest standards."

3.     Unfortunately, Volkswagen's promises were far from the truth. Poor reviews and consumer complaints of numerous brake issues doomed the Routan vehicle, which was completely eliminated from the Volkswagen lineup by 2013, with the exception of those sold as fleet vehicles.

4.     The Class Vehicles' braking system is composed of brake rotors, brake pads, brake linings, and calipers ("braking system"). Plaintiffs are informed and believe and thereon allege that the braking system installed in the Class Vehicles suffers from one or more design and/or manufacturing defects that cause its brake pads and/or rotors to wear out prematurely and require repair or replacement far more frequently than in a properly functioning braking system ("Braking System Defect"). Upon information and belief, the Class Vehicles' braking system is defective because it fails to adequately handle the braking duties required by vehicles the size of the Class Vehicles, thereby leading to abnormal,

premature wear.  This premature wear is abnormal, far beyond normal wear-and-tear associated with the average life of braking components.[1]

5.     The Braking System Defect causes unsafe conditions, including, but not limited to the vehicle shuddering or jerking when the brakes are engaged.  These conditions present a safety hazard because they severely affect the driver's ability to control the vehicle's speed, maintain the vehicle's stability, and decelerate.  As an example, these conditions may make it difficult for drivers to safely slow down while in traffic because Class Members' vehicles shudder, shimmy, and jerk when they attempt to reduce their vehicles' speed while traveling on the highway or on streets.[2]

6.     On information and belief, the Braking System Defect also causes premature wear to the braking system, including the brake rotors, brake pads, brake linings, calipers, and other related components, which can require expensive repeated repairs, including the premature resurfacing of the rotors and replacement of the rotors and/or brake pads, and other braking system-related components.

7.     As a result of this defect, consumers will be required to pay hundreds, if not thousands, of dollars to repair or replace the brake pads, rotors, calipers, and/or other brake-related components.

8.     On information and belief, the 2009, 2010, 2011, and 2012 VW Routans have

---

[1] According to AutoAccessoriesGarage.com's Frequently Asked Questions (FAQs) section , "Most brake companies agree that pads typically last between 30,000 and 70,000 miles [and that b]rake rotors can last quite a bit longer (as much as 3 times as long as [brake] pads) . . . ." AutoAccessoriesGarage.com, "Brakes FAQs," http://www.autoaccessoriesgarage.com/Brakes/FAQ (last visited Dec. 30, 2014).

[2] *See,* for example, this 2009 Routan owner's complaint to the National Highway Traffic Safety Administration ("NHTSA"):  (2009 VW Routan 06/16/2011) TL* THE CONTACT OWNS A 2009 VOLKSWAGEN ROUTAN. THE CONTACT WAS DRIVING VARIOUS SPEED AND WHEN PRESSURE WAS APPLIED TO THE BRAKE PEDAL, THERE WAS A DELAYED RESPONSE WITH AN EXCESSIVE VIBRATION. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER ON FIVE SEPARATE OCCASIONS WHO STATED THE BRAKES WERE NOT COMPATIBLE FOR THE VEHICLE WEIGHT CAPACITY. THE FRONT AND REAR ROTORS WERE REPLACED FIVE TIMES. THE MANUFACTURER WAS MADE AWARE OF THE DEFECT. THE APPROXIMATE FAILURE MILEAGE WAS 200. (Safecar.gov, *Search for Complaints* (December 30, 2014), http://www-odi.nhtsa.dot.gov/complaints/).

1  the same or substantially identical braking system, and the Braking System Defect is the same

2  for all Class Vehicles.

3      9.      Beginning as early as 2009, through consumer complaints and dealership repair

4  orders, among other internal sources, Defendants knew or should have known that the Class

5  Vehicles and the Braking System contained one or more design and/or manufacturing defects

6  that cause safety hazards.  Nevertheless, Defendants have actively concealed and failed to

7  disclose this defect to Plaintiff and Class Members at the time of purchase or lease and

8  thereafter.

9      10.     The Class Vehicles are a "re-badged" version of Chrysler Town & Country

10  ("T&C") and Dodge Grand Caravan (n/k/a "Caravan") vehicles.  The Routan was produced on

11  "the same platform as the . . . T&C" and shares the Chrysler's engine and transmission.[3]  As

12  such, on information and belief, the braking systems and components utilized in the Chrysler

13  Town & Country and Dodge Caravan vehicles are identical or substantially similar to those

14  used in the Class Vehicles.  These Chrysler and Dodge vehicles were offered for sale in the

15  United States prior to the VW Routan's entrance into the market.

16      11.     On information and belief, the VW Routan was hastily released in the United

17  States and added to the Volkswagen lineup in an attempt to meet the American demand for an

18  economically-priced minivan.  Unfortunately, in cutting costs [4] by repurposing the Chrysler-

19  built minivans (Dodge Caravan and Chrysler Town & Country), which utilized same or

20  substantially similar braking systems, Volkswagen distributed a vehicle known to be plagued

21  with braking system issues.

22      12.     Despite this, the Class Vehicles were designed and marketed as minivans

23  suitable for transporting families and small children.  Volkswagen even created a

24

25  [3] *See* MotorTrend.com, "One Year: Arrival: 2010 Volkswagen Routan," http://www.motortrend.com/roadtests/oneyear/1009_2010_volkswagen_routan_arrival/ (last visited Jan. 12, 2015).

26  [4] *See* PopularMechanics.com, "2009 VW Routan Test Drive: VW's First American-Style Minivan Takes a Hint from Chrysler,"

27  http://www.popularmechanics.com/cars/news/4288196 (last visited Jan. 10, 2015).

28

CLASS ACTION COMPLAINT

1    mockumentary-style video commercial called "The Routan Boom," featuring Brooke Shields

2    in order to promote the Routan's family-friendly features.[5]  The commercial depicts Brooke

3    Shields "confronting" families with small children and expectant mothers/families about the

4    "Routan Boom," explaining that "Americans are getting pregnant just so they can buy a

5    Routan and enjoy its German engineering."[6]

6           13.    In the past, automotive journalists had criticized the Town & Country and

7    Caravan sister vehicles' braking systems.  For example, a *Motor Trend* long term report[7] on

8    the 2008 Chrysler Town & Country mentioned that the right front brake began to squeal with

9    only 19,000 miles on the odometer.  A Chrysler dealership informed the journalist that a

10   $614.68 front brake replacement was necessary, which was "common among the new

11   minivans, with many needing pad replacement after only 12,000 miles."  The report was

12   published online in or about January 2009 and appears in the February 2009 print issue of

13   *Motor Trend* magazine.

14          14.    Despite the negative feedback regarding Chrysler's Town & Country and

15   Dodge Caravan minivans, the sales brochures for the 2012 Routan tout its "German

16   engineering" and an automotive review from *Popular Mechanics* magazine stated that, "[t]o

17   contradict any allegations of badge engineering, VW personnel on-hand here stressed that the

18   Routan has had millions of dollars and much time spent making it look, feel and drive like a

19   real European product."[8]

20

21          [5] *See* YouTube.com, "The [Volkswagen] Routan Boom,"
     https://www.youtube.com/watch?v=xDZSxFLcMVg (last visited Jan. 5, 2015).

22          [6] *See* AutoBlog.com, "VIDEO: Brooke Shields pretending VW Routan is NOT a
     Dodge Caravan," http://www.autoblog.com/2008/09/11/video-brooke-shields-pretending-vw-
23   routan-is-not-a-dodge-carava/ (last visited Jan. 5, 2015).

24          [7] *See* MotorTrend.com, "One Year: Long Term Update 3: 2008 Chrysler Town &
     Country,"
25   http://www.motortrend.com/roadtests/oneyear/112_0902_2008_chrysler_town_and_country_
     update_3/ (last visited Jan. 12, 2015).

26          [8] *See* PopularMechanics.com, "2009 VW Routan Test Drive: VW's First American-
     Style Minivan Takes a Hint from Chrysler,"
27   http://www.popularmechanics.com/cars/news/4288196 (last visited Jan. 10, 2015).

28

CLASS ACTION COMPLAINT

1    15.    In spite of these claims, consumers have not experienced a safer ride from the

2  Volkswagen Routan or any refinements incorporated into the purportedly "redesigned" Class

3  Vehicles.[9]  As documented further below, multiple reviews in automotive journals and

4  customer complaint forums document and confirm that the Class Vehicles' braking systems

5  exhibit the defects, malfunctions, misadjustments, and nonconformities of which Plaintiffs and

6  Class Members now complain.  For example, a *Motor Trend* auto review[10] published in print

7  in or around September 2011 and posted online in or around July 2011 reveals that several

8  contributors excoriated Volkswagen's choice to utilize the substandard braking system.  For

9  example, testing director Kim Reynolds simply stated, "A shame VW didn't insist on an

10  improvement in the brakes before allowing its name to be put on this vehicle."  Additionally,

11  the article went on to state:

12  > Still, for all the complaints our staff had about power, concerns about braking --
13  > just as with our previous long-term 2008 Chrysler Town & Country -- were far
> greater. **We found the rotors yet again not up to the task of hauling down**
14  > **this heavy minivan from speed, especially with a full load of passengers.**

15  > **"All our Town & Country's old ghosts are coming back to haunt the**
> **Routan already,"** noted associate editor Scott Evans at the 13,000-mile point.
16  > **"The brakes are fried** and will make the whole vehicle shudder violently when
> you use them hard-**and they aren't great at restraining the vehicle to begin**
17  > **with."**

18

19    16.    As a result of the Braking System Defect, VW issued multiple Technical

20  Service Bulletins ("TSBs") to its dealers in the United States, acknowledging defects in the

21  braking system and attempting to address the issue.  For example, VW's TSB 46-11-08 from

22  in or around May 2011 and re-issued in or around December 2011 titled "Front Brake Squeal

23  and/or Brake Disc Pulsation," covering the 2009 Routan, informed dealers that "Vehicle

24

25  _____

[9] *Id.*

26  [10] *See* MotorTrend.com, "Verdict: 2010 Volkswagen Routan SEL: There's no
shrugging off its Chrysler roots,"
27  http://www.motortrend.com/roadtests/oneyear/1109_2010_volkswagen_routan_sel_verdict/
(last visited January 13, 2015).

28

CLASS ACTION COMPLAINT

owners may hear squealing and/or feel pulsations in the steering wheel and/or brake pedal" and offering the solution of "New improved [front] brake pads." However, on information and belief, consumers continued to experience problems with their vehicles despite the fix, including, but not limited to, shuddering and jerking, which necessitated additional repairs or replacements of braking system parts.

17. Additionally, on or about December 2013, another TSB (46-14-04) covering the 2011 and 2012 Routan vehicles was issued, and informed dealers that "Vehicle owners may feel brake pedal pulsation, steering wheel shake and/or floor pan vibration." The remedy was to install "New improved [front] brake pads and lower control arms introduced March 30th 2012." Titled "Front Brake Judder And / Or Vibration," Volkswagen subsequently re-issued this service bulletin in or around April 2014. However, on information and belief, consumers continued to experience problems with their vehicles despite the fix, including, but not limited to, shuddering and jerking, which necessitated additional repairs or replacements of braking system parts.

18. Chrysler, which sold the "sister" vehicles, the Chrysler Town & Country and Dodge Caravan, also issued multiple TSBs and warranty extension programs covering brake issues in those vehicles. For example, on or about July 6, 2010, Chrysler extended the warranty on the front brakes of 2008 Town & Country and Caravan vehicles from the Basic Limited Warranty of 12 months or 12,000 miles to 36 months or 36,000 miles, whichever came first.[11] The problem was described as "[t]he front brakes on your vehicle may need pads

---

[11] Chrysler issued a bulletin to its dealers and owners of 2008 Caravan and Town & Country vehicles advising that it had extended the warranty for the repair and replacement of front brakes to 36 months/36,000 miles. According to this bulletin, the following deductibles are applicable based upon time and/or mileage:

- Before 12 months/12,000 miles          $0
- After 12 months/12,000 miles but before
  24 months/24,000 miles          $50
- After 24 months/24,000 miles but before
  36 months/36,000 miles          $100

The bulletin also indicated that for owners who already experienced the condition and

1    and rotors replaced earlier than expected.  The brake performance is not affected in any way

2    by this issue."

3        19.    On information and belief, Volkswagen was aware of the issues afflicting the

4    "sister" minivans, and knew of the potential that these issues directly affected the Class

5    Vehicles due to their same or substantially similar braking components, but failed to act on

6    this information.  Eventually, Chrysler issued bulletins extending the warranty on certain

7    brake components for 2008 through 2012 Town & Country and Caravan vehicles, the latest of

8    which was issued on or about February 22, 2013.

9        20.    On information and belief, despite notice via numerous consumer complaints,

10   dealership repair orders, and data regarding the Chrysler Town & Country and Dodge

11   Caravan, among other internal information, Volkswagen has not issued a warranty extension

12   for the Routan (which utilizes the same braking system as its "sister" minivan vehicles), has

13   not recalled the Class Vehicles to repair the defects, has not offered its customers a suitable

14   repair or replacement free of charge, and has not offered to reimburse the Class Vehicles'

15   owners and leaseholders in full for the costs they incurred in diagnosing and repairing the

16   Braking System Defect.

17       21.    If Plaintiffs and Class Members had known about these defects at the time of

18   sale or lease, Plaintiffs and Class Members would not have purchased or leased the Class

19   Vehicles or would have paid less for them.

20       22.    Because Volkswagen will not notify Class Members that the braking system is

21   defective, Plaintiffs and Class Members (as well as members of the general public) are

22   subjected to potentially dangerous driving conditions that can occur without warning.

23       23.    The alleged Braking System Defect was inherent in each Volkswagen Routan

24   braking system and was present in each Volkswagen Routan's braking system at the time of

25

26   paid to have it repaired should send their original receipts and/or other adequate proof of
     payment to a Chrysler Customer Assistance address for reimbursement less the applicable
     deductible.

27

28

1   sale.

2       24.     Volkswagen knew about and concealed the Braking System Defect present in

3   every Class Vehicle, along with the attendant dangerous safety problems, from Plaintiffs and

4   Class Members, at the time of sale, lease, repair, and thereafter.  In fact, instead of repairing

5   the defects in the braking system, Volkswagen either refused to acknowledge the defects'

6   existence or performed repairs that simply masked the defects.

7       25.     Plaintiffs are informed and believe and based thereon allege that even where

8   Volkswagen agrees to address consumer complaints of shortened brake and rotor life and

9   shuddering upon braking, Volkswagen merely replaces the defective pads and/or rotors with

10  the same or similar defective components.  On information and belief, such a repair is only a

11  temporary fix that will last only long enough to ensure that the Braking System Defect

12  manifests outside of the Class Vehicles' express warranty period.[12]  Ultimately, this leaves

13  consumers with defective vehicles that are substantially certain to again experience the

14  Braking System Defect and costly repairs, as well as the associated safety hazards.

15      26.     Furthermore, Plaintiffs allege, on information and belief, that Defendants are

16  aware that repairing the same defective brake pads and rotors does not fix the Braking System

17  Defect.  Rather, Defendants implemented this temporary fix in order to prolong the amount of

18  time that will elapse before the Braking System Defect again manifests itself, thus ensuring

19  that the Braking System Defect occurs outside of the warranty period, so that Defendants can

20  unfairly shift financial responsibility for the Braking System Defect to Class Members.

21      27.     If Plaintiffs and Class Members had known about these defects at the time of

22  sale or lease, Plaintiffs and Class Members would not have purchased or leased the Class

23  _____

24  [12] As described further below, the New Vehicle Limited Warranty lasts for 3 years or
    for 36,000 miles on the odometer, whichever occurs first.  However, the repair or replacement
    of the following "wear and tear" items are covered only up to one year or for 12,000 miles on
25  the odometer, whichever occurs first:

26      •       brakes pads worn below manufacturer specifications;

        •       brake discs worn below manufacturer specifications; and

27      •       light bulbs.

28

1    Vehicles or would have paid less for them.

2         28.    As a result of their reliance on Defendants' omissions and/or

3    misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss

4    of money, property, and/or value of their Class Vehicles, including, but not limited to, out-of-

5    pocket costs related to repairs to the Braking System Defect. Additionally, as a result of the

6    Braking System Defect, Plaintiff and Class Members were harmed and suffered actual

7    damages in that the Class Vehicles' braking system components are substantially certain to

8    fail or require replacement or repair, before their expected useful life has run.

9                                       **PARTIES**

10   **PLAINTIFFS ERNESTO VALENCIA & ADELINA DUNCAN**

11        29.    Plaintiffs ERNESTO VALENCIA and ADELINA DUNCAN are California

12   citizens who reside in San Francisco, California.

13        30.    On or around September 24, 2011, Plaintiffs purchased a new 2011 VW Routan

14   vehicle from Serramonte Volkswagen, an authorized Volkswagen dealer in Colma, California.

15        31.    Plaintiffs purchased their vehicle primarily for personal, family, or household

16   use. Volkswagen manufactured, sold, distributed, advertised, marketed, and warranted the

17   vehicle.

18        32.    Passenger safety and reliability were all factors in Plaintiffs' decision to

19   purchase their vehicle. Prior to purchasing their vehicle, Plaintiffs spent time researching the

20   Volkswagen Routan and reviewing the sales brochure because they would be utilizing the

21   minivan as a family vehicle. Based on their research, Plaintiffs believed that the Routan

22   would be a safe and reliable vehicle.

23        33.    Had Volkswagen disclosed its knowledge of the Braking System Defect before

24   Plaintiffs purchased their vehicle, Plaintiffs would have seen such disclosures and been aware

25   of them. Indeed, Volkswagen's omissions were material to Plaintiffs. Like all members of

26   the Class, Plaintiffs would not have purchased their Class Vehicle, or would not have paid less

27   for the vehicle, had they known of the Braking System Defect.

28

34.     After purchasing the vehicle, and approximately within the first year of their purchase, Plaintiffs noticed symptoms of the Braking System Defect, including the brakes making a grinding noise.

35.     In or around December 23, 2012, with approximately 17,652 miles on the odometer of their 2011 VW Routan, Plaintiffs took their vehicle to Firestone Complete Auto Care in San Francisco, complaining of grinding brakes.  Firestone replaced the front brake pads and resurfaced and cleaned the rotors at a cost of $514.52 to Plaintiffs.

36.     These repairs failed to repair the Braking System Defect.  Indeed, less than nine (9) months after the December 23, 2012 repair, Plaintiffs again experienced the Braking System Defect symptoms.  In or around September 20, 2013, with approximately 30,152 miles on the odometer of their 2011 VW Routan, Plaintiffs again took their vehicle to Firestone Complete Auto Care in San Francisco.  Firestone replaced the front brake pads and resurfaced and cleaned the rotors at a cost of $123.50 to Plaintiffs.

37.     In order around January 3, 2014, less than four (4) months after the prior repair in September 2013, with approximately 35,251 miles on the odometer of their 2011 VW Routan, Plaintiffs again took their vehicle to Firestone Complete Auto Care in San Francisco, complaining of noise when braking.  Firestone replaced the front brake pads and resurfaced and cleaned the rotors.

38.     In or around July 7, 2014, less than six (6) months after the prior repair in January 2014, with approximately 48,073 miles on the odometer of their 2011 VW Routan, Plaintiffs again took their vehicle to Firestone Complete Auto Care in San Francisco, complaining of the brakes producing a squealing noise.  Firestone replaced the front brake pads and replaced, resurfaced, and cleaned the rotors at a cost of $327.47 to Plaintiffs.

39.     In or around October 18, 2014, less than three (3) months after the prior repair in July 2014, with approximately 54,882 miles on the odometer of their 2011 VW Routan, Plaintiffs again took their vehicle to Firestone Complete Auto Care in San Francisco, complaining of the brakes producing a grinding or chirping noise.  Firestone replaced the front

CLASS ACTION COMPLAINT

1    brake pads and resurfaced and cleaned the rotors.

2        40.     Plaintiff Valencia complained to an authorized Volkswagen dealership service

3    adviser of the brake replacement issues Plaintiffs were experiencing. The Volkswagen

4    dealership advisor responded that there was a design issue with the Routan vehicles, that the

5    weight of the vehicle was too much for the brakes, and that the metal on the rotors was soft

6    and prone to wear.

7        41.     At all times, Plaintiffs, like all Class Members, have driven their vehicle in a

8    foreseeable manner and in the manner in which it was intended to be used.

9    **PLAINTIFFS LORENZO AND MICHELE SAVAGE**

10        42.     Plaintiffs LORENZO SAVAGE and MICHELE SAVAGE are California

11    citizens who reside in La Verne, California.

12        43.     On or about March 7, 2012, Plaintiffs purchased a certified pre-owned 2011

13    VW Routan vehicle from Volkswagen Pasadena, an authorized Volkswagen dealer in

14    Pasadena, California.

15        44.     Plaintiffs purchased their vehicle primarily for personal, family, or household

16    use. Volkswagen manufactured, sold, distributed, advertised, marketed, and warranted the

17    vehicle.

18        45.     Passenger safety, vehicle performance, and reliability were all factors in

19    Plaintiffs' decision to purchase their vehicle. Prior to purchasing their vehicle, Plaintiffs spent

20    considerable time researching the Volkswagen Routan and comparing it to similar and

21    competing minivan vehicles, such as the Honda Odyssey, Kia Sedona, Nissan Quest, and

22    Chrysler Town & Country. Plaintiffs reviewed automotive reviews and postings, such as

23    those on CarMax.com, reviewed information from the VW.com website, and test drove a

24    Volkswagen Routan prior to their purchase.

25        46.     Had Volkswagen disclosed its knowledge of the Braking System Defect before

26    Plaintiffs purchased their vehicle, Plaintiffs would have seen such disclosures and been aware

27    of them. Indeed, Volkswagen's omissions were material to Plaintiffs. Like all members of

28

CLASS ACTION COMPLAINT

1  the Class, Plaintiffs would not have purchased their Class Vehicle, or would not have paid less

2  for the vehicle, had they known of the Braking System Defect.

3        47.    After purchasing the vehicle, and just after the first year of their purchase,

4  Plaintiffs became aware of the Braking System Defect when visiting their dealership,

5  Volkswagen Pasadena, for an unrelated issue regarding their rear television monitor.  In or

6  around March 14, 2013, with approximately 34,599 miles on the odometer their VW Routan,

7  the service advisor informed them that the rear brake pads, rear brake rotors, and front brake

8  pads on their vehicle would need to be replaced.  The dealership eventually made these repairs

9  as a one-time goodwill gesture.

10        48.    These repairs failed to repair the Braking System Defect.  Indeed, less than nine

11  (9) months after the March 14, 2013 repair, Plaintiffs again experienced symptoms of the

12  Braking System Defect, including brake pulsation and vibration.  In or around December 31,

13  2013, with approximately 49,320 miles on the odometer of their 2011 VW Routan, Plaintiffs

14  took their vehicle to Brakemasters in Pomona.  Brakemasters replaced the front brake pads,

15  which were cracked, and resurfaced the front rotors at a cost of $98.00 to Plaintiffs.

16  Brakemasters also informed Plaintiffs that there was possible warping of the vehicle's rear

17  rotors.

18        49.    In or around February 20, 2014, less than two (2) months after the December

19  31, 2013, repair, with approximately 52,223 miles on the odometer of their 2011 VW Routan,

20  Plaintiffs took their vehicle to Brakemasters in Pomona yet again.  Brakemasters replaced the

21  front brake rotors and pads.  Brakemasters also deglazed the rear brake pads.  The total cost of

22  the repairs for this visit was $400.98.

23        50.    In or around December 2, 2014, less than ten (10) months after the February 20,

24  2014, repair, with approximately 66,315 miles on the odometer of their 2011 VW Routan,

25  Plaintiffs took their vehicle to Brakemasters in Pomona yet again.  Brakemasters performed a

26  brake lining inspection and confirmed that, due to front brake pulsation, the front disk brake

27  rotors and the front brake pads, which were cracking, needed to be replaced.  Brakemasters

28

1   thus replaced the front brake rotors and pads.  Due to rear brake pulsation, Brakemasters also

2   had to replace the rear rotors and pads.  Plaintiffs had to pay $454.97 for these repairs.

3       51.    These repairs failed to fix the Braking System Defect.  Indeed, less than two (2)

4   months after the latest repair in December of 2014, when this lawsuit was filed, Plaintiffs still

5   experienced symptoms of Braking System Defect, including pulsing and vibrating brakes.

6       52.    At all times, Plaintiffs, like all Class Members, have driven their vehicle in a

7   foreseeable manner and in the manner in which it was intended to be used.

8   **DEFENDANTS**

9       53.    Defendant Volkswagen Group of America is a corporation organized and in

10  existence under the laws of the State of New Jersey and registered to do business in the State

11  of California.  On information and belief, at all relevant times herein, Volkswagen Group of

12  America, Inc., was engaged in the business of designing, manufacturing, marketing,

13  distributing, and selling automobiles and other motor vehicles and motor vehicle components

14  in California and throughout the United States of America.

15      54.    Volkswagen AG is a foreign corporation headquartered at Berliner Ring 2

16  38440 Wolfsburg, Federal Republic of Germany.  On information and belief, at all relevant

17  times, Volkswagen AG took part in designing, engineering, manufacturing, testing, marketing,

18  supplying, selling, and distributing motor vehicles in San Mateo County, California, and

19  throughout the United States of America.  Through its wholly owned subsidiaries and agents,

20  Volkswagen AG markets its products in the United States, including California.

21      55.    At all relevant times, Defendants were and are engaged in the business of

22  designing, manufacturing, constructing, assembling, marketing, distributing, and selling

23  automobiles and motor vehicle components in California.

24                          **JURISDICTION**

25      56.    This Court has jurisdiction over this action pursuant to California Code of Civil

26  Procedure § 410.10.  Personal jurisdiction over Volkswagen is proper because Volkswagen

27  has purposefully availed itself of the privilege of conducting business activities in California,

28

1   including, but not limited to, designing, marketing, distributing, and/or selling Class Vehicles

2   to Plaintiffs and prospective class members.

3        57.     This class action is brought pursuant to California Code of Civil Procedure §

4   382.  Plaintiffs are California residents.  The monetary damages and restitution sought by

5   Plaintiffs and the prospective class members exceed the minimal jurisdiction limits of the

6   Superior Court and will be established according to proof at trial.

7   **VENUE**

8        58.     Venue is proper in this Court pursuant to California Code of Civil Procedure §§

9   395, 395.5, and California Civil Code § 1780, because Plaintiff Valencia resides in the County

10   of San Francisco, California, and the acts, omissions, and contractual performance alleged

11   herein took place in the County of San Mateo, California.  Plaintiff Ernesto Valencia's

12   Declaration, as required under Cal. Civ. Code section 1780(d), which reflects that a

13   substantial part of property that is the subject of this action is situated in San Mateo County,

14   and that Defendants are doing business in San Mateo, California, is attached as Exhibit 1.

15   **FACTUAL ALLEGATIONS**

16        59.     Since 2009, Volkswagen has designed, manufactured, distributed, sold, and

17   leased the Class Vehicles.  Volkswagen has sold, directly or indirectly, through dealers and

18   other retail outlets, thousands of Class Vehicles in California and the United States.

19        60.     Volkswagen designed and marketed the Class Vehicles as an uncompromising

20   and safe minivan for the whole family.  Notably, for example, Volkswagen proclaimed in its

21   2011 Volkswagen Routan Brochure: "Safety. There's safe. And then there's Volkswagen safe.

22   Safe protects you from all kinds of life's little (and big) surprises. . . . . Safe is what every car

23   should be. Volkswagen safe is what every car wishes it were. Here's to knowing it's safe, but

24   never having to find out how safe." It also stated: "Our success is no accident.  When you buy

25   a Volkswagen Routan, you're driving home more than just a minivan. You're taking home

26   total peace of mind. . . . .  That's because every Volkswagen is built to the highest standards."

27        61.     Additionally, the Class Vehicles were designed and marketed as minivans

28

CLASS ACTION COMPLAINT

1  suitable for transporting families and small children.  Volkswagen even created a

2  mockumentary-style video commercial called "The Routan Boom," featuring Brooke Shields

3  in order to promote the Routan's family-friendly features.[13]  The commercial depicts Brooke

4  Shields "confronting" families with small children and expectant mothers/families about the

5  "Routan Boom," explaining that "Americans are getting pregnant just so they can buy a

6  Routan and enjoy its German engineering."[14]

7      62.    Unfortunately, Volkswagen's promises were far from the truth.  Poor reviews,

8  and consumer complaints of numerous brake issues doomed the Routan vehicle, which was

9  completely eliminated from the Volkswagen lineup by 2013, with the exception of those sold

10  as fleet vehicles. Indeed, on or about March 27, 2013, citing the erosion of the minivan

11  segment, Volkswagen Group of America's CEO Jonathan Browning ended months of

12  speculation and confirmed that that the VW Routan would be phased out.[15]  By February of

13  2013, VW had sold less than 60,000 of the Routan vehicles since it went on sale, and

14  Chrysler's Windsor, Ontario, facility had stopped producing the Routan approximately seven

15  months prior, in July of 2012.[16]

16      63.    Beginning as early as 2009, through consumer complaints, dealership repair

17  orders, and data regarding the Chrysler Town & Country and Dodge Caravan, among other

18  internal sources, Defendants knew or should have known that the Class Vehicles and the

19  Braking System contained one or more design and/or manufacturing defects that adversely

20  affect the drivability of the Class Vehicles and cause safety hazards.  Nevertheless,

21  Defendants have actively concealed and failed to disclose this defect to Plaintiff and Class

22

23  [13] *See* YouTube.com, "The [Volkswagen] Routan Boom,"
https://www.youtube.com/watch?v=xDZSxFLcMVg (last visited Jan. 5, 2015).

24  [14] *See* AutoBlog.com, "VIDEO: Brooke Shields pretending VW Routan is NOT a Dodge Caravan," http://www.autoblog.com/2008/09/11/video-brooke-shields-pretending-vw-routan-is-not-a-dodge-carava/ (last visited Jan. 15, 2015).

25  [15] *See* AutoWeek.com, "VW Routan minivan to be dropped from lineup,"
http://autoweek.com/article/car-news/vw-routan-minivan-be-dropped-lineup (last visited Jan. 13, 2015).

26

27  [16] *Id.*

28

CLASS ACTION COMPLAINT

1    Members at the time of purchase or lease and thereafter.

2         64.    The Class Vehicles are a "re-badged" version of Chrysler Town & Country

3    ("T&C") and Dodge Grand Caravan (n/k/a "Caravan") vehicles. The Routan was produced on

4    "the same platform as the . . . T&C" and shares the Chrysler's engine and transmission.[17] As

5    such, on information and belief, the braking systems and components utilized in the Chrysler

6    Town & Country and Dodge Caravan vehicles are identical or substantially similar to those

7    used in the Class Vehicles. These Chrysler and Dodge vehicles were offered for sale in the

8    United States prior to the VW Routan's entrance into the market.

9         65.    On information and belief, the VW Routan was hastily released in the United

10   States and added to the Volkswagen lineup in an attempt to meet the American demand for an

11   economically-priced minivan. Unfortunately, in cutting costs [18] by repurposing the Chrysler-

12   built minivans (Dodge Caravan and Chrysler Town & Country), which utilized same or

13   substantially similar braking systems, Volkswagen distributed a vehicle it knew to be plagued

14   with braking system issues.

15        66.    On information and belief, the 2009, 2010, 2011, and 2012 VW Routans have

16   the same or substantially identical braking system, and the Braking System Defect is the same

17   for all Class Vehicles.

18        67.    On information and belief, the Class Vehicles' braking system is defective

19   because it fails to adequately handle the braking duties required by vehicles the size and

20   weight of the Class Vehicles, thereby leading to abnormal, premature wear of the braking

21   system's components. The defect is an undisclosed safety risk that requires consumers to

22   inspect and repair or replace their rotors and/or brake pads far more frequently than is

23   reasonably expected. However, the Braking System Defect was not known or reasonably

24   _____

     [17] See MotorTrend.com, "One Year: Arrival: 2010 Volkswagen Routan,"
25   http://www.motortrend.com/roadtests/oneyear/1009_2010_volkswagen_routan_arrival/ (last
     visited Jan. 12, 2015).

26   [18] See PopularMechanics.com, "2009 VW Routan Test Drive: VW's First American-
     Style Minivan Takes a Hint from Chrysler,"
27   http://www.popularmechanics.com/cars/news/4288196 (last visited January 10, 2015).

28

1   discoverable by Plaintiffs and Class Members before purchase or lease and without

2   experiencing the defect firsthand.

3       68.    Dating back to at least 2009, Volkswagen was aware of the defects in the

4   braking system. Volkswagen, however, failed and refused to disclose these known defects to

5   consumers. As a result of this failure, Plaintiffs and Class Members have been damaged.

6       **The Braking System Defect Poses an Unreasonable Safety Hazard**

7       69.    The Braking System Defect causes unsafe conditions, including, but not limited

8   to shaking and shuddering which can be felt through the brake pedal, floor, and steering

9   wheel. These conditions present a safety hazard because they severely affect the driver's

10   ability to control the car's speed and deceleration. As an example, these conditions may make

11   it difficult to safely slow down while in traffic because Class Members' vehicles shudder and

12   jerk when the drivers attempt to reduce their vehicles' speed.

13       70.    Complaints that Volkswagen Routan owners and lessees filed with the National

14   Highway Traffic Safety Administration ("NHTSA") demonstrate that the Braking System

15   Defect is widespread and dangerous, and that it manifests without warning. These complaints

16   reflect the abnormal and premature failure of the brake pads and rotors, the repeated,

17   unexpected repair costs, and Volkswagen's refusal to take responsibility for the defect. The

18   complaints also indicate Defendants' awareness of the problems with the braking system and

19   how potentially dangerous the defective condition is for consumers. The following are some

20   safety related complaints describing the Braking System Defect (spelling and grammar

21   mistakes remain as found in the original) (Safecar.gov, *Search for Complaints* (January 10,

22   2015), http://www-odi.nhtsa.dot.gov/complaints/):

23   

24       (a)    (2009 VW Routan 12/10/2014) PROBLEMS WITH BRAKING AT 22,837
MILES IN 2010. VEHICLE WOULD SHAKE WHEN GOING DOWN A
HILL AND APPLYING BRAKES TO STOP. FRONT BRAKE PADS
WERE REPLACED AND ROTORS TURNED . TWO YEARS LATER IN
2012 AT 43,919 MILES BACK ROTORS AND BRAKE PADS WERE
REPLACED, ALL 4 TIRES REPLACED, AND FRONT END
ALIGNMENT. IN 2013 AT 68,797 MILES 2 OF THE NEW TIRES WERE
REPLACED AND ANOTHER FRONT END ALIGNMENT. CAR STOPS
SOMETIMES AND WILL NOT COME BACK ON IMMEDIATELY. IN

25   

26   

27   

28

2014 AT 90,000 MILES, BATTERY DIED AND ANTIFREEZE IN RADIATOR EXPLODED, HAD TO PURCHASE A NEW BATTERY AND A PART FOR THE RADIATOR. HAD TO REPLACE FRONT ROTORS AND BRAKE PADS, 2 TIRES AND HAD ANOTHER FRONT END ALIGNMENT. EXTREMELY LOUD NOISE WHEN DRIVING, MECHANIC SAID IT MAY BE WHEEL BEARINGS. THE ABS AND CHECK ENGINE LIGHT COME ON AND OFF. DRIVER SIDE DOOR DOES NOT LOCK UNLESS YOU PUSH THE LOCK DOWN WITH YOUR HAND. MECHANIC SAYS THE FRONT BRAKE PADS WILL HAVE TO BE REPLACED WHEN TIRES ARE ROTATED THE NEXT TIME (THESE WERE REPLACED WITH THE ROTORS IN JUNE OR JULY 2014). IF YOU LEAN AGAINST BACK SEAT FROM THE TRUNK AREA, IT FALLS FORWARD AND THE MIDDLE SEAT NO LONGER FOLDS DOWN. ALSO, THE DRIVER SIDE WINDOW STALLS WHEN YOU TRY TO ROLL IT UP OR DOWN.

(b) (2009 VW Routan 10/25/2014) OIL CONSUMPTION SINCE 24000 MILES. VW DEALER NEVER WANT TO ADDRESS THE PROBLEM. KEEP TELL ME THIS NORMAL. NOW I HAVE TO ADD QUARTER OIL EVERY MONTH. ON MORNING CAR WASN'T STARTING AND TOOK TO THE DEALER AND HAD THE IGNITION REPLACED AT 42000 MILES BUT NOW THE KEY GET STUCK ON IGNITION MULTIPLE TIMES. I HOPE THE RECALL WILL FIX THIS PROBLEM. I HAD TO REPLACE BRAKES AT 12000 MILES DUE THE VIBRATION WHILE BRAKES. I HAD MULTIPLES ELECTRICAL PROBLEMS AND SOME WAS REPAIR AFTER COUPLE TRIPS TO THE DEALER. THIS CAR IS A LEMON. WHEN WE WILL HAVE OUR MONEY BACK?

(c) (2009 VW Routan 09/28/2014) . . . THE ENTIRE BRAKE SYSTEM NEEDS REPAIRED EVERY 7,000 MILES FOLLOWING A SUDDEN CALIPER SEIZE, THE VAN HAS NUMEROUS ELECTRICAL ISSUES THAT CAUSE THE CAR TO JUST STOP. ONE DAY I HEARD IT RUNNING IN MY GARAGE. I CANT RULE OUT ONE OF MY CHILDREN MESSING WITH THE FOB, HOWEVER, I HAVE DIFFICULTY WITH THE REMOTE STARTER MYSELF? (CLICK2X&HOLD) I DO NOT FEEL SAFE WITH THIS VEHICLE. I WILL NOT DRIVE MY CHILDREN LONG DISTANCES OR TRAVEL ROADS WITH THEM THAT REQUIRE SPEEDS OVER 40 MPH. THE VAN DIED WHILE I WAS DRIVING IT 5560MPH ON A BUSY HIGHWAY. THE VW DEALERSHIP SAID IT WAS NOT A RECALL ISSUE. I CLEARLY SEE IT IS A RECALL ISSUE FOR SOME ROUTANS, MY RECEIPT READS EXACTLY AS THE SIDE DOOR HARNESS RECALL IS STATED. I WILL BE WORKING WITH VW TO REQUEST REIMBURSEMENT, HOWEVER, I DON'T FEEL THAT IS GOOD ENOUGH. THERE IS A MAJOR PROBLEM HERE. I AM LUCKY MYSELF OR MY CHILDREN HAVE NOT BEEN HURT. IN HINDSIGHT OF THE GM IGNITION RECALL, I WOULD BE AMISS TO THINK A CAR COMPANY HAS MY BEST INTEREST IN MIND. I AM HOPING MY GOVERNMENT DOES.

(d) (2009 VW Routan 09/27/2014) WHILE DRIVING APPROX 3035MPH, MY VAN BEGAN TO SMELL HOT AND SMOKE BEGAN TO RISE FROM THE RIGHT FRONT WHEEL WELL. I HAD TWO OF MY THREE CHILDREN WITH ME. I FRANTICALLY TOLD MY 14 YR

OLD SON WHO WAS IN THE FRONT PASSENGER SEAT TO GET TO THE BACK AND HELP HIS FOUR YR OLD SISTER OUT OF HER CAR SEAT (WE WERE STILL MOVING) I PULLED INTO A PARKING LOT AND HAD THEM QUICKLY EXIT THE LEFT SLIDING DOOR OF THE VAN. LATER THAT EVENING I WENT BACK TO RETRIEVE THE VAN ALONE AND AS SOON AS THE VAN BEGAN TO MOVE IT MADE THE MOST HORRIBLE GRINDING NOISE I HAVE EVER HEARD. I IMMEDIATELY KNEW IT WAS A SEIZED BRAKE CALIPER, (NOT BECAUSE I AM A MECHANIC. I AM A SPEECH THERAPIST). I KNEW BECAUSE APPROX 4 MONTHS PRIOR THE VAN MADE THE EXACT SAME SOUND WITH NO WARNING WHEN THE RIGHT REAR CALIPER SEIZED AND BOTH FRONT AND BACK BRAKES WERE REPLACED! =$780). I DROVE TO THE CLOSEST BRAKE SHOP WHERE IT WAS REPAIRED THE NEXT DAY. COST=$733.68. I TRAVEL AS A SPEECH THERAPIST. I WAS IN JACKSONVILLE BEACH, FL DURING THIS FIASCO. THE PRIOR BRAKE REPAIR WAS DONE IN PHOENIX, AZ SO I COULD NOT USE THE SAME COMPANY OR QUESTION THE WARRANTY. IT CLEARLY ISN'T A WARRANTY ISSUE. AM I TO BELIEVE IT IS NORMAL TO REPLACE THE ENTIRE BRAKE SYSTEM INCLUDING ROTORS, DRUMS, PADS, DISCS, CALIPERS, BUSHINGS, PIN BOOTS, ETC,,, EVERY 7,000 MILES?? I THINK NOT. I DIDN'T EVEN KNOW ALL THOSE WORDS UNTIL I PURCHASED A ROUTAN. SOMETHING IS WRONG. THESE VANS ARE DANGEROUS. I WILL NOT DRIVE MY CHILDREN LONG DISTANCES OR ON THE INTERSTATE IN THE VAN, WHICH I PURCHASED BECAUSE WE DON'T ALL FIT IN THE COROLLA. I AM ASKING VW TO REIMBURSE ME. WE WILL SEE HOW THAT GOES. THANK GOODNESS ALL I HAVE LOST IS MONEY.

(e)   (2009 VW Routan 09/27/2014) WHILE DRIVING IN PHOENIX AZ THE VAN BEGAN TO SHAKE AND STEERING BECAME DIFFICULT. (THIS HAS HAPPENED IN THE PAST MULTIPLE TIMES INTERMITTENTLY). LATER THE SAME EVENING BRAKES BEGAN TO SQUEAK AND GRIND. UNTIL THIS DAY THE ONLY ISSUE HAD BEEN THE INTERMITTENT SHAKING WHILE BRAKING. THERE WAS NO SQUEAKING PRIOR TO THE GRINDING. RIGHT REAR CALIPER WAS REPLACED ALONG WITH ALL FRONT/REAR BRAKES ROTORS DRUMS AND HARDWARE. COST=$780.55

(f)   (2009 VW Routan 09/27/2014) DRIVING FROM INDIANA TO PHOENIX THE VAN BEGAN TO SHAKE VIOLENTLY WHILE BRAKING DOWNHILL ON MOUNTAINOUS TERRAIN. TEMPERATURE GAUGE WENT UP OVER 200 AND VAN SMELLED WARM. VAN DID NOT OVERHEAT AND PROBLEM SUBSIDED ONCE BACK ON LEVEL GROUND. PURCHASED VAN USED ON JULY 10 2012 WITH APPROX 25,000 MILES.

(g)   (2009 VW Routan 09/03/2014) WHEN THE VEHICLE IS TRAVELING NEAR 30MPH OR EVEN HIGHER THAN THAT, WHEN THE BRAKES ARE APPLIED, IT SHAKES VIOLENTLY. THIS CAUSES THE DRIVER TO HAVE TO HOLD THE STEERING WHEEL VERY TIGHTLY TO AVOID LOOSING CONTROL. THE BREAKING SYSTEM IN GENERAL SEEMS TO BE FAULTY AS THE BRAKES AND ROTORS HAVE HAD TO BE REPLACED/CHANGED EVERY TWO TO THREE

CLASS ACTION COMPLAINT

MONTHS. IT IS VERY EXPENSIVE TO REPLACE THESE BRAKES AND ROTORS AS WELL AS PAY FOR THE LABOR EVERY FEW MONTHS. THIS IS A GREAT CONCERN AND SHOULD BE CONSIDERED FOR A RECALL.

(h)   (2009 VW Routan 08/07/2014) SHORTLY AFTER BUYING THIS VAN THE VAN WOULD SHAKE WHEN BRAKES WERE ENGAGED, TOOK IT TO THE DEALERSHIP BUT THEY SAID NOTHING WAS WRONG WITH THE BRAKES. I TOOK IT TO ANOTHER PLACE FOR VERIFICATION AND WAS TOLD MY BRAKES WERE BAD, THE ROTORS WERE WARPED. WENT BACK TO DEALER AND TOLD MGR ABOUT THE SECOND OPINION SO HE HAD THE BRAKES REPLACED.

(i)   (2010 VW Routan 07/29/2014) WHEN I BRAKE THE STREERING WHEEL SHAKES FROM OTHER CONSUMER COMPLAINTS IT IS A BRAKE ISSUE AS IT ONLY HAPPENS WHEN I BRAKE. THERE NEEDS TO BE A RECALL! THE CAR IS STILL UNDER WARRANTY WHEN IT STARTED HAPPENING!

(j)   (2010 VW Routan 07/28/2014) THE BRAKES STARTED VIBRATING AND SHUDDERING WHEN THE BRAKE PEDAL WAS PUSHED. TOOK TO DEALER AND WERE TOLD THAT THE ROTORS WERE WARPED AND THE DISK PADS WERE WORN OUT. STILL UNDER WARRANTY SO THEY REPLACED ROTORS AND BRAKE PADS. THIS HAS HAPPENED APPROXIMATELY EVERY 8 MONTHS WE HAVE HAD THE CAR. THE FIRST THREE WERE COVERED UNDER WARRANTY. I HAD TO FIGHT WITH THE DEALER FOR THE THIRD REPLACEMENT. THE FOURTH REPLACEMENT OF THE BRAKES THE DEALER REFUSED TO COVER THE COST. WE HAD TO PAY TO GET THE WORK DONE. WE ARE NOW ABOUT 10 MONTHS FROM THOSE BRAKE REPLACEMENTS AND ONCE AGAIN THE CAR IS SHUDDERING VIOLENTLY WHEN WE APPLY THE BRAKES. THIS SEEMS TO BE A CHRONIC ISSUE AND A SAFETY ISSUE. I UNDERSTAND THAT BRAKE PADS WEAR OUT BUT I CANNOT BELIEVE THAT YOU HAVE TO REPLACE THE ROTORS AND BRAKE PADS EVERY 8/10 MONTHS UNDER NORMAL DRIVING. THIS CAR IS PRIMARILY USED TO TAKE MY KIDS TO SCHOOL AND ACTIVITIES.

(k)   (2009 VW Routan 07/15/2014) TL* THE CONTACT OWNS A 2009 VOLKSWAGEN ROUTAN. THE CONTACT STATED THAT THE BRAKE ROTORS FAILED EVERY 8,000 MILES. THE VEHICLE WAS TAKEN TOA DEALER WHERE THE FAILURE WAS UNABLE TO BE DUPLICATED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 58,329.

(l)   (2010 VW Routan 07/11/2014) THE VEHICLE'S REAR BRAKES ARE PREMATURELY WEARING UNEVEN IN THE REAR OF THE VEHICLE, CAUSING SAFETY CONCERNS FOR MY FAMILY. WHEN I WENT TO LOOK UP BRAKE REPLACEMENT ONLINE ONE OF THE REVIEWS SAID THAT A CLIP WAS LEFT OFF DURING THE MANUFACTURING PROCESS DURING THE MERGING BETWEEN CHRYSLER AND VOLKSWAGEN.

(m)   (2010 VW Routan 06/25/2014) VOLKSWAGON ROUTAN 2010: THE STEERING WHEEL SHAKES VIOLENTLY UPON BREAKING A REGULAR SPEEDS, ESPECIALLY GOING DOWNHILL. FRONT ROTORS WERE REPLACED AT 22,000, 35,000, AND NOW 54,000 MILES.

(n)   (2010 VW Routan 06/03/2014) VOLKSWAGON 2010 VOLKSWAGEN ROUTON WITH 17,000 MILES BEGAN SHAKING AND SHUDDERING EVERY TIME I BRAKE, EVEN AT SLOW SPEEDS. THIS CAR IS USED FOR MINIMAL DRIVING. I BROUGHT MY CAR IN AND WAS TOLD I NEED NEW ROTORS AND THAT MY ROTORS WERE WARPED. I AM STILL DRIVING THE CAR AND THE BRAKES STILL SHUDDER AND SHAKE.. I SPOKE TO A MECHANIC THAT DOESN'T WORK FOR VOLKSWAGEN BUT ON GERMAN CARS AND HE SAID HE OWNED A ROUTON AND IT IS A COMMON PROBLEM WITH THEIR ROTORS. I READ SEVERAL COMPLAINTS AND REVIEWS ONLINE WITH THE SAME ISSUE TOO. I DON'T THINK ITS SAFE TO HAVE CAR MANUFACTURERS MAKE BRAKE SYSTEMS SO POORLY AS I MAY BE ABLE TO AFFORD A REPAIR, MANY ELSE WONT AS THE REPAIR IS COSTLY AND NOT WHAT A PERSON WOULD EXPECT FROM A CAR WITH LITTLE MILEAGE. I JUST WANTED TO BRING IT TO YOUR ATTENTION IN CASE OTHERS HAVE REPORTED THE PROBLEM. *TR

(o)   (2011 VW Routan 05/20/2014) AFTER BUYING MY CERTIFIED ROUTAN AND ONLY PUTTING AROUND A 1000 MILES ON IT THE STEERING WHEEL WOULD START TO SHAKE WHEN BRAKING AT A SPEED OF 40MPH OR FASTER. TOOK THE CAR TO THE DEALERSHIP AND WAS TOLD THE FRONT BRAKES NEED TO BE REPLACED. AT FIRST THEY SAID IT WOULD NOT BE COVERED UNDER WARRANTY BECAUSE IT MAY HAVE BEEN CAUSED BY ME PUSHING TO HARD ON THE BRAKES. COMPLETELY BULL. THEY FINALLY SAID IT WOULD BE COVERED UNDER WARRANTY. NOW AT 31,000 THE BACK BRAKES ARE SQUEAKY AND NEED TO BE REPLACED. CALLED THE DEALERSHIP AND WAS TOLD THE SAME THING THAT THE BRAKES ARE NOT COVERED UNDER WARRANTY BUT AS BEFORE THE BRAKES SHOULD LAST MUCH LONGER. TAKING IT IN TOMORROW TO HAVE THE BRAKES INSPECTED. HOPEFULLY WILL BE COVERED. *TR

(p)   (2011 VW Routan 05/15/2014) THE VW ROUTAN RECENTLY WHEN I GOT FROM THE DELESHIP I NOTICE THAT EVERYTIME THAT I WOULD APPLY THE BRAKES WHILE DRIVING ON THE FREEWAY THEN ENTIRE VAN WOULD VIBRATE AND THE STEERING WHEEL WOULD VIBRATE EVEN MORE I DID SOME RESEARCH AND I FOUND THAT I WASN'T THE ONLY ROUTAN OWNER HAVING BRAKE PROBLEMS SO IT LOOKS LIKE THE BRAKE ROTTORS ARE OVER HEATING THAT THEN CAUSED THE ROTTORS TO WARPED!!! SO I TOOK THE CAR TO THE VW DEALERSHIP AND THEY HAD TO REPLACE ALL FOUR ROTTORS AND BRAKE PADS!! BUT BEFORE REPLACING THEM THEY KEEP TELLING ME THAT IT WAS DRIVER ERROR. SO NOW A YEAR AND HALF AFTER THE VW DEALERSHIP FIX THE PROBLEM THE CAR NEEDS ALL NEW BRAKE ROTTORS AND PADS AGAIN DUE TO THE OVER HEATING

CLASS ACTION COMPLAINT

1        THAT CAUSED THE ROTTORS TO WARPED AND NOW THEY
WON'T FIX THE PROBLEM AGAIN BECAUSE THE WARRANTY
EXPIRED; *TR

(q)    (2009 VW Routan 01/08/2014) THE STEERING WHEEL SHAKES AND
VIBRATES WHEN BRAKING AT OVER 30 MPH. HAD BRAKES
SERVICE 3 TIMES AND THE PROBLEM STILL PERSISTS. THERE
MUST A DEFECT IN THE BRAKE COMPONENT . OTHER OWNERS
HAVE SIMILAR PROBLEMS .THEY SHOULD HAVE A RECALL OR
SOMETHING BEFORE SOMEBODY DIES. *TR

(r)    (2010 VW Routan 12/03/2013) BOUGHT THE VAN IN FEBRUARY 2012
SINCE THEN IT HAS BEEN IN THE SHOP 11 TIMES FOR
TRANSMISSION,ROTORS,AND MY PASSENGER SLIDING DOORS
THEY OPEN AUTOMATICALLY. NOW ITS LEAKING ANTIFREEZE
AND WE BOUGHT EXTENDED WARRANTY AND THIS PART THE
PLASTIC Y PART THAT CONTEXTS TWO HOSES THEY SAY ISN'T
COVERED AND WANTS US TO PAY 450$ TO DO IT..THE VAN HAS
38,035 MILES WE BOUGHT IT WITH 18,563 MILES HOW CAN THIS
VEHICAL HAVE THIS MANY PROBLEMS? MY POWER DOORS I
BELIEVE IF THEY OPEN WHEN YOUR PUMPING GAS ISN'T RIGHT.

(s)    (2011 VW Routan 11/22/2013) TL* THE CONTACT OWNS A 2011
VOLKSWAGEN ROUTAN. THE CONTACT STATED THAT WHILE
DRIVING APPROXIMATELY 40 MPH, THE DRIVER'SIDE BRAKE
SEIZED INTERMITTENTLY AND WITHOUT WARNING. THE
CONTACT ALSO STATED THAT WHEN HE DROVE OVER A ROAD
BUMP OR POWERED THE VEHICLE OFF AND RESTARTED, THE
FAILURE WOULD CEASE. THE FAILURE WAS RECURRING. THE
VEHICLE WAS TAKEN TO A DEALER WHRER THE TECHNICIAN
DIAGNOSED THAT THE BRAKE FLUID WAS BURNED. THE
ROTORS, BRAKE PADS, BRACKETS AND THE BRAKE FLUID ALL
NEEDED TO BE REPLACED. THE VEHICLE HAD NOT BEEN
REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE
PROBLEM. THE APPROXIMATE FAILURE MILEAGE WAS 26,000.

(t)    (2011 VW Routan 10/04/2013) THIS VEHICLE HAS BEEN SERVICED
BY THE SELLING DEALER SINCE IT WAS PURCHASED JULY 2011.
THIS VEHICLE HAS HAD MANY SERIOUS / SAFETY PROBLEMS.
THE BRAKES HAVE BEEN REPLACED 2 OR 3 TIMES. THE MOST
RECENT PROBLEM WAS THE POWER BRAKE BOOSTER (OR
SOMETHING LIKE THAT) HAS FAILED. MY WIFE WAS NOT ABLE
TO STOP THE VAN. SHE WENT THROUGH A RED LIGHT WHERE
CROSS TRAFFIC WAS TRAVELING AT SPEEDS OF 40MPH OR
GREATER. HER DRIVING SKILLS AND USING BOOTH FEET ON
THE BRAKE PEDDLE SHE WAS ABLE TO SLOW THE VAN AND
STEER IT FROM GETTING BLIND SIDED. IT IS MY BELIEF THAT
THIS VEHICLE IS UNSAFE, AND SHOULD BE REMOVED FROM THE
ROADS. THE AMOUNT PROBLEMS, WHILE REPAIRED UNDER
WARRANTY IS UNHEARDOF FOR A NEWER MODEL VEHICLE.
SAFELY FOR THE OCCUPANTS AND OTHERS AROUND IS THE NO.
1 PRIORITY. WITH ALL THE PROBLEMS THIS VAN SHOULD BE
REMOVED AND MARKED UNSAFE, AND UN DRIVABLE. THIS
LAST PART THAT FAILED COULD BECOME A MAJOR RECALL.
*TR

Page 22

(u)    (2011 VW Routan 09/25/2013) SHORTLY AFTER PURCHASING THE VEHICLE WE NOTICED THE FRONT BRAKES CAUSED A VIBRATION/ WOBBLE AT SPEED WHEN BRAKING, THIS WAS WITH LESS THAN 9000 MILES ON THE VEHICLE. NOW AGAIN AT LITTLE MORE THAN 24000MI. WE ARE TAKING THE VAN IN FOR WARRANTY REPLACEMENT OF THE BRAKES AND ROTORS. I'M TOLD BY MY ORIGINAL DEALER THAT THERE IS A SERVICE ADVISORY NOTICE FOR THIS ISSUE. *JS

(v)    (2011 VW Routan 09/25/2013) WV 2011 ROUTAN. WHEN THE REAR TIRES/BRAKES GET WET EITHER BY RAIN OR WASHING, AND THE PARKING BRAKE IS APPLIED, THE BRAKES WILL NOT RELEASE WHEN YOU UNLOCK THE PARKING BRAKE PEDAL, DEALER KEPT THE VEHICLE OVERNIGHT AND SOAKED REAR BRAKES WITH GARDEN HOSE AND APPLIED PARKING BRAKE, NEXT MORNING IT WOULD NOT UNLOCK, DEALER REPLACED BRAKE PAD, TOOK VEHICLE AND WENT HOME SAME THING AFTER RAIN, THIS IS THE 8TH TIME I HAVE BEEN STRANDED IN PARKING LOTS DUE TO THIS, TOOK BACK TO DEALER WHO THEN REPLACED REAR BRAKES CALIPER, WENT HOME AND SAME THING AGAIN ONCE WET, TOOK BACK TO DEALER WHO HAD A VW OF AMERICA REP COME TO DEALERSHIP AND STATED THAT THE BRAKES WHEN WET AND PARKING BRAKES IS APPLIED "IT IS LIKE WETTING A SHEET OF GLASS AND LAYING ANOTHER SHEET OF GLASS ON TOP IT WILL STICK" THAT THE BRAKES LOCKING UP AND REQUIRES 3000 RPM'S WHILE IN DRIVE TO GET THEM UNSTUCK THE VW REP STATED " THIS IS NORMAL AND NOTHING WILL BE DONE. .I AM VERY DISAPPOINTED WITH THE ANSWER THE VW REP LEFT WITH THE SERVICE MANAGER JOHN, THAT ANSWER IS NOT ACCEPTABLE, I WILL NOT SUBJECT MY WIFE AND CHILDREN TO BE POSSIBLE STRANDED WHEN THE BRAKES GET WET, IT IS CURRENTLY TAKING 3000 RPM'S TO FORCE THE BRAKE TO POP LOUD AND UNLOCK IN ORDER TO DRIVE THE VEHICLE, THIS TO ME IS NOT NORMAL, I HAVE DRIVEN MANY OTHER VEHICLES IN THE RAIN AND AFTER WASHING NEVER TO HAVE THE BRAKES FREEZE UP AS WITH THIS 2011 ROUTAN, ALSO REPORTED EXCESSIVE BRAKE DUST ON BOTH REAR WHEELS, NONE ON FRONT WHEELS, ALL WV CAN TELL ME IS MY COMPLAINS ON THIS MATTER IS DOCUMENTED? *TR

(w)    (2009 VW Routan 08/29/2013) TL* THE CONTACT OWNS A 2009 VOLKSWAGEN ROUTAN. THE CONTACT STATED THAT WHILE TRAVELING APPROXIMATELY 30 MPH, THE VEHICLE SUDDENLY STALLED. THE VEHICLE WAS MOVED TO THE SHOULDER WHERE IT WAS RESTARTED. THE VEHICLE RESUMED NORMAL FUNCTION. THE CONTACT ALSO MENTIONED THAT THE BRAKES HAD TO BE REPLACED OFTEN. THE VEHICLE WAS TAKEN TO THE DEALER WHERE THE FAILURE COULD NOT BE DIAGNOSED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS CONTACTED ABOUT THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 47,000.

(x)    (2009 VW Routan 08/12/2013) SINCE PURCHASING THE VEHICLE AS A NEW CAR IN OCTOBER OF 2009 WE HAVE EXPERIENCED

CLASS ACTION COMPLAINT

INTERMITTENT BUT CHRONICALLY RECURRING ISSUES WITH VIOLENT SHAKING DURING BRAKING ON OUR 2009 VW ROUTAN. TO WORK THE PROBLEM THE REAR BRAKE ROTORS AND PADS WERE REPLACED BY THE OEM THREE MONTHS AFTER PURCHASING THE VEHICLE. THE PROBLEM PERSISTED & AFTER REPEATED VISITS TO THE DEALER THE FRONT BRAKES AND ROTORS WERE REPLACED BY THE OEM AT 15,019 MILES ON OCTOBER 27, 2010. VIBRATION DURING BREAKING STILL PERSISTED AT HIGHWAY SPEEDS BUT WAS MANAGEABLE. IN JULY OF 2013 HEAVY VIBRATION RETURNED. THE DEALER INFORMED US ALL FOUR TIRES HAD UNEVEN WEAR AND WOULD NEED TO BE REPLACED, ALONG WITH ALL 4 AIR PRESSURE GAUGES. SHAKING CONTINUED SO WE THEN PAID TO HAVE THE FRONT ROTORS AND BRAKE PADS REPLACED AGAIN AT 47,300 MILES (APPX) ON AUGUST 6, 2013. AS OF NOW THE VEHICLE STILL VIBRATES AT HIGHWAY SPEED BRAKING ALTHOUGH LESS VIOLENTLY. WE BELIEVE SEVERAL ISSUES ARE AT PLAY POSSIBLY: INFERIOR OR DEFECTIVE BRAKE ROTORS, BOTH FACTORY INSTALLED AND OEM REPLACEMENT ROTORS CHRONIC STABILITY ISSUE AT HIGHWAY SPEEDS UNEVEN WEAR ON TIRES WHICH CONTRIBUTED TO MORE RAPID WEAR AND TEAR NEAR SIMULTANEOUS FAILURE OF ALL 4 AIR PRESSURE GAUGES BEFORE 50,000 MILES. WE HAVE KEPT THE REPLACED TIRE PRESSURE GAUGES, BRAKE ROTORS AND PADS IF NHTSA WOULD LIKE TO EXAMINE. *TR

(y)    (2010 VW Routan 04/11/2013) 2010 ROUTAN WITH 26K MILES PULLS TO THE RIGHT AND MOST LIKELY HAS DONE SO SINCE I BOUGHT IT SINCE THE TIRES NEED REPLACING. THE BRAKES HAVE BEEN REPLACED AT 18K AND NOW NEED TO BE DONE AGAIN. VW DENIES THERE IS AN ISSUE WITH VEHICLES PULLING TO THE RIGHT. OPENED CASE 130240300 WITH VW. THEY REFUSE TO COVER THE COST TO DIAGNOSE THE CAUSE OF THE PULLING AND TIRE WEAR. RECALL NEEDS TO BE ISSUED I HAVE SEEN NUMEROUS POSTINGS WITH THE SAME ISSUE ONLINE. *TR

(z)    (2010 VW Routan 11/05/2012) TL* THE CONTACT OWNS A 2010 VOLKSWAGEN ROUTAN. THE CONTACT STATED THAT THE VEHICLE EXPERIENCED NUMEROUS FAILURES. THE REAR ROTORS BECAME WARPED NUMEROUS TIMES AND THE DEALER REPLACED THE ROTORS FOUR TIMES. THE TRANSMISSION WOULD CAUSE THE VEHICLE TO LUNGE ABRUPTLY WHEN THE GEAR WAS SHIFTED FROM REVERSE TO DRIVE. ADDITIONALLY, THE FOG LIGHT ASSEMBLY BECAME OVERHEATED AND BURNED SEVERAL TIMES. THE PLASTIC ON THE FRONT PASSENGER SIDE DOOR BECAME FRACTURED AND CAUSED THE CONTACT TO SUSTAIN LACERATIONS TO THE RIGHT HAND AND FINGERS. THE VEHICLE WAS TAKEN THE TO THE DEALER WHERE ALL DEFECTIVE PARTS WERE REPLACED HOWEVER, THE CONTACT WAS CONCERNED THAT THE FAILURES WOULD LIKELY RECUR. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 11,418 AND THE CURRENT MILEAGEWAS 14,470.

(aa)   (2009 VW Routan 07/12/2012) PROBLEM WITH THE CAR: START

VIBRATING WHEN BRAKES ARE APPLIED, THEN START SHAKING. I HAVE TAKE THE CAR TO 2 DIFFERENT DEALERS (4 DIFFERENT TIMES) SINCE JUNE 2011. FIRST TIME DEALER REPLACE BRAKE PADS AND ROTORS. SECOND TIME DEALER SERVICE REP TOLD "THAT NOTHING IS WRONG WITH IT". THIRD THEY SAID "THAT'S NORMAL WEAR AND TEAR" SUBMITTED A COMPLAINT THROUGH CORPORATE. A LADY FROM CORPORATE CALLED ME BACK AND TOLD ME THE SAME THING THE DEALER TOLD ME. SHE ALSO STATED THAT WILL FORWARD THE COMPLIANT TO THE DEALER MANAGER. FOURTH TIME: I TOOK IT TO A DIFFERENT DEALER. I ASKED HER "DOES ANYBODY CALL CHRYSLER AND ASK FOR GUIDANCE OR SEE IF THEY HAVE ANY BRAKE PROBLEMS WITH THEIR CARS. BY THE WAY THIS VW IS MADE BY CHRYSLER. FOURTH TIME: I TOOK IT TO A DIFFERENT DEALER. THIS DEALER CALLED ME (PHILLIPS) AND TOLD THAT THE FIRST TIME THE OTHER DEALER FIX IT, THAT WAS IT. HE KEEP ON SAYING "THAT WAS A ONE TIME DEAL, IF YOU WANT IT FIX YOU HAVE TO COME UP WITH OVER $350.00. I TOLD HIM THAT HE WAS NOT RIGHT BECAUSE THE CAR STILL UNDER WARRANTY. I RECEIVED THE CAR BACK AND THE SERVICE TICKET SAID " THE ROTORS WERE RESURFACED AS A GOODWILL FOR CUSTOMER SATISFACTION. I DROVE THE CAR THIS MORNING AND IS DOING THE SAMETHING. I CANNOT AFFORD FOR THE BRAKES TO FAIL AND HAVE A CRASH FOR THE DEALER TO LOOK PASS THE BRAKE PADS AND ROTORS. *TR

(bb)   (2009 VW Routan 06/11/2012) WE BOUGHT THIS VEHICLE IN APRIL OF 2009 BASED ON ALL OF THE "SAFETY FEATURES" AND AS IT TURNS OUT HAS BEEN ONE OF THE MOST UNSAFE VEHICLE I HAVE EVER OWNED. SINCE PURCHASE WE HAVE HAD THE ROTORS CUT 2X AND REPLACED ONCE DUE TO VIOLENT SHAKING IN FRONT END WHEN BRAKING AT ANY SPEED. THE FIRST TIME WE WERE TOLD THIS WAS DUE TO THE VEHICLES SITTING IN THE RAIN FOR A PERIOD OF TIME . WHAT ??? THAT MAY BE THE MOST AGGRAVATING OF ALL WHICH IS THAT VW WOULD RATHER ASSUME YOU ARE STUPID ENOUGH TO BELIEVE THAT. ANOTHER ISSUE HAS BEEN THAT THE HEAD UNIT (DVD PLAYER & BACKUP CAM) HAVE HAD ISSUES FROM DAY 1 SUCH AS THE UNIT SWITCHING FROM DVD TO RADIO ON ITS OWN. AT TIMES THE DVD SCREENS GO BLANK WHICH REQUIRES YOU TO SHUT DOWN THE SYSTEM AND START IT UP AGAIN AND THE BACKUP CAM WILL NOT GO OFF ONCE THE VEHICLE IS PUT IN DRIVE. THIS PROBLEM WAS THEN REFERRED TO VW FOR THEM TO TELL ME THAT THEY FOUND NO ISSUES AND THAT I SHOULD BRING THE VEHICLE IN WHEN IT HAPPENS, WHICH I DID TO NO AVAIL. MY FINAL COMPLAINT IS THE "WORRY FREE" MAINTENANCE. I HAVE ALWAYS CHANGED OIL RELIGIOUSLY IN ANY VEHICLE I HAVE EVER OWNED EVERY 3000 MILES UNLESS I USED SYNTHETIC WHICH I WOULD CHANGE BEFORE 5000 MILES. VW HAS TOLD US TO COME IN FOR SERVICE EVERY 6000 MILES WHICH I HAD CLAIMED TO BE WRONG AND IT SHOULD BE CHANGED EVERY 3000. AGAIN I WAS TREATED AS IF I AM STUPID AND VW'S SOMEHOW CAN GO LONGER IN BETWEEN OIL CHANGES USING CONVENTIONAL OIL. NEEDLESS TO SAY I NOW HAVE A 2009 VW ROUTAN THAT HAS

JUST OVER 28000 MILES, IS OUT OF WARRANTY , AS 36 MONTHS HAS PASSED SINCE PURCHASE, AND HAS A CHECK ENGINE LIGHT THAT CONTINUES TO GO ON AND OFF AND ALTHOUGH THE OIL NOW GETS CHANGED EVERY 3000 MILES AT MY EXPENSE I HAVE TO CONTINUOUSLY ADD OIL EVERY 500 OR SO MILES. DOES ANY OF THIS SEEM TO BE THE RESULT OF NEGLIGENCE ON THE PART OF VW? *TR

(cc)   (2009 VW Routan 03/13/2012) AFTER LESS THAN 1 YEAR OF DRIVING THE VAN, I NOTICED SHAKING WHILE BRAKING. I THOUGHT IT WAS JUST BAD BRAKING HABITS. LAST YEAR, I RODE AN AMERICAN VERSION OF THIS VAN (CHRYSLER OR DODGE), THERE WAS THE SAME PROBLEM. I SENT IT TO THE DEALERSHIP TODAY AND FOUND OUT THAT REAR ROTORS WERE BAD. I CHECKED THE INTERNET AND THERE WERE SIMILAR PROBLEMS. I ASKED THEM TO REPAIR IT HOPEFULLY, THEY WILL REPLACE WITH BETTER PARTS. I THINK THE BRAKES WERE NOT DESIGNED FOR THE V8 ENGINE. *TR

(dd)   (2010 VW Routan 01/15/2012) PURCHASED THE VEHICLE FROM THE DEALERSHIP IN APRIL 2011. WE TOOK A FAMILY VACATION IN JUNE AND NOTICED THAT THE VEHICLE SHUT ITSELF OFF A FEW TIMES WHILE IN MOTION; CAUSING THE VEHICLE TO LOSE POWER AND ALL STEERING. ON THE SAME TRIP, WHEN USING THE KEY FOB, THE ENTIRE ELECTRICAL SYSTEM WOULD FREEZE AND SHUT ITSELF OFF. IT EVENTUALLY TURNS BACK ON AFTER 5 OR SO MINUTES. THE WYNN MODULE WAS REPLACED. BEFORE DEPARTING FOR THE VACATION, WE HAD BRAKE ISSUES WITH THEM MAKING A GRINDING NOISE AND , SOMETIMES NO STOPPING POWER. DEALER REPLACED ROTORS. THE PASSENGER SLIDER DOORS HAVE ISSUES. WHEN CLOSING, THE DOOR'S SAFETY MECHANISM WOULD NOT BACK TRACK THE DOORS WHEN IT HIT SOMETHING COMING OR GOING INTO/OUT OF THE VEHICLE. THE DOOR SHUT ON MY SON! THE VEHICLE HAS BEEN TO THE DEALERSHIP MORE TIMES THAN A NEW VEHICLE SHOULD.... DID I MENTION THAT WE STILL HAVE BRAKE ISSUES AND ELECTRICAL ISSUES. IT SEEMS THAT ALL THE DEALERSHIP CAN SAY IS THAT WE CANNOT DUPLICATE THE SITUATION. EACH TIME THAT THE VEHICLE GOES TO THE DEALER, THEY HAVE IT FOR A WEEK OR MORE! I HAVE OWNED CHRYSLER/DODGE PRODUCTS BEFORE THIS AND THIS IS WHY I WENT TO A VW. NEEDLESS TO SAY, I DIDN'T DO MY HOMEWORK BEFORE PURCHASING. IT SEEMS THAT THIS VW IS A "CHRYSLER". AS OF TODAY, 15 JANUARY, I AM LOOKING INTO THE "LEMON LAW" AND POSSIBLY SEEKING LEGAL ACTION. SOMETHING NEEDS TO BE DONE. WHY DO WE HAVE TO WAIT UNTIL THIS VW VEHICLE CAUSES SERIOUS DAMAGE TO PROPERTY, PERSON AND MAYBE EVEN DEATH BEFORE THE NHTSA LOOKS INTO THE VW SITUATIONS?

(ee)   (2009 VW Routan 12/18/2011) BRAKE ROTORS WARP VERY QUICKLY ON THIS VEHICLE (WHICH IS ALSO MADE BY CHRYSLER). DURING HEAVY BRAKING AT 40MPH THE STEERING WHEEL VIBRATES VERY HEAVILY DUE TO WARPED BRAKE ROTORS (HAPPENS UNDER 12000MILES). DON'T SEE HOW

ANTILOCK SENSORS CAN WITHSTAND THIS VIBRATION AND GET AN ACCURATE READING TO KEEP THE VEHICLE FROM LOCKING THE WHEELS. I HAVE ALREADY HAD INCIDENTS WHERE APPLYING THE BRAKES AT 40MPH HOUR THAT I HAVE SKIDDED BUT WAS SMART ENOUGH TO LET OFF ONCE I REALIZED THE ABS WAS NOT FUNCTIONING CORRECTLY AND REAPPLIED THE BRAKES.VW AND DEALER ACKNOWLEDGE THE PROBLEM AND REPLACE THE ROTORS WITH THE SAME DEFECTIVE ROTORS ON THE VEHICLE. THIS IS AN ENGINEERING PROBLEM AND NOT A WEAR AND TEAR ISSUE AS THEY CLAIM. IT WILL ONLY BE A MATTER OF TIME BEFORE SOMEONE GETS KILLED IN A BAD ACCIDENT THINKING THAT ABS BRAKES AND THERE BRAKING SYSTEM IS RELIABLE. HIGH SPEED BRAKING IS NOT SOMETHING YOU DO EVERYDAY BUT IN AN EMERGENCY AND THAT'S WHEN YOU REALIZE THAT YOUR BRAKES ARE WARPED AND IN NEED OF REPAIR!!! BUT IT MIGHT BE TOO LATE!!! *TR

(ff)   (2009 VW Routan 11/28/2011) TL* THE CONTACT OWNS A 2009 VOLKSWAGEN ROUTAN. THE CONTACT STATED THAT THE FRONT BRAKE ROTORS WERE WARPED. WHILE DEPRESSING THE BRAKES TO A STOP, THE VEHICLE WOULD SHIMMER BEFORE STOPPING. THE VEHICLE WAS TAKEN TO THE DEALER PREVIOUSLY WHO REPLACED THE BRAKE PADS AND ROTORS UNDER WARRANTY. THE MANUFACTURER WAS NOT NOTIFIED OF THE RECENT FAILURE. THE VIN WAS UNKNOWN. THE FAILURE MILEAGE WAS 26,000.

(gg)   (2010 VW Routan 11/03/2011) THE REAR ROTORS ARE FOUND TO BE OUT OF SPECIFICATION FROM THE FACTORY. THE VEHICLE VIBRATES SEVERELY WHEN BRAKING FROM SPEEDS IN EXCESS OF 50 MPH. I FIRST COMPLAINED ABOUT THE PROBLEM TO THE DEALERSHIP THE VEHICLE WAS AT APPROXIMATELY 3,500 MILES AND WAS TOLD THAT IT WAS A TIRE PRESSURE PROBLEM AND THAT THE ROTORS WERE FINE. I COMPLAINED AGAIN AT APPROXIMATELY 9,000 MILES AND WAS TOLD THE SAME THING. FINALLY AT 12,606 MILES I RETURNED TO THE DEALERSHIP AND REQUESTED THAT THEY TEST THE VEHICLE AT 50 MPH, AS ON PREVIOUS OCCASIONS THEY HAD DRIVEN IT IN THE PARKING LOT AND THE PROBLEM DOES NOT MANIFEST AT SPEEDS BELOW 40 MPH. THE DEALERSHIP FINALLY ADMITTED THAT THERE WAS A PROBLEM WITH THE REAR ROTORS IN THAT THE WERE OUT OF SPECIFICATION, I.E. THE WRONG ONES HAD BEEN INSTALLED AT THE FACTORY. MY CONCERN IS THAT AN ACCIDENT COULD HAVE OCCURRED DUE TO THE INCORRECT ROTORS AND I NOW WONDER HOW MANY OTHER ROUTAN VANS LEFT THE FACTORY WITH THE SAME PROBLEM. IF THE DEALERSHIP AND DONE A PROPER JOB WHEN I FIRST COMPLAINED ABOUT THE PROBLEM I WOULD NOT BE CONCERNED AT THE MOMENT. VW COULD HAVE FACED A SEVERE LIABILITY LAWSUIT IF I HAD BEEN INVOLVED IN A CRASH BECAUSE OF THE OUT OF SPECIFICATION ROTORS. *TR

(hh)   (2011 VW Routan 08/24/2011) HAD THE VAN LESS THAN 3 MONTHS AND TOOK IT IN FOR SERVICE BRAKES SQUEAKING AND

STEERING PULLING TO RIGHT W/ONLY 4K MILES. FOUND OUT STEERING BOOT WAS "DISINTEGRATED" AND NEEDED TO BE REPLACED, ALONG WITH STEERING PUMP AND RELATED PARTS. DEALERSHIP HAD NO EXPLANATION AS TO WHY THE DAMAGE OCCURRED OR WHAT COULD HAVE CAUSED IT. MY VAN WAS IN THE SHOP FOR 28 DAYS WAITING FOR AVAILABLE PARTS AND COMPLETING REPAIRS. I HAVE ONLY HAD MY VAN BACK A WEEK AND IT'S PULLING TO THE RIGHT AGAIN. ALSO, A/C DOESN'T COOL CONSISTENTLY FADES IN AND OUT. *TR

(ii)    (2009 VW Routan 08/11/2011) THE 09 VW ROUTAN HAS NEEDED BRAKES AND ROTORS REPLACED EVERY 9 MONTHS. TO DATE VW HAS COVERED THE COST OF REPLACEMENT UNDER WARRANTY HOWEVER HAVE YET TO MAKE A RECALL ON THESE PARTS.

(jj)    (2009 VW Routan 08/06/2011) BOUGHT THE VAN IN SEPT OF 2009 WITH APPROXIMATELY 1000 MILES. WERE TOLD IT WAS A DEMO VEHICLE FOR AUTO SHOWS. HAD TO BRING IT BACK WITHIN A COUPLE OF WEEKS FOR BRAKE ISSUES...POUNDINGPULSATING WHEN STOPPING. BRAKE ROTORS AND PADS CONTINUALLY PULSATE. PROBLEM IS WORSE WHEN STOPPING ON THE DOWNHILL OR WHEN BRAKES ARE HEATED OR PRESSURED. FEEL LIKE WE LOSE BREAKING ABILITY WHEN BREAKING ON THE DOWNHILL. WE HAVE BROUGHT THE CAR IN MULTIPLE TIMES TO HAVE THE SITUATION CORRECTED. UNDER WARRANTEE AGREEMENT, ROTORS HAVE BEEN REPLACED A COUPLE OF TIMES, PADS REPLACED SEVERAL TIMES AT VOLKSWAGON'S EXPENSE. PROBLEM CONTINUES TO OCCUR. LAST SERVICE (5/10/11) AT VOLKSWAGON DEALERSHIP, BRAKES WERE INSPECTED AND WE WERE TOLD NUMEROUS PROBLEMS NEEDED FIXING INCLUDING FRONT AND REAR ROTORS RESURFACED, PADS, ETC. BUT EVEN THOUGH CAR WAS STILL UNDER WARRANTEE, THEY WOULD NOT COVER THE REPAIRS AND WE WOULD HAVE TO PAY FOR THEM. VOLKSWAGON HAS RECORDS OF SERVICE TO OUR VAN SO KNOW OF THE ONGOING ISSUE WITH THE BRAKES FROM THE TIME WE PURCHASED IT. WE HAVE SPOKEN TO OTHER OWNER WHO IS EXPERIENCING SAME ISSUE WITH HER BRAKES. WE FEEL THAT VOLKSWAGON NEEDS TO HELP SOLVE THIS PROBLEM AS OBVIOUSLY REPLACING ROTORS AND PADS DOES NOT SOLVE THE PROBLEM. WE USE THIS CAR TO TRAVEL BETWEEN HOMES IN CT AND FL AND FEEL THAT THIS IS A SAFETY ISSUE THAT NEEDS TO BE ADDRESSED. CAR WAS PURCHASED FROM AND SERVICED AT VOLKSWAGON IN AND ALSO SERVICED AT IN CLEARWATER, FL. LAST SERVICE, WHEN THEY REFUSED TO COVER COST OF REPAIRS TO BRAKES WAS AT IN FL. WE HAVE COMPLETE SET OF SERVICE RECORDS. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) *TT

(kk)    (2009 VW Routan 06/16/2011) TL* THE CONTACT OWNS A 2009 VOLKSWAGEN ROUTAN. THE CONTACT WAS DRIVING VARIOUS SPEED AND WHEN PRESSURE WAS APPLIED TO THE BRAKE PEDAL, THERE WAS A DELAYED RESPONSE WITH AN EXCESSIVE

VIBRATION. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER ON FIVE SEPARATE OCCASIONS WHO STATED THE BRAKES WERE NOT COMPATIBLE FOR THE VEHICLE WEIGHT CAPACITY. THE FRONT AND REAR ROTORS WERE REPLACED FIVE TIMES. THE MANUFACTURER WAS MADE AWARE OF THE DEFECT. THE APPROXIMATE FAILURE MILEAGE WAS 200.

(ll)    (2009 VW Routan 05/21/2011) VW ROUTAN 2009THE BRAKING SYSTEM AFTER 6 WEEKS STARTED TO SHAKE AND AT TIMES I HAVE COME CLOSE TO NOT COMING TO A FULL STOP DUE TO THE VIOLENT VIBRATION IT CAUSED. I AM THINKING THAT IF I DON'T EASE UP ON THE BRAKES THAT SOMETHING IS GOING TO EXPLODE. THIS CONTINUES EVEN AFTER REQUESTING FOR THE DEALERSHIP TO INVESTIGATE. NOW AT 18000 MILES I AM REQUIRING TO REPLACE ROTORS AND BRAKES. $$$. UNFAIR. WITH ALL THE RECALLS ASSOCIATED WITH THIS VEHICLE, I AM TEMPTED TO TRADE IN.. I USE TO LOVE AND TRUST THE VW REPUTATION:(( TIME TO CHANGE!! *TR

(mm)    (2009 VW Routan 03/17/2011) PREMATURE REAR BRAKE FAILURE. WITH 40K MILES THE REAR CALIPER LOCKED CAUSING BURNING OF THE PADS, AND REQUIRING COMPLETE REPLACEMENT OF ALL REAR BRAKE COMPONENTS. *TR

(nn)    (2009 VW Routan 02/24/2011) BRAKES STARTED SHAKING AT AROUND 3,000 MILES. WHEN THE BRAKES WERE APPLIED THE WARPED ROTORS CAUSED A SHIMMY THAT WAS ALMOST UNCONTROLLABLE. THE DEALER TURNED THE ROTORS AND WITHIN 500 MILES THEY EXHIBITED THE SAME PROBLEM AGAIN. THE DEALER THEN CHANGED ALL FOUR ROTORS. THE VEHICLE NOW HAS 20,000 MILES AND IS SHOWING THE SAME PROBLEM AGAIN. *TR

(oo)    (2009 VW Routan 02/18/2011) BAD REAR BRAKES / ROTORS. *LN

(pp)    (2009 VW Routan 02/14/2011) THE ROTORS IN MY 2009 VW ROUTAN HAD TO REPLACED AFTER 3900 MILES AND NOW AGAIN AT 9930 MILES. THE VAN SHAKES HORRIBLY WHEN BRAKING ON THE FREEWAY OR GOING DOWNHILL USUALLY ASSOCIATED WITH ANY SPEED OVER 40 MILES AN HOUR. THE SERVICE AT THE DEALERSHIP SEEMED AWARE THAT IT WAS A CONTINUAL PROBLEM. THE ROTORS WILL ALWAYS BECOME WARPED, THE VAN WILL SHAKE, AND WE WILL HAVE TO TAKE THE VAN IT TO HAVE TO ROTORS ADJUSTED ACCORDING TO MY RECORDS, ROUGHLY EVERY 4000 MILES. THE VAN HAS 10040 MILES ON IT AND IS 1 YEAR OLD. *TR

(qq)    (2009 VW Routan 01/20/2011) TL*THE CONTACT OWNS A 2009 VOLKSWAGEN ROUTAN. WHILE THE VEHICLE WAS PARKED WITH THE KEY IN THE IGNITION, THE REAR DOOR OPENED AND WOULD NOT CLOSE. THE CONTACT TURNED THE VEHICLE OFF AND RESTARTED IT; THE DOOR THEN CLOSED. SHE STATED THAT ONCE A CHILD'S HANDS GOT CAUGHT IN THE REAR DOOR. THE VEHICLE WAS TAKEN TO TWO AUTHORIZED DEALERS SEVEN TIMES; ONCE THE DEALER VACUUMED THE CHANNELS

WHERE THE PULLEYS WERE LOCATED. THE DOORS HESITATED AFTER BUT DID NOT STAY OPEN. THE VEHICLE WAS TAKEN TO A LOCAL MECHANIC FOR BRAKE ISSUES AS THE BRAKES WERE GRINDING AND WAS INFORMED THAT THE REAR DRUMS AND ROTORS NEEDED TO BE REPLACED. THE TRANSMISSION HESITATED AND THE SEAMS WERE SEPARATING ON THE REAR PORTION OF THE FRONT SEATS. THE VEHICLE HAD NOT BEEN REPAIRED. THERE WERE FIVE RECALLS FOR THE VEHICLE BUT THE REPAIRS HAD NOT BEEN PERFORMED. THE VIN WAS UNAVAILABLE. THE FAILURE MILEAGE WAS APPROXIMATELY 5,000 AND THE CURRENT MILEAGE WAS 26,000.

(rr) (2010 VW Routan 01/19/2011) ROUTAN SEEMED TO JOLT/SKID WHEN BRAKE WAS PRESSED. THIS WOULD HAPPEN APPROXIMATELY EVERY 3RD DAY. TOOK IT TO THE DEALERSHIP AND THEY FOUND THE ROTORS WERE WORN. THIS I CANNOT UNDERSTAND WHEN IT IS A NEW 2010 WHICH I PURCHASED IN AUGUST OF 2010. I DO NOT COMPREHEND AND UNDERSTAND THEIR EXPLANATION. THE DESCRIBED HOW THE ROTOR WORKS ALONG WITH THE BRAKE. BOTTOM LINE IS A MORE SENSIBLE MATERIAL IS BEING USED. THEY WERE NOT REPLACED ONLY TOUCHED UP. MAKES NO COMPLETE SENSE AND TO ME IS ALREADY A SAFETY HAZARD. ALSO THERE IS A TICKING SOUND COMING FROM THE ENGINE BUT THEY COULD NOT DETECT/FIND IT. I'M TO GO BACK AND DO A TEST DRIVE WITH THEIR TECHNICIAN SO THAT I CAN POINT OUT TO THEM THE SOUND. WELL TODAY WHEN I STARTED THE ROUTAN IT HAS MORE OF A CLICKING SOUND WHICH WAS NOT THERE BEFORE. I WOULD HEAR THE SOUND ONLY WHEN THE GAS PEDAL WAS BEING USED. WHEN GAS PEDAL WOULD BE RELEASED IT WOULD GO AWAY BUT NOW IT IS A CONSTANT SOUND. *TR

(ss) (2009 VW Routan 11/21/2010) BRAKING IS INADEQUATE AND IS LIKELY TO FAIL AS BRAKE ROTORS ARE WARPED AFTER LESS THAN A 8,000 MILES. WARPED ROTORS COULD AFFECT ABS SYSTEM AND LEAD TO MORE ACCIDENTS. VW HAS REPLACED ROTORS WITH SAME PART NUMBER SO PROBLEM REPEATS ITSELF SHORTLY AFTER INSTALLATION. VW NEEDS TO IMPROVE THEIR BRAKES FOR THIS VEHICLE GIVEN THE SAFETY OF THE TYPICAL CUSTOMER IS USUALLY A FAMILY OF FOUR OR MORE. A RECENT SEARCH ON GOOGLE SHOWS THAT MANY OTHERS HAVE REPORTED SIMILAR PROBLEMS TO VW WHO CONTINUES TO SIMPLY REPLACE THE PART WITH THE SAME ONE. THEY NEED TO TAKE THIS SERIOUSLY AND ENGINEER A BETTER BRAKING SYSTEM FOR THIS VEHICLE OR BUY BETTER QUALITY BRAKING COMPONENTS. *TR

(tt) (2009 VW Routan 10/15/2010) SHAKING BRAKES REPORTED TO DEALERSHIP. ROTOR REPAIRED UNDER WARRANTY, BRAKES REPAIRED AT OUR EXPENSE. <5000 MILES LATER, SAME PROBLEM DEALERSHIP TELLING US TO REPLACE ROTERS AND BRAKES, AGAIN. IRONICALLY, THE ROUTAN THAT THE DEALER USED TO SHUTTLE ME TO AND FROM THE SERVICE STATION WAS SHAKING WHILE BRAKING... *TR

(uu)   (2009 VW Routan 10/15/2010) EXCESSIVE VIBRATION DURING LIGHT/MODERATE BRAKINGTHIS HAS BEEN NOTICEABLE AT A VERY EARLY MILEAGE. AFTER 16,000 MILES THE NOISE AND VIBRATION HAS BECOME VERY ANNOYINGTHE WHOLE VEHICLE VIBRATES. *TR

(vv)   (2009 VW Routan 09/10/2010) MY BRAKES AND ROTORS HAVE GONE OUT TWICE IN MY BRAND NEW VW ROUTAN. ONCE AT 5,000 MILES AND AGAIN AT 10,000 MILES. IT HAS HAD A TON OF OTHER PROBLEMS AND HAS BEEN IN THE SHOP FOR WEEKS AT A TIME. MULTIPLE RECALLS HAVE BEEN REPAIRED AT EACH SERVICE AS WELL. ENTIRE VEHICLE SHAKING AND BRAKES NOT WORKING CORRECTLY BOTH TIMES. I AM AFRAID TO DRIVE IT WITH MY BABY IN THE CAR. *TR

(ww)   (2009 VW Routan 07/09/2010) BESIDES THE BRAKES/ROTORS NOW GOING ON THEIR 4TH SET AND THE CAR IS LESS THAN 2 YEARS OLD, THE FRONT BUMPER LOOKS LIKE IT WAS ABOUT TO FALL OFF, MANY SMALL OTHER PROBLEMS, THIS MORNING MY SON HAD HIS FINGER CAUGHT IN THE SLIDING DOOR AND THE DOOR DID NOT OPEN, IT JUST KEPT TRYING TO SHUT ON HIM. THIS VAN IS HORRIBLE! THE DOOR HAS ACTED UP BEFORE, BUT NEVER LIKE THIS. THE DECALS ON THE DRIVERS DOOR WERE COMING OFF AT ONE POINT AND HAD TO BE REPLACED. THE TAIL LIGHT ALREADY HAD TO BE REPLACED. WATER IN THE FRONT LIGHT. JUST TOO MANY THINGS FOR A NEW CAR. *TR

71.     Also, complaints posted by consumers in forums demonstrate that the defect is widespread and dangerous, and that it manifests without warning.  These complaints reflect the abnormal and premature failure of the brake pads and rotors, the repeated, unexpected repair costs, and Volkswagen's refusal to take responsibility for the defect.  The complaints also indicate Defendants' awareness of the problems with the braking system and how potentially dangerous the defective condition is for consumers.  The following are some safety related complaints describing the Braking System Defect (spelling and grammar mistakes remain as found in the original) (Edmunds.com (January 10, 2015), http://www.edmunds.com/ and Cars.com (January 10, 2015), http://www.cars.com/):

**Edmunds.com 2009-2012 Volkswagen Routan - Consumer Reviews:**

(a)   (2009 VW Routan) Posted by walnutcreekvw on 07/01/14 15:01 PM (PDT): Your Routan is not a lemon. I used to think the same thing until mine shut down while driving...again! VW replaced our control module a couple of years ago, but the van loses power while driving. It's really scary! We had our rotors replaced as well. They still shake. They told us it was from the weight of the vehicle. This van is not safe. I called VW today to start a case. Does a family have to get injured/killed before they resolve this issue? Call VW and start a case so we can have these issues addressed before someone

gets hurt.1-800-822-8987

(b)     (2009 VW Routan) Posted by insrtg on 05/02/13 12:59 PM (PDT): My
Volkswagon Routan 2009 was serviced back in March 2013 - transmission
& power steering. When the service was completed at a VW service center, I
picked up the car, drove home the short distance, and parked in the
driveway. The next morning while at a traffic light, the car started to go on
fire from the engine and eventually burst into flames. Thankfully no one was
hurt, but I don't believe it was a coincidence that it happened a few hours
since the car was picked up from the service at Legend Audi Volkswagon in
Amityville. Aside from that incident, the car had numerous issues
throughout the 4 years, i.e. brakes, glitchy doors, glitchy radio, and recalled
parts. Terrible car.

(c)     (2009 VW Routan) Posted by carshopper82 on 07/04/12 11:11 AM (PDT): I
purchased an 09 Routan, and have driven it for 33,000 miles since. The van
is nice and is perhaps the nicest minivan ride based on my experience.
However, there are a lot of design issues with it. I have replaced the brakes
all around including rotors, pads, and calipers three times - this at no cost
because I documented to VW of America this is a design issue. Similar vans
from 2009 (Chrysler Town Country) had the same issues - my in-laws own
it. As you know, the Routan is a brand-labeled T&C. Othe rissues pertain to
transmission hoses. So far VW has taken care of me but it is definitely a
lemon.

(d)     (2009 VW Routan) Posted by baseball33 on 07/29/11 06:33 AM (PDT):
This was my first VW and my last. From the moment I bought this van I
have had it in the for repairs. Or should I say I take it in for repairs but the
van is never fixed. The sliding doors are extremely damerous. My chidlren
are scared to get in & out. It hit my arm and let a nice bruse. Brakes and
roaters have been replaced three times and still do not work right. Power
seats have a mind of their own. And the paint job is horrible, one little bump
the paint falls off. Spoiler has had to be completely re-painted. Now it
doesn't start all the time. Wow. I don't have enough characters to explain
what is all wrong. VW customer service isn't much help, suggested buy new
VW van. No thank u

(e)     (2009 VW Routan) Posted by usmcwifesocal on 06/20/11 21:24 PM (PDT):
Puchased van in Aug.'09. Delivered t us with a broken antenna (replaced,
and then replaced again a year later due to rusting). Rear DVD screen went
black sreplaced. Seat covers came apart at seams, window shade fraued,
headliner panel and AC vent came loose, arm rest cracked (replaced all),
windshield wipers stopped randomly several times (never fixed -failed to
replicate), windows and doors failed numerous occasions (3 year old son's
hand was caught in door when pinch guard failed and manually had to be
pried off of him) -problem unresolved, brake pads and rotors all around
have had issues (back pads were recalled, rotors machined 2x in 1 year, VW
now says we must pay $1000 to replace all) (continued), floor panel cracked
in between captain's chairs in the back, dealership took pictures and asked
Corporate to replace under warranty - VOA replied that it was due to
"outside influence" but refused to send me anything in writing to explain
what that meant. Entertainment system failed numerous times...was finally
eplaced when I brought in several videos documenting the failures. The new
Entertainment system has the same issues. Ignition failed on several
occasions, again, was not addressed until I produced video proof. New

ignition system gave same problems, except now, when driving on the highway, if your knee touches the ignition area, the entire van shuts off and the steering (continued) wheel locks up. This has happened in rush hour traffic. Volume on radio gets stuck at incredibly high levels, and will not go up or down. System fails to recognize Bluetooth, seats get very hot and will not shut off. Doors have a mind of their own, and will open and close with or without apparent obstructions. The van feels like it downshifts on it's own while traveling at low speeds, and there is a terrible rattling noise coming from underneath the front end of the van. Dealership has been unable to replicate half of the issues, though I have most documented on video. VOA has denied my repeated requests to buy back this vehicle. They've offered me "deals", but this is UNSAFE!!!

(f)     (2009 VW Routan) Posted by kmcintosh78 on 09/22/10 00:00 AM (PDT): Vehicle has not gone 3 weeks without going in for warranty work. Driver side window would not close, took VW 5 times to fix it. Passenger side doing the same. Rear wiper assembly fell off. Passenger side mirror does not work. Transmission is sloppy, lunges forward at low speeds. brakes and rotors have been replaced 2 times. Stay away from this vehicle, it is junk. It is s fight to get VW to replace the vechile, since it went in 3 weeks after we got it and has not gone 3 weeks without going in for repair. Go with a Honda or Toyota or Ford.

(g)     (2009 VW Routan) Posted by jbanger on 08/30/10 06:45 AM (PDT): I know this is a Chrysler product but Routan does perform better. I compared to Town & Country rental. Routan is more responsive and comfortable. The exhaust is raspy and I fear the sliding doors will be a future pain. I think the brakes are not enough for this large vehicle. The 2nd row seats are a little sticky to move. Warranty is great.

(h)     (2009 VW Routan) Posted by tn_sunshyne on 08/29/10 08:06 AM (PDT): This van has been plagued by numerous problems, rotor/ brake issues (replaced 4 times on the front and 2 times on the rear), check engine light/ thermostat issues 4 times, drivers side window problems, remote start problems. Has been in dealer repair shop for more then 30 days since owning it 15 months. Poor gas mileage. Trying to enforce the Lemon Law. It may be pretty on the inside and outside, but buyer beware, once warranty goes out,it's going to cost a lot to keep this vehicle on the road. This is not German Engineering at its finest. My Nissan Quest I traded for this was way better and more reliable then this van. I've learned my lesson the hard way and an expensive one at that!

(i)     (2009 VW Routan) Posted by Omid on 06/22/10 07:50 AM (PDT): Unless you want to spend a lot of time at the VW service dept, do not buy this minivan. We bought new 9 months ago and it has been serviced numerous times for same malfunctions: electrical, brake rotors, sensor failure, seats getting stuck, steering wheel vibration, and most importantly safety issues which VW and the dealership fail to recognize. The electric sliding door pinned our 2 year old son and the sensors failed to re-open the door. Others have experienced the same issue and yet VW keeps saying the doors are safe and the sensors work fine. Also, no alarm sounds if the doors are open and the car is in motion. This is quite unbelievable from a German manufacturer!

(j)     (2009 VW Routan) Posted by mojo on 06/10/10 22:14 PM (PDT): I have 28,000k on my routan and I already changed brakes 2 times, stereo, and

CLASS ACTION COMPLAINT

front end. I have problem with the transmission the sliding doors and the engine is burning oil. The dealer keeps ignoring me and delaying the repair process. They even denied it is burning oil until I took it to them and asked them to check it for and they came to tell me it is fine so I took it to a mechanic and he confirmed it is burning oil then they said the engine breather is. I cannot sell it or trade it because its value sunk in the ground especially when they stopped making it.

(k)     (2009 VW Routan) Posted by kjthomas323 on 05/28/10 12:57 PM (PDT): Suggested Improvements: FUEL ECONOMY! Better quality brakes for this heavy of a vehicle. i.e. drum not four wheel disk.

(l)     (2009 VW Routan) Posted by TO on 05/12/10 11:18 AM (PDT):  We are completely dissatisfied with this van. Nothing but transmission issues. Trans. leaked at 2800 mi, failed and was rebuilt at 8600 mi and valve body replaced again at 10,000 mi. Dealer had it for 10 out of the first 51 wks. Typical for a Chrysler based product. VW should be ashamed to have their badge on this van. Other issues, creaking noises from the RES and door panels. Rattling noises in the suspension. Power lift gate was malfunctioning. Rotors replaced at 600 mi. At one year old and 11,000 miles you should not have to worry about the vehicle falling apart. The MPG is poor, 12 in town,21 at best on Prem fuel on a trip. Using the Lemon Law for the trans. issues. Buy Toyota or Honda

(m)     (2009 VW Routan) Posted by Barb on 08/06/09 18:51 PM (PDT): I vowed to never own a Chrysler product have having 2 lemons. So far nothing major has gone wrong. The brake petal squeaks, the doors are creaky, and the back bumper panel is coming off. The entertainment center is top notch, one of the best I have seen. the storage is great. Gas mileage has been horrible, 14 MPG in the city and 22 MPG on all freeway driving. I am getting better gas mileage in my truck.

(n)     (2009 VW Routan) Posted by VW-BAD on 07/07/09 20:05 PM (PDT): Suggested Improvements: To make a set of brake pads that don't squeal at 1000 miles and doors that actually close when the close button is pushed.

(o)     (2010 VW Routan) Posted by rigosauce on 06/21/12 14:50 PM (PDT): We liked that the Routon did not have the "typical" look of a minivan and being that my wife and I are relatively young, we thought we could drive it and not hurt our pride. It drives well and is rather comfortable especially if you have small children. the DVD system along with the inputs for my son's xbox were utilized to the max. we became disheartened when the van started to shake while braking. We took it ito the dealer and the front rotors were going out...at 20k miles! they fixed it but, 7k miles later, the shaking began-again.This time its the back rotors. We decided to trade in the van because we did not want to chance any more breakdowns in the future.

(p)     (2010 VW Routan) Posted by fshifteh on 06/09/12 15:44 PM (PDT): This is a follow up to my earlier comments about my Routan. I have more than 24000 miles on the car. During the past 20 months, I had to replace my front brakes and rotors twice. The rear rotors have also been turned twice and the rear brakes were replaced as well. Fortunately everything has been under warranty. Even though I could consider buying this car when the lease is up in a year, but my concern is that I have to replace the brakes every year since it won't be covered by any service contract.

CLASS ACTION COMPLAINT

(q)   (2010 VW Routan) Posted by fshifteh on 06/18/11 14:00 PM (PDT): This is a follow up to my earlier post. I have had this car for 9 months now. There has been a few areas that I had issues. First all my brakes had to be replaced at 10k miles due to vibration in steering. The dealer did this under Warranty. Second, I has issues with putting the 2nd row seat back, as it was stuck and could not remove it or put it back, as a result the dealer replaced the seat frame free of charge. The 3rd issue was some creaking noise that would come from driver's door while driving on certain bump which was very irritating and after taking to 2 different dealerships, the second dealer lubricated the driver side door hinges and that took care of the issue.

(r)   (2011 VW Routan) Posted by ncrsx on 08/06/14 19:59 PM (PDT): We have over 61k miles with no major issues. Only problem is the brakes. My dealer replaced them at 26k miles no charge then I had to replace them at 55k miles with aftermarket cause oem rotors are crap. Other than the brakes I'm happy with my purchase. I guess I'm one of the lucky ones.

(s)   (2011 VW Routan) Posted by twinmommy224 on 06/05/13 01:30 AM (PDT): I have a question for you @criminal. I know you originally posted last summer, but I'm hoping you are around still. We bought a 2010 in 5/11, I had issues with the van turning off while I was driving. Took it to dealership to fix it 2 times within the first month. Then we travelled from Sac to LA. Well, on our way home, transmission blew up on freeway...., VW bought the van back and replaced van with brand new 2011 Routan (it took about 4-5 wks to be delivered) We got the 2011 in mid-Aug 2011. By Sept I started having issues with the new one. The cruise control has been 'fixed' countless times, every time I am 'promised' that it is totally fixed. Then within days of me getting van (actually, last time, I barely got from dealership to freeway before it stopped working) Did they ever really get your cruise control fixed?? I have lost count how many times I took it in for the exact same thing, I know it has surpassed 6 times (just dropped it off today, which is the 3rd time since Jan) each time they have my van for 2-4 weeks. Also, I don't know if you've had this issue, but when i open either of my rear doors (thru inside buttons, keyfob, or handle) they close without anyone touching it. It smashes my son frequently. The safety stopper doesn't work and it hurts him. They can't seem to fix that either.... My ck engine light comes on for no reason (according to them) also, it beeps constantly telling me to change oil, when it isn't even close to time. And, I've told them the last 3 times that something was going on with my brakes. They squeak a lot, I have to be very careful because it takes a pretty long distance for it to make complete stop (it goes over line at stop lights consistently, because it doesn't stop as it should) when I dropped it off today and told him again, he said it's NORMAL?? Can someone please help me with some advice on what I can do, do I demand they replace the car at the dealership? Should I get on VW corporate? Or is there something else I should do? I really love the van, but obviously they can't fix this van!!! I have ran out of patience with these issues. I bought a new van for it to WORK, not for me to have to drive it 45 miles(each way) 1week out of the month, to be put in a small loaner for the other 3, while they 'fix' my van......someone please help!!!!

(t)   (2011 VW Routan) Posted by hfsbo on 08/16/11 12:31 PM (PDT): I also leased a Routan and had to change the brakes after 16k miles. That's just ridiculous. The avg mpg is also way off, so far I have owned this car close to 3 years and it showing a 14mpg average (its a family car used to drive long distances). I expected better from VW I cannot wait to return this vehicle.

**Cars.com 2009-2012 Volkswagen Routan - Consumer Reviews:**

(a) (2009 VW Routan) Posted by Mack man from Salt Lake City, UT | September 22, 2010: Vehicle has not gone 3 weeks without going in for warranty work. First was the driver side window, which would not roll up. It took the dealership 5 times before they fixed the problem. That was huge hassle, as they ended up replacing everything in the door and breaking the switch console and getting glue everywhere in the car. The passenger side window did the same. Transmission is sloppy, and the vehicle lunges forward when going from coasting, light acceleration to coast. Transmission has dropped from 'D' to 2nd gear in the auto stock mode. The front brakes/rotors have been replaced twice and the rear once. Rear wiper assembly fell off. This is all on a vehicle with less then 11000 miles on it and not even a year old. VW refused to replace it and only offers to honor the vehicle warranty. STAY AWAY FROM THE ROUTAN. Go with a Honda, Toyota or Ford.

(b) (2010 VW Routan) Posted by Mom of 4 from Oklahoma | January 2, 2013: I loved my Routan when I first bought it. It is stylish, comfortable, and has features that most vans have only in upgrades. VW nailed it with the upgraded features and interior. However, the car has had several MAJOR issues, as have all Routand years 2009-2011. Transmission had to be completely replaced at less then 25000 miles. Brake pads and rotors warp due to the car being engineered with braking system not intended to hall the van's size and people capacity. VW has not to date made good to customers who purchased these vehicles and continued to make them with failing components. almost all issues with the car have been safety related issues or major components. I say save your money and buy AMERICAN!

(c) (2010 VW Routan) Posted by by rxjava from Rancho Cordova, CA | March 18, 2012: We've put about 20,000 miles on our Routan in one year having bought it used with low miles and have experienced only one problem-the brakes which tended to shutter/vibrate when applied as if the discs were warped. However, recently the VW dealer put in redesigned/upgraded brake pads and problem solved.

(d) (2010 VW Routan) Posted by Unhappy Routan Owner from Nashville, NC | November 12, 2011: This vehicle has been a real disappointment for the 15 months I have had it. At 6000 miles the transmission had to have bearings replaced. At the same time, the paint on driver and front passenger doors started coming off. At 18,000 miles, all four brake rotors were warped. The folding down 3rd row seat have never properly worked. They stop half was or do not move at all. Volkswagen refuses to take the vehicle back. All that they offered me was to forgive a car payment for my trouble. Really? I wish I never bought this vehicle.

(e) (2010 VW Routan) Posted by busymon from Central, NY | May 30, 2011: The VW Routan SE has great features and is very comfortable, but it comes at a price. I often have to wait days/weeks for parts and it has chronic brake problems. It makes me wonder why I paid more for nice features when I lost reliability...what good does the navigation do me when it is regularly in the shop?

(f) (2010 VW Routan) Posted by tn_sunshyne from Knoxville, TN | June 7, 2010: I have had this van for a year now (2009 SEL version). In hindsite if I had it to

do all over again, I would have researched my options more thoroughly and probably would have went with another make/model. The styling is nice and all the extra premium features (hard drive to store CD's, heated leather seats, autostart, window shades, duel DVD entertainment systems, lots of cup holders and extra storage). Has good power when accelerating, handles well. The basic 36,000 mile routine maintenence is good. It's a nice minivan, but there are several drawbacks for our family. My husband and oldest son are tall (6'1" and 6'3") and ceiling height is an issue especially with the sunroof. The middle row seats are comfy, but do not like the fact that they are not adjustable, limited leg room. The third row seats are very uncomfortable and angeled weird. The gas mileage is not what I expected, my previous van (Nissan Quest) got better gas mileage. Since having this van, it has been plagued with multiple brake issues, causing vibration into steering wheel, have had to have the rotors on the rear wheels replaced three times in just 23,000 miles and new rear brakes just recently installed due to a malfunctioning caliper pin. The drivers side window sticks when rolling up, have had a new window motor installed, but still having the same issue. There have been numerous recalls, thankfully they have all been covered by the 36,000 mile warranty. I am currently looking to purchase another minivan or SUV, but will do a lot of research before purchasing another vehicle again. Would not purchase another Routon again, but that is just me. I would definitely drive this van first, would not recommend for families that are big/tall.

(g)   (2012 VW Routan) Posted by Father of four from Yaphank, NY | July 5, 2013: The only way I can describe this van is sick fast. It comes with a 289 HP V-6 and takes off like a lightening bolt. It handles beautifully. The touch screen entertainment system is touch notch. We have the 28 gig hard drive and have already loaded a large variety of MP3s onto it. The only thing is it would be nice if the MP3 player could do playlists. Otherwise you are listening to folders, artists or albums. On the down side, we had to immediately replace the front brakes (under warranty), the rear wiper had to be tightened and had a front tire blow out without explanation, which wasn't covered under warranty. The removable seats are nice although I am going to see if I can put Chrysler's stow and go seats in somehow instead.

72.   The Braking System Defect poses an unreasonable safety risk for Class Members and other drivers and pedestrians. A vehicle's responsiveness to driver input into the braking system and the ability of a vehicle's brakes to perform properly without shuddering or causing premature wear are critical to a vehicle's safe operation. A defect that causes one or more of these negative characteristics poses a safety hazard to the general public and increases the risk of automobile accidents.

### Volkswagen Has Exclusive Knowledge of the Braking System Defect

73.   Volkswagen had superior and exclusive knowledge of the Braking System Defect, and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased or leased the Class

1   Vehicles.

2        74.    Plaintiffs are informed and believe and based thereon allege that before

3   Plaintiffs purchased their Class Vehicles, and since at least 2009, Volkswagen knew about the

4   Braking System Defect through sources not available to consumers, including: consumer

5   complaints about the Braking System Defect to Defendants' dealers who are their agents for

6   vehicle repairs; warranty claim data related to the defect (including data regarding the braking

7   system defects in the Chrysler "sister" minivan vehicles); aggregate data from Volkswagen's

8   dealers; consumer complaints to the NHTSA and resulting notice from NHTSA; early

9   consumer complaints on websites and internet forums; dealership repair orders; testing

10  conducted in response to owner or lessee complaints; technical service bulletins ("TSBs")

11  applicable to the Class Vehicles; and other internal sources of aggregate information about the

12  problem.

13       75.    Chrysler offered the substantially similar Chrysler Town & Country and Dodge

14  Grand Caravan (n/k/a "Caravan"), equipped with a similar braking system in the United

15  States.  On information and belief, this braking system was substantially similar or virtually

16  identical to the braking system in the Class Vehicles.

17       76.    Automotive journalists had criticized the brakes in the Chrysler Town &

18  Country vehicles starting as early as January 2009.  For example, a *Motor Trend* long term

19  report[19] on the 2008 Chrysler Town & Country noted that the right front brake began to squeal

20  with only 19,000 miles on the odometer.  The writer was informed by a Chrysler dealership

21  that a $614.68 front brake replacement was necessary, which was "common among the new

22  minivans, with many needing pad replacement after only 12,000 miles."

23       77.    Additionally, Chrysler, which sold the "sister" vehicles, the Chrysler Town &

24  Country and Dodge Caravan, had also issued multiple TSBs and warranty extension programs

25  _____

26       [19] *See* MotorTrend.com, "One Year: Long Term Update 3: 2008 Chrysler Town &
     Country,"
27   http://www.motortrend.com/roadtests/oneyear/112_0902_2008_chrysler_town_and_country_
     update_3/ (last visited Jan. 12, 2015).

28

1   covering brake issues in those vehicles.  For example, on or about July 6, 2010, Chrysler

2   extended the warranty on the front brakes of 2008 Town & Country and Caravan vehicles

3   from the Basic Limited Warranty of 12 months or 12,000 miles to 36 months or 36,000 miles,

4   whichever came first.[20]  The problem was described as "[t]he front brakes on your vehicle

5   may need pads and rotors replaced earlier than expected.  The brake performance is not

6   affected in any way by this issue."

7           78.     Shortly thereafter, on or about July 16, 2010, Chrysler extended the warranty

8   on the front brakes of 2009 Town & Country and Caravan vehicles from the Basic Limited

9   Warranty of 12 months or 12,000 miles to 36 months or 36,000 miles, whichever came first.

10  The problem described and the terms of the warranty extension were, on information and

11  belief, identical to the TSB covering the 2008 Town & Country and Caravan vehicles.

12          79.     On or about October 2011, Chrysler announced in Warranty Bulletin D-11-52

13  yet another extension of warranty on the front brake components (rotors and pads) on 2009-

14  2011 Town & Country and Grand Caravan models, stating "This warranty has been extended

15  to 3 years or 36,000 miles (whichever occurs first) under the Basic Limited Warranty."

16          80.     On information and belief, Chrysler was unable to pinpoint the cause of these

17  brake issues and thus continued to issue TSBs and warranty extensions for various

18  components in the front brakes.  On or about September 20, 2012, Chrysler issued TSB 05-

---

[20] Chrysler issued a bulletin to its dealers and owners of 2008 Caravan and Town &
Country vehicles advising that it had extended the warranty for the repair and replacement of
front brakes to 36 months/36,000 miles.  According to this bulletin, the following deductibles
are applicable based upon time and/or mileage:

- Before 12 months/12,000 miles                                      $0
- After 12 months/12,000 miles but before
  24 months/24,000 miles                                            $50
- After 24 months/24,000 miles but before
  36 months/36,000 miles                                           $100

The bulletin also indicated that for owners who already experienced the condition and
paid to have it repaired should send their original receipts and/or other adequate proof of
payment to a Chrysler Customer Assistance address for reimbursement less the applicable
deductible.

005-12, which superseded a prior service bulletin dated October 11, 2011, and covered 2009-2011 Town & Country and Grand Caravan models.  The bulletin was titled "Vibration At The Front Of The Vehicle When Braking And/Or Front Brake Pad Lining Life (Warranty Extension)" and involved "installing new brake linings and replacing both brake rotors as required" to address the condition of "Vibration at the front of the vehicle when braking."

81.     Eventually, Chrysler issued bulletins extending the warranty on certain brake components for 2008 through 2012 Town & Country and Caravan vehicles, the latest of which was issued on or about February 22, 2013; TSB 05-002-13, titled "Front Brake Judder And/Or Vibration," covered 2011-2012 Town & Country and Caravan vehicles that were experiencing "Brake pedal pulsation, steering wheel shake and/or floor pan vibration when braking."  The purported solution involved the installation of "new right and left front lower control arms, brake linings and [the] resurfacing or replacing both front brake rotors."

82.     Despite the negative feedback and data regarding Chrysler's Town & Country and Dodge Caravan minivans, the sales brochures for the 2012 Routan tout its "German engineering" and an automotive review from *Popular Mechanics* magazine stated that, "[t]o contradict any allegations of badge engineering, VW personnel on-hand here stressed that the Routan has had millions of dollars and much time spent making it look, feel and drive like a real European product."[21]

83.     This was not the case, however.  In a *Motor Trend* auto review[22] which was published in print in or around September 2011 and posted online in or around July 2011, several contributors excoriated Volkswagen's decision to utilize the substandard braking system.  For example, testing director Kim Reynolds simply stated, "A shame VW didn't

[21] *See* PopularMechanics.com, "2009 VW Routan Test Drive: VW's First American-Style Minivan Takes a Hint from Chrysler," http://www.popularmechanics.com/cars/news/4288196 (last visited January 10, 2015).

[22] *See* MotorTrend.com, "Verdict: 2010 Volkswagen Routan SEL: There's no shrugging off its Chrysler roots," http://www.motortrend.com/roadtests/oneyear/1109_2010_volkswagen_routan_sel_verdict/ (last visited January 13, 2015).

1    insist on an improvement in the brakes before allowing its name to be put on this vehicle."

2    Additionally, the article went on to state:

> Still, for all the complaints our staff had about power, concerns about braking --
> just as with our previous long-term 2008 Chrysler Town & Country -- were far
> greater. **We found the rotors yet again not up to the task of hauling down
> this heavy minivan from speed, especially with a full load of passengers.**
>
> "All our Town & Country's old ghosts are coming back to haunt the Routan
> already," noted associate editor Scott Evans at the 13,000-mile point. **"The
> brakes are fried and will make the whole vehicle shudder violently when
> you use them hard-and they aren't great at restraining the vehicle to begin
> with."**

84.     Further, Volkswagen was aware of the defect due to the numerous complaints it

received, both from consumers and from automotive journalists, who lambasted the braking

system's performance. In fact, *Motor Trend* had run a long term "road test" on the 2010 VW

Routan where its brake issues were repeatedly flagged, culminating in the auto review

mentioned above. Below is a sampling of comments by *Motor Trend* writers, which were

published in print and online between August 2010 and May 2011:

In "Long Term Update 1":

> Senior photographer Brian Vance, who spends a lot of time in a photo locker,
> er, minivan, when one is in our long-term fleet, **isn't impressed with the
> VW's brakes.** "We went through a set of front discs on the Town & Country,
> and I won't be surprised to see that happen here with the T&C-based Routan.
> **Minivans carry a lot of weight when loaded with passengers, and their
> front brakes need to be heavy duty; these don't seem to be."[23]**

In "Long Term Update 3":

> Assistant Web producer Scott Evans drove the Routan to the 2010 SEMA
> Show. He came back wondering about the van's raison d'etre.  "Volkswagen
> did an admirable job of dressing it up, but all of the Town & Country's ghosts
> haunt the Routan. **The brakes are fried and make the whole vehicle shake
> when you get on them hard, and they aren't that great to begin with.
> Under even moderate braking, the console shakes violently, tossing off**

--------

[23] *See* MotorTrend.com, "Long Term Update 1: 2010 Volkswagen Routan,"
http://www.motortrend.com/roadtests/oneyear/1010_2010_volkswagen_routan_update_1/
(published in print in the October 2010 issue and published online on or about August 2010)
(last visited Jan. 13, 2015).

anything sitting on it and rattling like a paint mixer."[24]

In "Long Term Update 4":

Most comments about this minivan, though, surround two issues: first, why Volkswagen, a company that has generated a cult following for its unique, cool vans over the last 40 years, would settle for a badge-engineered van; and second, what is up with those brakes? . . . **Regarding the brakes: The Routan wears the same discs as the Chrysler vans** (including a past Motor Trend long-termer). **It has already gone to the dealer for a brake inspection, which revealed that the brake rotors were warped and needed machining.** That was about six months ago, and it sounds like the rotors may again need to be machined. Says testing director Kim Reynolds, "The brakes are warped, but during most normal stopping, it isn't a big deal. A slight pulse can be felt now and then. **It's probably during more aggressive stopping that it becomes an issue. We noticed the occasional squeal added to the acoustic festivities. Clearly, these brakes are headed in the same direction as the T&C's (which required major attention at around 19,000 miles).** A shame VW didn't insist on an improvement in the brakes before allowing its name to be put on this vehicle."[25]

In "Long Term Update 5":

We continue to experience déjà vu with the Routan. **As we have mentioned in the past, the Volkswagen's brakes have the same warping problem as did our long-term Town & Country a few years ago.** Says technical director Kim Reynolds, "I'm beginning to notice the brake problem even during mild, everyday stopping. A moderate pedal effort causes the steering to slightly tremble in your hands. **We should definitely get this attended to soon.** Not an emergency, but soon."[26]

85.     As a result of the Braking System Defect, Volkswagen issued several TSBs to its dealers in the United States, acknowledging defects in the braking system.  For example, VW's TSB 46-11-08 from in or around May 2011 and re-issued in or around December 2011

---

[24] *See* MotorTrend.com, "Long Term Update 3: 2010 Volkswagen Routan," http://www.motortrend.com/roadtests/oneyear/1102_2010_volkswagen_routan_update_3/ (published in print in the February 2011 issue and published online on or about December 2010) (last visited Jan. 13, 2015).

[25] *See* MotorTrend.com, "Long Term Update 4: 2010 Volkswagen Routan," http://www.motortrend.com/roadtests/oneyear/1104_2010_volkswagen_routan_update_4/ (published in print in the April 2011 issue and published online on or about March 2011) (last visited Jan. 13, 2015).

[26] *See* MotorTrend.com, "Long Term Update 4: 2010 Volkswagen Routan," http://www.motortrend.com/roadtests/oneyear/1105_2010_volkswagen_routan_update_5/ (published in print in the May 2011 issue and published online on or about March 2011) (last visited Jan. 13, 2015).

titled "Front Brake Squeal and/or Brake Disc Pulsation," covering the 2009 Routan, informed dealers that "Vehicle owners may hear squealing and/or feel pulsations in the steering wheel and/or brake pedal" and offering the solution of "New improved [front] brake pads."

86.     Also, on or about December 2013, another TSB (46-14-04) covering the 2011 and 2012 Routan vehicles was issued, and informed dealers that "Vehicle owners may feel brake pedal pulsation, steering wheel shake and/or floor pan vibration."  The remedy was to install "New improved [front] brake pads and lower control arms introduced March 30th 2012."  Titled "Front Brake Judder And / Or Vibration," this TSB was subsequently re-issued in or around April 2014.  However, on information and belief, consumers continued to experience problems with their vehicles despite the purported fixes, including, but not limited to, shuddering and jerking, which necessitated additional repairs or replacements of braking system parts.

87.     However, on information and belief, consumers continued to experience problems with their vehicles despite the purported fixes.

88.     Volkswagen was aware of the Braking System Defect through its experience with the same braking system which had been and was being utilized in the "sister" minivans, the 2008-2012 Chrysler Town & Country and the Dodge Caravan vehicles.

89.     On information and belief, the VW Routan was hastily released in the United States and added to the Volkswagen lineup in an attempt to meet the American demand for an economically-priced minivan.  Unfortunately, it cut costs[27] by repurposing the Chrysler-built minivans (Dodge Caravan and Chrysler Town & Country).  A *Motor Trend* writer noted:

---

[27] *See* PopularMechanics.com, "2009 VW Routan Test Drive: VW's First American-Style Minivan Takes a Hint from Chrysler," http://www.popularmechanics.com/cars/news/4288196 (last visited January 10, 2015) (stating, "Volkswagen, like every carmaker these days, is trying to do more with less and still deliver a car at a competitive price tag. Call it corporate belt-tightening, or with a positive spin, efficiency. So when VW heard its traditional customers—the young American couples—have apparently been deserting their Golfs, Jettas and Passats for Mommy-vans—VW knew it needed a traditional American-style minivan, a segment VW considers essential to growing its market share in the US.")

CLASS ACTION COMPLAINT

1   "Yes, badge engineering can save money, but that comes at its own cost," such as quality

2   issues, including "vibrations felt in the steering wheel, cheap-feeling center console,

3   downmarket cabin materials, and the same problematic nav system as in other Chrysler Corp.

4   products."[28]

5   90.   Ultimately, Poor reviews, and consumer complaints of numerous brake issues

6   doomed the Routan vehicle.  Indeed, on or about March 27, 2013, citing the erosion of the

7   minivan segment, Volkswagen Group of America's CEO Jonathan Browning ended months of

8   speculation and confirmed that that the VW Routan would be phased out of the Volkswagen

9   lineup by 2013, with the exception of those sold as fleet vehicles.[29]

10   91.   The alleged Braking System Defect was inherent in each Volkswagen Routan

11   vehicle and was present in each Volkswagen Routan at the time of sale.

12   92.   The existence of the Braking System Defect is a material fact that a reasonable

13   consumer would consider when deciding whether to purchase or lease a family vehicle.  Had

14   Plaintiffs and other Class Members known that the Class Vehicles were equipped with

15   defective braking systems, they would not have purchased or leased the Class Vehicles or

16   would have paid less for them.

17   93.   Reasonable consumers, like Plaintiffs, reasonably expect that a vehicle's

18   braking system is safe, will function in a manner that will not pose a safety hazard, and is free

19   from defects.  Plaintiffs and Class Members further reasonably expect that Volkswagen will

20   not sell or lease vehicles with known safety defects, such as the Braking System Defect, and

21   will disclose any such defects to its consumers when it learns of them.  They did not expect

22   Volkswagen to fail to disclose the Braking System Defect to them and to continually deny the

23   defect.

24   [28] *See* MotorTrend.com, "Long Term Update 4: 2010 Volkswagen Routan,"

25   http://www.motortrend.com/roadtests/oneyear/1104_2010_volkswagen_routan_update_4/
(last visited Jan. 13, 2015).

26   [29] *See* AutoWeek.com, "VW Routan minivan to be dropped from lineup,"

27   http://autoweek.com/article/car-news/vw-routan-minivan-be-dropped-lineup (last visited Jan.
13, 2015).

28

**Volkswagen Has Actively Concealed the Braking System Defect**

94.     While Volkswagen has been fully aware of the Braking System Defect in the Class Vehicles, it actively concealed the existence and nature of the defect from Plaintiffs and Class Members at the time of purchase, lease, or repair and thereafter.  Specifically, Volkswagen failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

        (a)     any and all known material defects or material nonconformity of the Class Vehicles, including the defects relating to the braking system;

        (b)     that the Class Vehicles, including their braking systems, were not in good in working order, were defective, and were not fit for their intended purposes; and

        (c)     that the Class Vehicles and their braking systems were defective, despite the fact that Volkswagen learned of such defects through alarming failure rates, customer complaints, and other internal sources, as early as 2009.

95.     As a result of the Braking System Defect, Volkswagen was inundated with complaints regarding the Routan's braking system.

96.     As a result of the Braking System defect, VW issued multiple Technical Service Bulletins ("TSBs") to its dealers in the United States, acknowledging defects in the braking system and attempting to address the issue.  For example, VW's TSB 46-11-08 from in or around May 2011 and re-issued in or around December 2011 titled "Front Brake Squeal and/or Brake Disc Pulsation," covering the 2009 Routan, informed dealers that "Vehicle owners may hear squealing and/or feel pulsations in the steering wheel and/or brake pedal" and offering the solution of "New improved [front] brake pads."   However, on information and belief, consumers continued to experience problems with their vehicles despite the fix, including, but not limited to, shuddering and jerking, which necessitated additional repairs or replacements of braking system parts.

CLASS ACTION COMPLAINT

97.     Additionally, on or about December 2013, another TSB (46-14-04) covering the 2011 and 2012 Routan vehicles was issued, and informed dealers that "Vehicle owners may feel brake pedal pulsation, steering wheel shake and/or floor pan vibration."  The remedy was to install "New improved [front] brake pads and lower control arms introduced March 30th 2012."  Titled "Front Brake Judder And / Or Vibration," this TSB was subsequently re-issued in or around April 2014.  However, on information and belief, consumers continued to experience problems with their vehicles despite the fix, including, but not limited to, shuddering and jerking, which necessitated additional repairs or replacements of braking system parts.

98.     Chrysler had also previously issued multiple TSBs and warranty extension programs covering brake issues in the "sister" vehicles, the Chrysler Town & Country and Dodge Caravan.  For example, on or about July 6, 2010, Chrysler extended the warranty on the front brakes of 2008 Town & Country and Caravan vehicles from the Basic Limited Warranty of 12 months or 12,000 miles to 36 months or 36,000 miles, whichever came first.[30] The problem was described as "[t]he front brakes on your vehicle may need pads and rotors replaced earlier than expected.  The brake performance is not affected in any way by this issue."

---

[30] Chrysler issued a bulletin to its dealers and owners of 2008 Caravan and Town & Country vehicles advising that it had extended the warranty for the repair and replacement of front brakes to 36 months/36,000 miles.  According to this bulletin, the following deductibles are applicable based upon time and/or mileage:

- Before 12 months/12,000 miles                                    $0
- After 12 months/12,000 miles but before
  24 months/24,000 miles                                           $50
- After 24 months/24,000 miles but before
  36 months/36,000 miles                                           $100

The bulletin also indicated that for owners who already experienced the condition and paid to have it repaired should send their original receipts and/or other adequate proof of payment to a Chrysler Customer Assistance address for reimbursement less the applicable deductible.

99.     Shortly thereafter, on or about July 16, 2010, Chrysler extended the warranty on the front brakes of 2009 Town & Country and Caravan vehicles from the Basic Limited Warranty of 12 months or 12,000 miles to 36 months or 36,000 miles, whichever came first. The problem described and the terms of the warranty extension were, on information and belief, identical to the TSB covering the 2008 Town & Country and Caravan vehicles.

100.     On or about October 2011, Chrysler announced in Warranty Bulletin D-11-52 yet another extension of warranty on the front brake components (rotors and pads) on 2009-2011 Town & Country and Grand Caravan models, stating "This warranty has been extended to 3 years or 36,000 miles (whichever occurs first) under the Basic Limited Warranty."

101.     On information and belief, Chrysler was unable to pinpoint the cause of these brake issues and thus continued to issue TSBs and warranty extensions for various components in the front brakes. On or about September 20, 2012, Chrysler issued TSB 05-005-12, which superseded a prior service bulletin dated October 11, 2011, and covered 2009-2011 Town & Country and Grand Caravan models. The bulletin was titled "Vibration At The Front Of The Vehicle When Braking And/Or Front Brake Pad Lining Life (Warranty Extension)" and involved "installing new brake linings and replacing both brake rotors as required" to address the condition of "Vibration at the front of the vehicle when braking."

102.     Eventually, Chrysler issued bulletins extending the warranty on certain brake components for 2008 through 2012 Town & Country and Caravan vehicles, the latest of which was issued on or about February 22, 2013; TSB 05-002-13, titled "Front Brake Judder And/Or Vibration," covered 2011-2012 Town & Country and Caravan vehicles that were experiencing "Brake pedal pulsation, steering wheel shake and/or floor pan vibration when braking." The purported solution involved the installation of "new right and left front lower control arms, brake linings and [the] resurfacing or replacing both front brake rotors."

103.     Volkswagen was aware of the Braking System Defect through its experience with the same braking system which had been and was being utilized in the "sister" minivans, the 2008-2012 Chrysler Town & Country and the Dodge Caravan vehicles. On information

CLASS ACTION COMPLAINT

1   and belief, Volkswagen was aware of the issues afflicting the "sister" minivans, and knew of

2   the potential that these issues directly affected the Class Vehicles due to their same or

3   substantially similar braking components, but failed to act on this information.

4       104.   Despite notice via numerous consumer complaints, dealership repair orders,

5   and data regarding the Chrysler Town & Country and Dodge Caravan, among other internal

6   information as described above, Defendants have not issued a warranty extension for the

7   Routan (which utilizes the same braking system as its "sister" minivan vehicles), has not

8   recalled the Class Vehicles to repair the defects, has not offered its customers a suitable repair

9   or replacement free of charge, and has not offered to reimburse the Class Vehicles' owners

10  and leaseholders in full for the costs they incurred in diagnosing and repairing the Braking

11  System Defect.

12      105.   On information and belief, the repairs outlined by the various TSBs issued by

13  Volkswagen were ineffective at addressing the Braking System Defect.

14      106.   When consumers present the Class Vehicles to an authorized Volkswagen

15  dealer for repair of the braking system, rather than repair the problem under warranty,

16  Volkswagen dealers either refused to acknowledge the defects' existence or performed repairs

17  that simply masked the defects.

18      107.   To this day, Volkswagen still has not notified Plaintiffs and Class Members that

19  the Class Vehicles suffer from a systemic defect that causes the braking system to

20  malfunction.

21      108.   On information and belief, Volkswagen has caused Plaintiffs and Class

22  Members to expend money at its dealerships and/or other brake service shops to diagnose,

23  repair, or replace the Class Vehicles' rotors and/or brake pads, and other braking system-

24  related components, despite Volkswagen's knowledge of the Braking System Defect.

25                     **CLASS ACTION ALLEGATIONS**

26      109.   Plaintiffs bring this lawsuit as a class action on behalf of themselves and all

27  others similarly situated as members of the proposed Plaintiff Classes under California Code

28

1   of Civil Procedure § 382.

2       110.   All claims alleged herein arise under California law for which Plaintiff seeks

3   relief authorized by California law.

4       111.   The Class and Sub-Class are defined as:

> **Nationwide Class**: All individuals in the United States who purchased or leased any 2009 through 2012 Volkswagen Routan vehicles (the "Nationwide Class" or "Class").

> **California Sub-Class**: All members of the Nationwide Class who reside in the State of California.

> **CLRA Sub-Class**: All members of the California Sub-Class who are "consumers" within the meaning of California Civil Code § 1761(d).

> **Implied Warranty Sub-Class**: All members of the Nationwide Class who purchased or leased their vehicles in the State of California.

      112.   Excluded from the Class and Sub-Class are: (1) Defendant, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

      113.   There is a well-defined community of interest in the litigation and each subclass is readily ascertainable.

      114.   <u>Numerosity</u>: Although the exact number of prospective class members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of prospective class members' claims in a single action will provide substantial benefits to all parties and to the Court. The prospective class members are readily identifiable from information and records in

CLASS ACTION COMPLAINT

1    Defendants' possession, custody, or control, as well as from records kept by the departments

2    of motor vehicles of the various states.

3        115.    Typicality: The claims of the representative Plaintiffs are typical of the claims

4    of the all prospective class members in that the representative Plaintiffs and the prospective

5    class members purchased and leased a Class Vehicle designed, manufactured, and distributed

6    by Volkswagen.  The representative Plaintiffs, like all prospective class members, have been

7    damaged by Defendants' misconduct in that they have incurred or will incur the cost of

8    repairing or replacing the defective braking system and respective brake components.

9    Furthermore, the factual bases of Volkswagen's misconduct are common to all prospective

10   class members and represent a common thread resulting in injury to all prospective class

11   members.

12       116.    Commonality: There are numerous questions of law and fact common to

13   Plaintiffs and the prospective class members that predominate over any question affecting

14   individual prospective class members.  These common legal and factual issues include the

15   following:

16       (a)    Whether Class Vehicles contain defects relating to the Braking System;

17       (b)    Whether the defects relating to the Braking System constitute an

18              unreasonable safety risk;

19       (c)    Whether Defendants knew about the defects relating to the Braking System

20              and, if so, how long Defendants have known of the defect;

21       (d)    Whether the defective nature of the Braking System constitutes a material

22              fact;

23       (e)    Whether Defendants have a duty to disclose the defective nature of the

24              Braking System to Plaintiff and prospective class members;

25       (f)    Whether Plaintiff and the prospective class members are entitled to equitable

26              relief, including but not limited to a preliminary and/or permanent injunction;

27       (g)    Whether Defendants knew or reasonably should have known of the defects

28

1    relating to the Braking System before it sold and leased Class Vehicles to

2    prospective class members;

3        (h)    Whether Defendants should be declared financially responsible for notifying

4    all prospective class members of the problems with the Class Vehicles and for

5    the costs and expenses of repairing and replacing the defective Braking

6    System;

7        (i)    Whether Defendants are obligated to inform prospective class members of

8    their right to seek reimbursement for having paid to diagnose, repair, or

9    replace the defective Braking System; and

10       (j)    Whether Defendants breached the implied warranty of merchantability

11    pursuant to the Song-Beverly Act.

12    117.   <u>Adequate Representation</u>:  Plaintiffs will fairly and adequately protect

13  prospective class members' interests.  Plaintiffs have retained attorneys experienced in

14  prosecuting class actions, including consumer and product defect class actions, and Plaintiffs

15  intend to prosecute this action vigorously.

16    118.   <u>Superiority</u>: Plaintiffs and the prospective class members have all suffered and

17  will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful

18  conduct.  A class action is superior to other available methods for the fair and efficient

19  adjudication of the controversy.  Absent a class action, prospective class members would

20  likely find the cost of litigating their claims prohibitively high and would therefore have no

21  effective remedy at law.  Because of the relatively small size of the individual prospective

22  class members' claims, it is likely that only a few prospective class members could afford to

23  seek legal redress for Defendants' misconduct.  Absent a class action, prospective class

24  members will continue to incur damages, and Defendants' misconduct will continue without

25  remedy.  Class treatment of common questions of law and fact would also be a superior

26  method to multiple individual actions or piecemeal litigation in that class treatment will

27  conserve the resources of the courts and the litigants and will promote consistency and

28

1   efficiency of adjudication.

2                           **FIRST CAUSE OF ACTION**

3                  **(Violation of California's Consumer Legal Remedies Act,**

4                           **California Civil Code § 1750, *et seq.*)**

5          119.   Plaintiffs incorporate by reference the allegations contained in the preceding

6   paragraphs of this Complaint.

7          120.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the

8   members of the CLRA Sub-Class.

9          121.   Defendants are "persons" as defined by California Civil Code § 1761(c).

10         122.   Plaintiffs and CLRA Sub-class Members are "consumers" within the meaning

11  of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for

12  personal, family, or household use.

13         123.   By failing to disclose and concealing the defective nature of the braking

14  systems from Plaintiffs and prospective Class Members, Defendants violated California Civil

15  Code § 1770(a), as they represented that the Class Vehicles and their braking systems had

16  characteristics and benefits that they do not have, and represented that the Class Vehicles and

17  their braking systems were of a particular standard, quality, or grade when they were of

18  another. *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

19         124.   Defendants' unfair and deceptive acts or practices occurred repeatedly in

20  Defendants' trade or business, were capable of deceiving a substantial portion of the

21  purchasing public, and imposed a serious safety risk on the public.

22         125.   Defendants knew that the Class Vehicles and their braking systems suffered

23  from an inherent defect, were defectively designed or manufactured, and were not suitable for

24  their intended use.

25         126.   As a result of their reliance on Defendants' omissions and/or

26  misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss

27  of money, property, and/or value of their Class Vehicles. Additionally, as a result of the

28

Braking System Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' braking system components are substantially certain to fail or require replacement or repair, before their expected useful life has run.

127.   Defendants were under a duty to Plaintiffs and Class Members to disclose the defective nature of the braking systems and/or the associated repair costs because:

(a)   Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' braking systems;

(b)   Plaintiffs and Class Members could not reasonably have been expected to learn or discover that their braking systems had a dangerous safety defect until it manifested; and

(c)   Defendants knew that Plaintiffs and Class Members could not reasonably have been expected to learn of or discover the safety defect.

128.   In failing to disclose the defective nature of the braking systems, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

129.   The facts Defendants concealed from or failed to disclose to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less.  Had Plaintiffs and Class Members known that the Class Vehicles' braking systems were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

130.   Plaintiffs and Class Members are reasonable consumers who do not expect the braking systems installed in their vehicles to exhibit problems such as shuddering, shimmying, or jerking when brakes are applied, and premature wear to the braking system, including the brake rotors, brake pads, brake linings, calipers, and other related components, necessitating frequent repair and replacement of those components.  This is the reasonable and objective consumer expectation relating to vehicle braking systems.

131.   As a result of Defendants' conduct, Plaintiffs and Class Members were harmed and suffered actual damages in that, on information and belief, the Class Vehicles experienced

1   and may continue to experience problems such as shuddering, shimmying, or jerking when

2   brakes are applied, and premature wear to the braking system, including the brake rotors,

3   brake pads, brake linings, calipers, and other related components, necessitating frequent repair

4   and replacement of those components.

5       132.   As a direct and proximate result of Defendants' unfair or deceptive acts or

6   practices, Plaintiffs and Class Members suffered and will continue to suffer actual damages.

7       133.   Plaintiffs and the Class are entitled to equitable relief.

8       134.   Plaintiffs provided Defendants with notice of their violations of the CLRA

9   pursuant to California Civil Code § 1782(a).  If, within 30 days, Defendants fail to provide

10  appropriate relief for their violations of the CLRA, Plaintiffs will amend this Complaint to

11  seek monetary, compensatory, and punitive damages, in addition to the injunctive and

12  equitable relief that they seek now.

13                      **SECOND CAUSE OF ACTION**

14          **(Violation of California Business & Professions Code § 17200, *et seq.*)**

15      135.   Plaintiffs incorporate by reference the allegations contained in the preceding

16  paragraphs of this Complaint.

17      136.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the

18  California Sub-Class.

19      137.   As a result of their reliance on Defendants' omissions and/or

20  misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss

21  of money, property, and/or value of their Class Vehicles. Additionally, as a result of the

22  Braking System Defect, Plaintiffs and Class Members were harmed and suffered actual

23  damages in that the Class Vehicles' braking system components are substantially certain to

24  fail or require replacement or repair, before their expected useful life has run.

25      138.   California Business & Professions Code § 17200 prohibits acts of "unfair

26  competition," including any "unlawful, unfair or fraudulent business act or practice" and

27  "unfair, deceptive, untrue or misleading advertising."

28

139.   Plaintiffs and Class Members are reasonable consumers who do not expect their braking systems to exhibit problems such as shuddering, shimmying, or jerking when brakes are applied, and premature wear to the braking system, including the brake rotors, brake pads, brake linings, calipers, and other related components, necessitating frequent repair and replacement of those components.

140.   Defendants knew the Class Vehicles and their braking systems suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

141.   In failing to disclose the defects with the braking system, Defendants have knowingly and intentionally concealed material facts and breached its duty not to do so.

142.   Defendants were under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles and their braking systems:

   (a)   Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' braking systems;

   (b)   Defendants made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their braking systems; and

   (c)   Defendants actively concealed the defective nature of the Class Vehicles and their braking systems from Plaintiff and the Class.

143.   The facts Defendants concealed from or not disclosed to Plaintiffs and Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles.  Had Plaintiff and other Class Members known that the Class Vehicles' braking systems were defective and posed a safety hazard, then Plaintiffs and the other Class Members would not have purchased or leased Class Vehicles equipped with such braking systems, or would have paid less for them.

144.   Defendants continued to conceal the defective nature of the Class Vehicles and their braking systems even after Class Members began to report problems.  Indeed,

CLASS ACTION COMPLAINT

1   Defendants continues to cover up and conceal the true nature of the problem, while addressing

2   consumer complaints by replacing the prematurely worn pads and rotors with the same or

3   substantially similar defective components in order to ensure that the defect will manifest

4   itself outside of the warranty period.

5       145.   Defendants' conduct was and is likely to deceive consumers.

6       146.   Defendants' acts, conduct, and practices were unlawful, in that they constituted,

7   as alleged in this complaint:

8           (a)     Violations of the California Consumer Legal Remedies Act;

9           (b)     Violations of the Song-Beverly Consumer Warranty Act; and

10          (c)     Violations of the Magnuson-Moss Warranty Act.

11      147.   By their conduct, Defendants have engaged in unfair competition and unlawful,

12  unfair, and fraudulent business practices.

13      148.   Defendants' unfair or deceptive acts or practices occurred repeatedly in

14  Defendants' trade or business, and were capable of deceiving a substantial portion of the

15  purchasing public.

16      149.   As a direct and proximate result of Defendants' unfair and deceptive practices,

17  Plaintiffs and the Class have suffered and will continue to suffer actual damages.

18      150.   Defendants have been unjustly enriched and should be required to make

19  restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of the Business &

20  Professions Code.

21                           **THIRD CAUSE OF ACTION**

22              **(Breach of Implied Warranty Pursuant to Song-Beverly**

23      **Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)**

24      151.   Plaintiffs incorporate by reference the allegations contained in the preceding

25  paragraphs of this Complaint.

26      152.   Plaintiffs bring this cause of action against Defendants on behalf of themselves

27  and on behalf of the members of the Implied Warranty Sub-Class.

28

153.   Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

154.   Defendants provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their braking systems suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

155.   Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things:  (i) a warranty that the Class Vehicles and their braking systems manufactured, supplied, distributed, and/or sold by Volkswagen were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their braking systems would be fit for their intended use while the Class Vehicles were being operated.

156.   Contrary to the applicable implied warranties, the Class Vehicles and their braking systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including but not limited to the defective design and manufacture of their braking systems.

157.   As a result of Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Braking System Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' braking system components are substantially certain to fail or require replacement or repair, before their expected useful life has run.

158.   Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

### FOURTH CAUSE OF ACTION

**(Breach of Implied Warranty under the Magnuson-Moss Warranty Act,**

**15 U.S.C. § 2301 *et seq.*)**

159.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

160.   Plaintiffs bring this cause of action against all Defendants Volkswagen Group of America, Inc., only, on behalf of themselves and on behalf of the Nationwide Class, or, in the alternative, on behalf of the California Sub-Class, against Defendants.

161.   The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

162.   Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

163.   Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5). Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things:  (i) a warranty that the Class Vehicles and their braking systems were manufactured, supplied, distributed, and/or sold by Volkswagen were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their braking systems would be fit for their intended use while the Class Vehicles were being operated.

164.   Contrary to the applicable implied warranties, the Class Vehicles and their braking systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including, but not limited to, the defective design of their braking systems.

165. Defendants' breach of implied warranty has deprived Plaintiffs and Class Members of the benefit of their bargain.

166. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25,000. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

167. The alleged Braking System Defect was inherent in each Volkswagen Routan vehicle and was present in each Volkswagen Routan at the time of sale.

168. Defendants have been afforded a reasonable opportunity to cure their breaches, including when Plaintiffs and Class Members brought their vehicles in for diagnoses and repair of the braking systems.

169. As a direct and proximate cause of Defendants' breach of implied warranty, Plaintiffs and Class Members sustained damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

170. As a result of Defendants' violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiffs and Class Members have incurred damages.

## FIFTH CAUSE OF ACTION

### (For Unjust Enrichment)

171. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

172. Plaintiffs bring this cause of action, in the alternative, on behalf of themselves and on behalf of the Class Members against Defendant.

173. As a direct and proximate result of Defendants' failure to disclose known defects and material misrepresentations regarding known defects, Defendants have profited through the sale and lease of said vehicles. Although these vehicles are purchased through

CLASS ACTION COMPLAINT

1   Defendants' agents, the money from the vehicle sales flows directly back to Defendant.

2       174.    Additionally, as a direct and proximate result of Defendants' failure to disclose

3   known defects and material misrepresentations regarding known defects in the Class Vehicles,

4   Plaintiffs and Class Members have vehicles that require repeated, high-cost repairs that can

5   and therefore have conferred an unjust substantial benefit upon Defendant.

6       175.    Defendants have therefore been unjustly enriched due to the known defects in

7   the Class Vehicles through the use of funds that earned interest or otherwise added to

8   Defendants' profits when said money should have remained with Plaintiffs and Class

9   Members.

10      176.    As a result of the Defendants' unjust enrichment, Plaintiffs and Class Members

11  have suffered damages.

12                                  **RELIEF REQUESTED**

13      177.    Plaintiffs, on behalf of themselves, and all others similarly situated, request the

14  Court to enter judgment against Defendant, as follows:

15      (a)     An order certifying the proposed Class and Sub-Class, designating Plaintiffs

16              as named representatives of the Class, and designating the undersigned as

17              Class Counsel;

18      (b)     A declaration that Defendants are financially responsible for notifying all

19              Class Members about the defective nature of the braking system, including

20              the need for periodic maintenance;

21      (c)     An order enjoining Defendants from further deceptive distribution, sales, and

22              lease practices with respect to Class Vehicles, and to remove and replace

23              Plaintiffs and Class Members' braking systems with a suitable alternative

24              product;

25      (d)     A declaration requiring Defendants to comply with the various provisions of

26              the Song-Beverly Act alleged herein and to make all the required disclosures;

27      (e)     An award to Plaintiffs and the Class for compensatory, exemplary, and

28

1    statutory damages, including interest, in an amount to be proven at trial,

2    except at this time Plaintiffs do not pray for any monetary damages as a result

3    of Defendants' violation of the California Consumer Legal Remedies Act;

4    (f)    Any and all remedies provided pursuant to the Song-Beverly Act, including

5    California Civil Code section 1794;

6    (g)    A declaration that Defendants must disgorge, for the benefit of the Class, all

7    or part of the ill-gotten profits it received from the sale or lease of its Class

8    Vehicles, or make full restitution to Plaintiffs and Class Members;

9    (h)    An award of attorneys' fees and costs, as allowed by law;

10   (i)    An award of attorneys' fees and costs pursuant to California Code of Civil

11   Procedure § 1021.5;

12   (j)    An award of pre-judgment and post-judgment interest, as provided by law;

13   (k)    Leave to amend the Complaint to conform to the evidence produced at trial;

14   and

15   (l)    Such other relief as may be appropriate under the circumstances.

16   **DEMAND FOR JURY TRIAL**

17   178.   Plaintiffs demand a trial by jury of any and all issues in this action so triable.

18

19   Dated: January 23, 2015

Respectfully submitted,

By: _____

Jordan L. Lurie
Robert Friedl
Tarek H. Zohdy
Cody R. Padgett

Attorneys for Plaintiffs
Ernesto Valencia, Adelina Duncan,
Lorenzo Savage, and Michele Savage

# EXHIBIT 1

DocuSign Envelope ID: 3C0A2849-61EC-4D08-AD98-7F32BC3FDD4C

1   Jordan L. Lurie (SBN 130013)
    Jordan.Lurie@capstonelawyers.com
2   Robert K. Friedl (SBN 134947)
    Robert.Friedl@capstonelawyers.com
3   Tarek H. Zohdy (SBN 247775)
    Tarek.Zohdy@capstonelawyers.com
4   Cody R. Padgett (SBN 275553)
    Cody.Padgett@capstonelawyers.com
5   Capstone Law APC
    1840 Century Park East, Suite 450
6   Los Angeles, California 90067
    Telephone:  (310) 556-4811
7   Facsimile:  (310) 943-0396

8

9

**ENDORSED FILED**
**SAN MATEO COUNTY**

JAN 2 3 2015

Clerk of the Superior Court
By ____ JENNA BLACK
DEPUTY CLERK

10          SUPERIOR COURT OF THE STATE OF CALIFORNIA

11              FOR THE COUNTY OF SAN MATEO

CIV 532218

12  ERNESTO VALENCIA, ADELINA        Case No.:
    DUNCAN, LORENZO SAVAGE, and
13  MICHELE SAVAGE, individually, and on  **DECLARATION OF ERNESTO**
    behalf of other members of the general  **VALENCIA IN SUPPORT OF VENUE**
14  public similarly situated,          **FOR CLASS ACTION COMPLAINT**
                                        **PURSUANT TO CIVIL CODE SECTION**
15              Plaintiffs,            **1780(d)**

16          v.

17  VOLKSWAGEN GROUP OF AMERICA,
    INC., a New Jersey corporation,
18  VOLKSWAGEN AG, and DOES 1 through
    10, inclusive,
19
            Defendants.
20

21

22

23

24

25

26

27

28

File By Fax

## DECLARATION OF ERNESTO VALENCIA

I, Ernesto Valencia, declare under penalty of perjury as follows:

1.     I make this declaration based upon my personal knowledge except as to those matters stated herein that are based upon information and belief, and as to those matters I believe them to be true.  I am over the age of eighteen, a citizen of the State of California, and a Plaintiff in this action.

2.     Pursuant to California Civil Code section 1780(d), this Declaration is submitted in support of Plaintiff's Selection of Venue for the Trial of Plaintiffs' Cause of Action alleging violation of California's Consumers Legal Remedies Act.

3.     I reside in San Francisco, California, which is in the County of San Francisco.

4.     I purchased my 2011 Volkswagen Routan, which is a vehicle at issue in this action, in or around September 2011, in Colma, California, which is located in the County of San Mateo.

5.     I am informed and believe that Defendant, Volkswagen Group of America, Inc., is a New Jersey corporation organized and existing under the laws of the State of New Jersey, and registered to conduct business in California.  Defendant Volkswagen Group of America's Corporate Headquarters is located at 220 Ferdinand Porsche Dr., Herndon, Virginia 20171.

6.     I am informed and believe that Volkswagen AG is a foreign corporation headquartered at Berliner Ring 2 38440 Wolfsburg, Federal Republic of Germany.

7.     I am informed and believe that Defendants, through their various entities, design, manufacture, construct, assemble, market, distribute, and sell the 2009-2012 Volkswagen Routan vehicles at issue in Plaintiffs' Complaint filed concurrently herewith, in San Mateo County, and throughout the United States of America.

//

//

//

//

DECL. OF ERNESTO VALENCIA IN SUPPORT OF PLAINTIFF'S SELECTION OF VENUE FOR TRIAL

DocuSign Envelope ID: 3C0A2849-61EC-4D08-AD98-7F32BC3FDD4C

1    8.    The transactions described above form the basis of this action or a substantial

2   portion thereof, and occurred in the County of San Mateo.  To the best of my knowledge,

3   based upon information and belief, Defendants do business in San Mateo, California, and

4   advertise and markets their products, including the products at issue in this complaint, in San

5   Mateo County, California.  Accordingly, San Mateo County is a proper place for trial of this

6   action.

7    I declare under penalty of perjury under the laws of California and the United States of

8   America that the foregoing is true and correct.

9    Executed this day of January 22 , 2015 in San Francisco, California.

10

11   

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECL. OF ERNESTO VALENCIA IN SUPPORT OF PLAINTIFF'S SELECTION OF VENUE FOR TRIAL