UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO VALENCIA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>VOLKSWAGEN GROUP OF AMERICA INC, et al.,<br><br>    Defendants. | Case No. 15-cv-00887-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 23 |

Plaintiffs Ernesto Valencia, Adelina Duncan, Lorenzo Sava, Michelle Savage, Margarito De La Rosa, and Lenelyn De La Rosa assert claims under the California's Unfair Competition Law ("UCL") and California's Legal Remedies Act ("CLRA"), Breach of Implied Warranty under the Song-Beverly Consumer Warranty Act and the Magnuson-Moss Warranty Act, as well as for Unjust Enrichment, against Defendant Volkswagen Group of America, Inc. ("Volkswagen"). Plaintiffs' claims arise from their purchase of 2009 through 2012 model year Volkswagen Routans, which they allege were manufactured with defective and dangerous brakes. On April 27, 2015, Volkswagen moved to dismiss each of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 23 ("Mot."). Plaintiffs opposed that motion on May 27, 2015, Dkt. No. 36 ("Opp."), and Volkswagen filed a reply on June 15, 2015, Dkt. No. 39 ("Reply"). The Court held a hearing on the motion on June 25, 2015.

The Court has carefully considered the arguments offered by the parties, both in their written submissions and during oral argument. For the reasons set forth below, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

**I.   BACKGROUND**

Plaintiffs bring this action individually and on behalf of similarly situated individuals in the United States who purchased or leased a 2009 through 2012 model year Volkswagen Routan.

*See* First Amended Complaint ("FAC") ¶ 118. Plaintiffs allege that Routan minivans were sold with defective brakes that "fail[ed] to adequately handle the braking duties required by vehicles the size and weight of the [Routan], thereby leading to abnormal, premature wear of the braking system's components" (the "braking defect"), *id*. ¶ 76, and that Volkswagen knew of the braking defect and failed to inform consumers, *id*. ¶ 77. Plaintiffs further allege that the braking defect poses a material safety risk because it causes "shaking and shuddering which can be felt through the brake pedal, floor, and steering wheel [which] severely affect the driver's ability to control the car's speed and deceleration." *Id*. ¶ 78.

Ernesto Valencia and Adelina Duncan purchased a new 2011 Routan on September 24, 2011. FAC ¶ 30. Valencia and Duncan noticed "symptoms" of the braking defect, including a grinding noise, "within approximately" the first year of their purchase. *Id*. ¶ 34. Plaintiffs continued to experience grinding noises while braking and replaced their brakes on December 23, 2012, *id*. ¶ 35, September 20, 2013, *id*. ¶ 36, January 3, 2014, *id*. ¶ 37, July 7, 2014, *id.* ¶ 38, and October 18, 2014, *id.* ¶ 39.

Lorenzo and Michele Savage purchased a certified pre-owned 2011 Routan on March 7, 2012. FAC ¶ 43. Around March 14, 2013, the Savages were informed by a Volkswagen service advisor that the rear brake pads, rear brake rotors, and front brake pads on their vehicle would need to be replaced. *Id*. ¶ 47. The Savages replaced the brake pads again on December 31, 2013, *id.* ¶ 48, February 20, 2014, *id*. ¶49, and December 2, 2014, *id.* ¶ 50.

Margarito and Lenelyn De La Rosa purchased a new 2010 Routan on May 24, 2010. FAC ¶ 54. On July 13, 2011, the De La Rosas took their Routan to an authorized Volkswagen dealer complaining that the brakes were pulsating and the rear rotors were badly grooved. *Id*. ¶ 58. The dealership replaced the rear brake pads and discs under Plaintiffs' warranty. *Id*. On April 29, 2013, Plaintiffs returned to the dealership, complaining that the vehicle was "shimmying and vibrating while braking." *Id*. ¶ 59. The service advisor informed them that the brake rotors were "out of round" and needed to be replaced again. *Id*. Plaintiffs took the vehicle back to the dealership on September 13, 2014 complaining of "shimmying and squeaking while braking" and were told that their brakes would again need to be replaced. *Id*. ¶ 60.

**II.	LEGAL STANDARD**

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain sufficient facts to state a plausible claim on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept the plaintiff's factual allegations as true and construe them in the light most favorable to the plaintiff. *See Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 550 (9th Cir. 1989). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678. If the Court dismisses the complaint, it will generally grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 122, 1127 (9th Cir. 2000) (citation omitted). When a party repeatedly fails to cure deficiencies, however, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

**III.	DISCUSSION**

Volkswagen moves to dismiss each of Plaintiffs' claims for failure to state a claim upon which relief can be granted. The Court will address each argument in turn.

**A.	Duty to Disclose**

To state an actionable claim under the CLRA or the UCL arising out of an omission,

Plaintiffs must sufficiently plead that the defendant had a duty to disclose the information omitted. *See Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835, 51 Cal. Rptr. 3d 118, 126 (2006), *as modified* (Nov. 8, 2006) ("[A]lthough a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose."); *id*. at 838 (holding that the court "cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is likely to deceive anyone within the meaning of the UCL"); *see also Donohue v. Apple, Inc.,* 871 F. Supp. 2d 913, 925 (N.D. Cal. 2012) ("To be actionable, an omission must be 'contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'") (citation omitted); *Chulick-Perez v. Carmax Auto Superstores California, LLC*, No. 13-cv-02329-TLN, 2014 WL 2154479, at *9 (E.D. Cal. May 22, 2014) ("For an omission to be actionable under the CLRA or UCL, it must be either 1) "contrary to a representation actually made by the defendant" or 2) "an omission of a fact the defendant was obligated to disclose.").

California recognizes four circumstances where a duty to disclose is imposed on a defendant:

> (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact.

*LiMandri v. Judkins,* 52 Cal. App. 4th 326, 337 (1997). In this case, Plaintiffs allege that Volkswagen had a duty to disclose the alleged braking defect because it was a material fact and Volkswagen had exclusive knowledge of and/or actively concealed the existence of the defect from consumers. Volkswagen moves to dismiss Plaintiffs CLRA and UCL claims for failure to sufficiently allege a duty to disclose on the grounds that: (1) the braking defect does not constitute a safety hazard and is thus not material; (2) it did not have exclusive knowledge of the braking defect at the time Plaintiffs purchased their vehicles; and (3) it did not actively conceal the existence of the braking defect.

4

### 1. Safety Hazard

"When analyzing a UCL, CLRA, or fraudulent concealment claim, California law instructs that a manufacturer's duty to consumers is limited to its warranty, unless a safety issue is present or there has been some affirmative misrepresentation." *Gray v. Toyota Motor Sales, U.S.A., Inc.*, 554 F. App'x 608, 609 (9th Cir. 2014) (quoting *Daugherty,* 144 Cal. App. 4th at 834-35); *see also Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 941 n.41 (C.D. Cal. 2012) (observing that only "defects that create unreasonable safety risks after the warranty period has ended [give] rise to a duty to disclose under the CLRA and UCL"); *Wilson v. Hewlett-Packard Co.*, No. 09-cv-2253-RMW, 2009 WL 3021240, at *1 (N.D. Cal. Sept. 17, 2009) (dismissing a CLRA claim based on a manufacturer's alleged duty to disclose where the omission did not implicate safety concerns); *Morgan v. Harmonix Music Systems, Inc.,* No. 08-cv-5211-BZ, 2009 WL 2031765, *4 (N.D. Cal. July 7, 2009) ("According to all of the relevant case law, defendants are only under a duty to disclose a known defect in a consumer product when there are safety concerns associated with the product's use.").

Volkswagen asserts that despite "including page after page of consumer complaints to NHTSA, Cars.com and Edumnds.com, not a single one of these complaints asserted that the alleged Braking System Defect resulted in any accident or sudden brake failure." Mot. at 17 (citation omitted). Volkswagen is incorrect. Many of the complaints quoted in the FAC assert that the consumer's Volkswagen Routan suffered from a reoccurring braking problem that resulted in an accident or unsafe driving conditions. For example:

> While driving approx 3035mph [sic], my van began to smell hot and smoke began to rise from the right front wheel well. I had two of my three children with me. I frantically told my 14 yr old son who was in the front passenger seat to get to the back and help his four yr old sister out of her car seat (we were still moving) I pulled into a parking lot and had them quickly exit the left sliding door of the van. Later that evening I went back to retrieve the van alone and as soon as the van began to move it made the most horrible grinding noise I have ever heard. I immediately knew it was a seized brake caliper, (not because I am a mechanic. I am a speech therapist). I knew because approx 4 months prior the van made the exact same sound with no warning when the right rear caliper seized and both front and back brakes were replaced! =$780).

FAC ¶ 79(d).

> When the vehicle is traveling near 30mph or even higher than that, when the brakes are applied, it shakes violently. This causes the driver to have to hold the steering wheel very tightly to avoid loosing [sic] control. The breaking system in general seems to be faulty as the brakes and rotors have had to be replaced/changed every two to three months.

*Id.* ¶ 79(g).

> Volkswagon routan 2010: the steering wheel shakes violently upon breaking a regular speeds, especially going downhill. Front rotors were replaced at 22,000, 35,000, and now 54,000 miles.

*Id.* ¶ 79(m).

> The brakes have been replaced 2 or 3 times. The most recent problem was the power brake booster (or something like that) has failed. My wife was not able to stop the van. She went through a red light where cross traffic was traveling at speeds of 40mph or greater. Her driving skills and using booth feet on the brake peddle [sic] she was able to slow the van and steer it from getting blind sided.

*Id.*¶ 79(t). These allegations (as well as the numerous other consumer complaints cited in the FAC) are sufficient to give rise to the inference that the braking defect alleged in the FAC constitutes a material safety issue under California law.

### 2. Active Concealment

Plaintiffs argue that a defendant's failure to notify customers of a known safety defect supports an allegation of active concealment sufficient to trigger a duty to disclose under *LiMandri*. *See* Mot. at 13. The Court disagrees. Instead, "[a]n allegation of active concealment must plead more than an omission; rather, a plaintiff must assert affirmative acts of concealment; e.g., that the defendant 'sought to suppress information in the public domain or obscure the consumers' ability' to discover it." *Taragan v. Nissan N. Am., Inc.*, No. 09-cv-3660 SBA, 2013 WL 3157918, at *7 (N.D. Cal. June 20, 2013) (quoting *Gray v. Toyota Motor Sales, U.S.A.,* No. 08-cv-1690 PSG, 2012 WL 313703, at *10 (C.D. Cal. Jan. 23, 2012)).

Plaintiff's citations to cases like *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) and *Marsikian v. Mercedes Benz USA, LLC*, No. 08-cv-04876-AHM-JTLX, 2009 WL 8379784, at *6 (C.D. Cal. May 4, 2009) do not support a contrary proposition. In *Falk*, the plaintiffs alleged more than inaction; they alleged that the defendants both: (1) substituted

6

broken defective parts with equally defective replacements; and (2) represented to consumers that those defective replacements corrected the problem. *See Falk*, 496 F. Supp. 2d at 1097. Similarly, in *Marsikian*, the plaintiffs alleged that Mercedes developed "measured and selective responses" to owners' complaints (*e.g.*, good will adjustments) but "concealed the problem from the general customer base." *Marsikian*, 2009 WL 8379784, at *6. In both cases, plaintiffs alleged *affirmative* acts sufficient to plead active concealment. Accordingly, Plaintiffs' allegations that Volkswagen failed to take certain affirmative steps to remedy the braking defect—such as issuing a bulletin describing the braking defect, providing an extended warranty to customers, or recalling the affected vehicles—does not support Plaintiffs' allegation of active concealment. At most, Volkswagen's inaction constitutes passive concealment insufficient to trigger a duty to disclose.

Even so, the Court finds that Plaintiffs have alleged sufficient affirmative acts to plead active concealment. As in *Falk*, Plaintiffs allege that Volkswagen addressed "consumer complaints by replacing the prematurely worn pads and rotors with the same or substantially similar defective components in order to ensure that the defect will manifest itself outside of the warranty period." FAC ¶ 158. Plaintiffs have also pled facts demonstrating that Volkswagen dealers often denied the existence of the braking defect. *See e.g.,* FAC ¶ 79 (h) ("Took it to the dealership but they said nothing was wrong with the brakes"); *id.* ¶79(o) ("[The VW dealership] said it would not be covered under warranty because it may have been caused by me pushing hard on the brakes"); *id.* ¶79(p) ("[The VW dealership] had to replace all four rotors [sic] and brake pads . . . but keep[s] telling me that it was driver error"). A defendant's affirmative denial of a defect may be sufficient to demonstrate active concealment. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F. Supp. 2d 1145, 1192 (C.D. Cal. 2010) ("Plaintiffs' allegations that Toyota repeatedly denied the existence of the alleged SUA defect are sufficient to demonstrate active concealment.") (citation omitted). Taken together, the allegations contained in the FAC sufficiently plead active concealment.[1]

---

[1] Because the Court finds that Plaintiffs have adequately pled the existence of active concealment, the Court does not reach the question of whether Plaintiffs have also pled facts sufficient to create an inference of exclusive knowledge.

7

\* \* \*

Accordingly, the Court **DENIES** Volkswagen's motion to dismiss Plaintiffs' first and second causes of action pursuant to the CLRA and UCL. Plaintiffs have alleged sufficient facts to support the inference that Volkswagen had a duty to disclose the alleged braking defect.

**B.  Warranty Claims**

Volkswagen moves to dismiss Plaintiffs' claims under both the Song-Beverly and Magnuson-Moss Warranty Acts on the ground that the FAC does not allege that the Plaintiffs experienced the braking defect within the first year of vehicle ownership. *See* Cal. Civ. Code § 1791.l(c) (West 2015) (establishing the term of the implied warranty provided by the Song-Beverly Act to be "coextensive in duration with an express warranty which accompanies the consumer goods . . . but in no event shall such implied warranty have a duration of . . . more than one year following the sale of new consumer goods to a retail buyer."); *see also In re Carrier IQ, Inc.*, --- F. Supp. 3d ---, 2015 WL 274054, at \*45 (N.D. Cal. Jan. 21, 2015) (the Magnuson-Moss Warranty Act "does not create implied warranties, but instead confers federal court jurisdiction for state law breach of implied warranty claims . . . . [C]ourts must look to state law to determine the meaning and scope of the implied warranty.") (citations omitted).

As described above, none of the Plaintiffs have alleged that the braking defect manifested within a year of the purchase of their Routan minivan. *See supra*, Section I. The closest Plaintiffs come to such an allegation is that Plaintiffs Valencia and Duncan noticed "symptoms" of the braking defect, including a grinding noise, "within *approximately*" the first year of their purchase. FAC ¶ 34 (emphasis added). Plaintiffs' opposition brief glides over the word "approximately" when it represents that Plaintiffs Valencia and Duncan "did allege that they noticed the defect within the first year of ownership." Opp. at 22. That is not what is alleged in the FAC. If those Plaintiffs could allege in good faith that the braking defect actually presented within the first year of ownership, they were required to plead that fact in the operative complaint. The Court cannot base its decision on the stronger representation contained in Plaintiffs' opposition. *See, e.g., Schneider v. Cal. Dep't of Corrections,* 151 F.3d 1194, 1197 n. 1 (9th Cir.1998) ("The 'new' allegations contained in the . . . opposition motion . . . are irrelevant for Rule 12(b)(6) purposes.

8

In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original).

As noted by Judge Tigar in *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1099 (N.D. Cal. 2014), "[t]here appears to be disagreement among California courts as to whether a Song-Beverly claim may succeed where the product defect arises after the one year implied warranty has expired." *Compare Mexia v. Rinker Boat Co.,* 174 Cal. App. 4th 1297, 1304-05, 95 Cal. Rptr. 3d 285 (2009) (concluding that "[i]n the case of a latent defect . . . the warranty of merchantability is breached by the existence of the unseen defect . . . although [the] defect may not be discovered for months or years after a sale.") *with Marchante v. Sony Corp. of America, Inc.,* 801 F. Supp. 2d 1013 (S.D. Cal. 2011) (noting that *Mexia* would "render meaningless any durational limits on implied warranties" because "[e]very defect that arises could conceivably be tied to an imperfection existing during the implied warranty period . . . . [I]n that vein, *Mexia* enjoys the limelight as a case contrary to established California case law with respect to the duration of the implied warranty of merchantability") (citations omitted).

The majority of cases appear to agree with *Marchante* and hold that the Song-Beverly Act requires the alleged defect to manifest within the one-year implied warranty period. *See, e.g., Peterson v. Mazda Motor ofAm., Inc.,* 44 F. Supp. 3d 965, (C.D. Cal. 2014); *McVicar v. Goodman Global, Inc.,* 1 F. Supp. 3d 1044, 1057-58 (C.D. Cal. 2014); *Grodzitsky 11,2013* WL 2631326, at *10-11; *Elias v. Hewlett-Packard Co.,* 903 F. Supp. 2d 843, 852-53 (N.D. Cal. 2012); *Tietsworth v. Sears, Roebuck & Co.,* No. 09-cv-00288-JF, 2009 WL 3320486, at *12 n. 6 (N.D. Cal. Oct.13, 2009) (noting that "*Mexia* appears to be something of an outlier"). A second group of cases follows *Mexia* and hold that a plaintiff may state a Song-Beverly claim where she alleges that the defect existed at the time of sale, even if the defect was not discovered until months or years later. *See*, *e.g., Kas v. Mercedes-Benz USA, LLC,* No. 11-cv-01032-GHK, 2011 WL 5248299, at *2 (C.D. Cal. Oct. 31, 2011); *Ehrlich v. BMW of N. Am., LLC,* 801 F. Supp. 2d 908, 916 (C.D. Cal. 2010). The Court finds the first line of cases—which limits *Mexia* to instances where the product was unmerchantable at the time of sale—to be persuasive.

In *Mexia*, the plaintiff purchased a boat with a latent defect that caused its engine to corrode. Repairs to the boat were needed over two years after plaintiff's purchase and plaintiff brought suit just over three years after purchase. It is unclear from the opinion when the boat first started exhibiting problems or when the latent defect was discovered, but *Mexia* held that there is no requirement in Song-Beverly that a latent defect be discovered within a year of purchase. In reaching that conclusion, *Mexia* relied heavily on *Moore v. Hubbard Johnson Lumber Co.,* 149 Cal. App. 2d 236 (1957), an implied warranty case predating passage of the Song-Beverly Act. In *Moore,* the plaintiff purchased lumber that turned out to have been infested with beetles that could not have been discovered through visual inspection. *Moore,* 149 Cal. App. 2d at 241. *Mexia* cited *Moore* for the proposition that "although a defect may not be discovered for months or years after a sale, merchantability is evaluated as if the defect were known." *Mexia,* 174 Cal. App. 4th at 1305.

Cabining *Mexia's* holding to circumstances like that presented in *Moore*—where the product is unmerchantable the very moment it was purchased—is supported both by other California decisions and by common sense. For example, several intermediate appellate court decisions addressing facts outside of that narrow circumstance appear to disagree with *Mexia's* holding. *See Larsen v. Nissan N. Am.*, No. A121838, 2009 WL 1766797, at *5-6 (Cal. Ct. App. June 23, 2009) (finding that a defects in a car that manifested themselves four years after purchase could not form the basis of a Song-Beverly Act claim and noting that "the warranty of merchantability implied as a matter of law in California is limited to one year after purchase"); *Balakian v. Mercedes–Benz USA, LLC,* No. F060461, 2011 WL 6826723, at *7 n.8 (Cal. Ct. App. Dec. 29, 2011) (noting that "implied warranties of merchantability and fitness have a duration of no more than one year following the sale of a new consumer good to a retail buyer").[2]

However, the most compelling reason to adopt the limited reading of *Mexia* is the incompatibility of the broader reading with the Song-Beverly Act's one-year implied warranty

---

[2] Although unpublished California cases have no precedential value, they may be considered "as a possible reflection of California law." *Roberts v. McAfee, Inc.,* 660 F.3d 1156, 1167 n .6 (9th Cir. 2011) (internal citations and quotation marks omitted).

10

1  period. As described in *Marchante*, *Mexia's* broader holding "renders meaningless any durational
2  limits on implied warranties[,]" as "[e]very defect that arises could conceivably be tied to an
3  imperfection existing during the implied warranty period." *Marchante,* 801 F. Supp. 2d at 1022.
4  Under such a reading of *Mexia*, even "defects" that manifest twenty or thirty years after the date of
5  purchase would fall within Song-Beverly's one-year limitations period. Accordingly, the Court
6  agrees with numerous other decisions that, to the extent *Mexia* is good law at all, it applies solely
7  to the narrow category of claims arising from products that were unmerchantable the moment they
8  were purchased.
9      That is not the type of product at issue in this case. While Plaintiffs have alleged that the
10 braking defect caused the brakes of their Routan minivans to rapidly wear and eventually require
11 replacement, there is no allegation that the brakes did not function when purchased. In fact,
12 Plaintiffs allege that it took thousands of miles of normal use for the brakes to show signs of the
13 braking defect. *See, e.g.*, FAC ¶ 34.
14     Accordingly, the Court **GRANTS** Volskwagen's motion to dismiss the third and fourth
15 causes of action.

16  **C.  Statute of Limitations**
17     Volkswagen moves to dismiss the CLRA, UCL, and warranty claims of Plaintiffs
18 Margarito and Lenelyn De La Rosa as time barred. The Court will dismiss the De La Rosa's
19 warranty claims, but denies the motion with respect to the De La Rosa's CLRA and UCL claims.

20      **1.  CLRA and UCL Claims**
21     Under the CLRA, the statute of limitations expires three years from the date "of the
22 commission of such method, act or practice." Cal. Civ. Code § 1783 (West 2015). The delayed
23 discovery rule tolls the running of the limitations period until the plaintiff suspects or should
24 suspect that her injury was caused by wrongdoing. *See S.M* v. *Los Angeles Unified Sch. Dist.,* 184
25 Cal. App. 4th 712, 717 (2010) ("A plaintiff has reason to discover a cause of action when he or
26 she has reason to at least suspect a factual basis for its elements. Suspicion of one or more of the
27 elements, coupled with knowledge of any remaining elements, will generally trigger the applicable
28 limitations period.").

The parties agree that the De La Rosa Plaintiffs brought their Routan to the dealership on July 13, 2011, "complaining that the brakes were pulsating and the rear rotors were badly grooved" and that the dealership informed them that their brakes were warped and needed to be replaced. FAC ¶ 58. Volkswagen argues that this discovery was sufficient to start the three-year statute of limitations. In response, Plaintiffs argue that the need for the first brake repair did not put the De La Rosas on notice, because "the need to replace brake pads and rotors may not be an obvious manifestation of a defect that breaches an implied warranty." Opp. at 18. Instead, "Plaintiffs [allege that they] were not aware that their brake wear was premature and necessitating 'frequent repair' until they had to return for a second repair. Logically, a Plaintiff cannot consider repairs to be 'frequent' until they have occurred more than once." *Id*. at 20.

The Court finds that the parties' competing interpretations of the facts alleged in the FAC may not be resolved on the pleadings. As the California Supreme Court observed, "[t]here are no hard and fast rules for determining what facts or circumstances will compel inquiry by the injured party and render him chargeable with knowledge. It is a question for the trier of fact." *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.,* 1 Cal.3d 586, 597 (1970) (citation omitted). The same reasoning applies to Plaintiffs' claim under the "unlawful" prong of the UCL to the extent that claim is based on a violation of the CLRA. *See Aryeh v. Canon Bus. Solutions, Inc.,* 55 Cal.4th 1185, 1195 (2013) (holding that "just like common law claims challenging fraudulent conduct, a UCL deceptive practices claim should accrue only when a reasonable person would have discovered the factual basis for a claim.").

For these reasons, Volkswagen's motion to dismiss the De La Rosa's CLRA and UCL claims as time barred is **DENIED**.

### 2. Warranty Claims

The statute of limitations that applies to the Song-Beverly Act is governed by the California Commercial Code, which requires claims to be brought within four years measured from the tender of delivery, not when the alleged defect manifests. Cal. Com. Code § 2725. The parties agree that this action was filed more than four years after the date the De La Rosas purchased their Volkswagen Routan. Accordingly, the four-year statute of limitations bars the De

La Rosas' claims absent the existence of tolling. *See Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) ("A statute-of-limitations defense, if 'apparent from the face of the complaint,' may properly be raised in a motion to dismiss.").

Plaintiffs argue that the statute of limitations was tolled during the duration of Volkswagen's one-year express warranty. Plaintiffs base this argument on two decisions from the Central District of California: *Ehrlich v. BMW of N. Am. LLC,* 801 F. Supp. 2d 908, 924-25 (C.D. Cal. 2010), in which the court tolled the statute of limitations on a Song-Beverly claim for the duration of an express warranty, and *Falco v. Nissan N. Am. Inc.,* No. 13-cv-0686-DDP, 2013 WL 5575065 (C.D. Cal. Oct. 10, 2013), which "[f]ollow[ed] the holding in *Ehrlich,* [and found] Plaintiffs' claims are not time barred because [defendant's] five-year warranty tolled the running of the implied warranty's statute of limitations.").

The Court respectfully disagrees with the reasoning of *Ehrlich* and *Falco* and declines to insert an unwritten exception in Section 2725. That exception does not appear in the intermediate appellate court decision upon which both *Ehrlich* and *Falco* base their holdings. As Judge Tigar convincingly explained in *MacDonald*, nothing in *Krieger v. Nick Alexander Imports, Inc.,* 234 Cal. App. 3d 205 (1991), "supports tolling the statute of limitations on an implied warranty claim for the duration of an express warranty. . . . While the *Krieger* decision allows that the date of accrual of the statute of limitations may be tolled for attempted repairs within the one-year implied warranty, nowhere does it suggest that the implied warranty's statute of limitations can be extended for the duration of an express warranty." 37 F. Supp. 3d at 1101. Nor does a plain reading of the statutory text support such a result.

Accordingly, the Court **GRANTS** Volkswagen's motion to dismiss the warranty claims of Plaintiffs Margarito and Lenelyn De La Rosa as time barred.

### D. Unjust Enrichment

Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another. *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000). However, "[t]he phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is

13

equitable to do so." *Melchior v. New Line Prods., Inc.,* 106 Cal. App. 4th 779, 793 (2003) (citation omitted); *see also Jogani v. Superior Court,* 165 Cal. App. 4th 901, 911 (2008) ("[U]njust enrichment is not a cause of action. Rather, it is a general principle underlying various doctrines and remedies, including quasi-contract.").

Until very recently, "federal courts [had] consistently followed *Melchior* and held that California law does not recognize a cause of action for unjust enrichment, so long as another cause of action is available that permits restitutionary damages." *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1114 (C.D. Cal. 2012). However, the Ninth Circuit recently clarified the law regarding unjust enrichment in California, holding that while "there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution . . . [w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 762 (9th Cir. 2015) (citation and quotation marks omitted). The Ninth Circuit also instructed that such a claim should not be dismissed as duplicative or superfluous of other claims because a party may set out alternative claims for relief. *Id.* (citing Fed. R. Civ. P. 8(d)(2)). Accordingly, the Ninth Circuit found the allegation that the defendant had enticed plaintiffs "to purchase their products through false and misleading labeling, and that [defendant] was unjustly enriched as a result," was "sufficient to state a quasi-contract cause of action." *Id.*

Several decisions in this District have permitted what were previously considered to be superfluous unjust enrichment claims to survive the pleading stage in light of the Ninth Circuit's decision in *Astiana*. *See Trazo v. Nestle USA, Inc.*, No. 12-cv-02272-PSG, 2015 WL 4196973, at *2 (N.D. Cal. July 10, 2015) (finding "*Astiana* requires this court to side with Trazo and reinstate his claim for restitution based on unjust enrichment/quasi-contract."); *Khasin v. R. C. Bigelow, Inc.*, No. 12-cv-02204-WHO, 2015 WL 4104868, at *3 (N.D. Cal. July 7, 2015) (permitting plaintiff to amend complaint to allege unjust enrichment cause of action given the Ninth Circuit's decision in *Astiana*); *Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2015 WL 2125004, at *9 (N.D. Cal. May 6, 2015) (relying on *Astiana* to deny motion to dismiss unjust enrichment claim because, even though "the claim may be duplicative of Plaintiff's statutory

14

claims under the UCL, FAL, and CLRA[, that] is not a proper ground for dismissal at this stage of the litigation . . . ."); *but see Lanovaz v. Twinings N. Am., Inc.*, No.12-cv-02646-RMW, 2015 WL 3627015, at *5 (N.D. Cal. June 10, 2015) (declining to reinstate unjust enrichment claim because restitutionary damages were available under UCL claim and thus, to the extent the dismissal of the unjust enrichment claim conflicted with *Astiana*, it did not limit plaintiff's available remedies).

The Court agrees that these decisions accurately reflect *Astiana's* holding. At least at the pleading stage, *Astiana* requires this Court to interpret Platiniffs' unjust enrichment cause of action as a quasi-contract claim seeking restitution. *Astiana*, 783 F.3d at 762. That the relief sought by that cause of action is entirely duplicative of the relief sought by other causes of action asserted by the Plaintiffs does not provide a basis for the Court to dismiss the unjust enrichment claim. *Id*. *Astiana* provides that plaintiffs are permitted to plead an unjust enrichment claim in the alternative, *see* Fed. R. Civ. P. 8(d)(2), even if, as here, it is questionable whether that alternative claim provides any prospect for relief independent of the causes of action already alleged.

Volkswagen's motion to dismiss Plaintiffs' unjust enrichment claim is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Volkswagen's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs may amend any claim dismissed, but must submit a Second Amended Complaint no later than 28 days from the date of this Order.

**IT IS SO ORDERED.**

Dated: 8/11/2015

HAYWOOD S. GILLIAM, JR.
United States District Judge